**IN THE UNITED STATES COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANNE ELKIND and SHARON ROSEN, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | DEMAND FOR JURY TRIAL |
| REVLON CONSUMER PRODUCTS CORPORATION, | |
| Defendant. | |

Plaintiffs Anne Elkind and Sharon Rosen, on behalf of themselves, all others similarly situated, and the general public, by and through their undersigned counsel, hereby bring this action against Revlon Consumer Products Corporation ("Revlon"), and allege the following upon their own knowledge, or where they lack personal knowledge, upon information and belief including the investigation of their counsel.

## NATURE OF ACTION

1.     Revlon is one of the largest cosmetic companies in the world. Among its many product lines, Revlon markets, advertises, and sells three types of cosmetics, specifically foundation, powder and concealer, under the brand name "Revlon Age Defying with DNA Advantage," which targets women over 35 years old, and claims to "help protect the skin's DNA and fight visible signs of aging."

2.     Revlon's clever use of the phrase "with DNA Advantage" has a strong tendency to cause ordinary consumers mistakenly to believe that ingredients in these cosmetic products interact with the skin's DNA, perhaps on a cellular or molecular level, to provide scientifically-enhanced therapeutic benefits that reverse, minimize, slow, or otherwise "defy" the process of aging.

3.      Revlon claims in its federal trademark registration that "DNA Advantage" refers to an "ingredient in the manufacturing of cosmetics and makeup to protect against UV rays" – basically nothing more than sunscreen. And, remarkably, only one of its three Age Defying with DNA Advantage products, the cream makeup (foundation), even contains sunscreen.

4.      Revlon's deliberate use of the phrase "with DNA Advantage," rather than "with sunscreen," is likely to deceive ordinary consumers into thinking that there is something particularly scientifically-important and beneficial about these three cosmetic products, certainly over and above anything having to do with mere protection from UV rays in the form of simple sunscreen.

5.      This deception is especially aggravated by Revlon's concurrent use of the phrase "Age Defying" as part of the overall "Revlon Age Defying with DNA Advantage" brand name, its attendant advertising claim that this product line "help[s] protect the skin's DNA," as marketed specifically to women in the over 35-age category expressly to "fight visible signs of aging," and Revlon's prominent use of the DNA double helix design as part of the product configuration and packaging of its Age Defying with DNA Advantage cosmetic line.

6.      Plaintiffs bring this class action to remedy Revlon's misrepresentations.

## THE PARTIES

7.      Plaintiff Anne Elkind is a resident of Roslyn Heights, New York.

8.      Plaintiff Sharon Rosen is a resident of Sacramento, California.

9.      Defendant Revlon Consumer Products Corporation is a Delaware corporation with its principal place of business located at 237 Park Avenue, New York, New York 10017.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a State different from Revlon. In addition, more than two-thirds of the members of the class reside in states other than the state in which Revlon is a citizen and in which this

case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

11.     The Court has personal jurisdiction over Revlon because Revlon is authorized to transact business in New York by the Department of State and has its principal place of business within 100 miles of the Central Islip courthouse of the United States District Court for the Eastern District of New York. Further, Revlon advertised, marketed, distributed, offered for sale, and sold its "Revlon Age Defying with DNA Advantage" cosmetics to consumers in New York and the United States, transacting business in Nassau County, in New York, and throughout the United States, including without limitation through extensive on-the-shelf presence in Nassau County, and online marketing intended to reach consumers in Nassau County. Moreover, Revlon has sufficient purposeful, systematic, and continuous minimum contacts with the various states of the United States, including New York, and has sufficiently availed itself of the markets of various states of the United States, including New York, to render the exercise of personal jurisdiction by this Court permissible.

12.     Venue is proper in this judicial district because a substantial portion of the acts forming the basis for the claims occurred in this district, and because Revlon transacts substantial business generally in this district.

## DIVISION

13.     Pursuant to Local Civil Rule 50.1(d)(2)(b)(1), this action should be designated a Long Island case because, as further set forth herein, a substantial part of the events or omissions giving rise to the claims occurred in Nassau County.

## FACTS

## I.     THE "REVLON AGE DEFYING WITH DNA ADVANTAGE" PRODUCTS

14.     Revlon sells its "Revlon Age Defying with DNA Advantage" product line (hereinafter "Age Defying DNA Advantage Product(s)") to consumers through large retail chains such as CVS, Target, Wal-Mart, and Ulta, as well as online including through its revlon.com website.

15.     Revlon's Age Defying DNA Advantage Product line includes three cosmetics: cream makeup (also known as foundation), concealer, and powder. Revlon sells the cream makeup in a 1-ounce bottle; the powder in a 0.42-ounce box; and the concealer in a 0.18-ounce bottle/applicator. Each product comes in a variety of shades.

16.     The packaging of this product line, uniform throughout New York, California, and the United States, prominently displays the phrase "AGE DEFYING with DNA ADVANTAGE" (and also identifies the REVLON.COM website where these products are advertised and offered for sale).

17.     Revlon's Age Defying DNA Advantage Product line of cosmetics also employs as part of its product configuration (cream makeup and powder) and packaging (concealer) a prominently-displayed design of intertwined double-stranded molecules, which is immediately recognizable as the "double helix" design of DNA. Examples of Revlon's Age Defying DNA Advantage product line are depicted below.



18.     Revlon also prominently refers to DNA in related advertising and promotional material, including in-store signage, as depicted below.



19.     The in-store shelf display also promotes the cream makeup in the Age Defying DNA Advantage Product line by claiming that it "[h]elps protect the skin's DNA to fight signs of aging."

20.     On its website pages, Revlon states that its Age Defying DNA Advantage cream makeup is combined with "powerful anti-aging skincare to help protect skin's DNA to fight the visible signs of aging" and "[h]elps protect skin's DNA from future damage to fight the signs of aging." Revlon's website also states that its Age Defying DNA Advantage concealer is combined with "powerful anti-aging skincare" that "targets" "[u]ndereye puffiness," "[d]ark circles," and "[f]ine lines and wrinkles."

21.     Referring to all three of the cosmetics in this product line, Revlon claims in its 10-K Annual Report filed with the S.E.C. for the year ended December 31, 2012 (at page 4) that "**Revlon Age Defying with DNA Advantage** foundation, powder and concealer help protect the skin's DNA and fight visible signs of aging."

- 5 -

## II.    PLAINTIFFS' PURCHASES

22.    In approximately late March or April 2013, plaintiff Anne Elkind purchased Revlon Age Defying with DNA Advantage Cream Makeup and Revlon Age Defying with DNA Advantage Concealer from a CVS retail store located at 373 Willis Avenue, in Roslyn Heights, New York.

23.    In approximately June 2011 or June 2012, plaintiff Sharon Rosen purchased Revlon Age Defying with DNA Advantage Cream Makeup and Revlon Age Defying with DNA Advantage Concealer, from either the Wal-Mart located at 3460 El Camino Avenue, in Sacramento, California, or the Ulta located at 9141 West Stockton Boulevard, in Elk Grove, California.

24.    Before their purchases, each plaintiff had already seen the product on store shelves, as well as advertised in print, for example in magazines or newspapers. Plaintiffs were influenced substantially to purchase Age Defying DNA Advantage Products by the phrases in the advertisements and on the packaging referring to "DNA Advantage" and "Age Defying," as well as the store shelf display stating that the Age Defying DNA Advantage Products "help[] protect skin's DNA to fight signs of aging." Plaintiffs relied on these packaging phrases and advertising statements in purchasing the Age Defying DNA Advantage Products believing that the products contained something very scientific and special having to do with DNA, for example that the makeup would interact somehow with their DNA to better protect their skin from aging, and certainly not simply that they contained sunscreen.

## III.    REVLON'S UNLAWFUL ACTS & PRACTICES

### A.    Revlon's Affirmative Misrepresentations

25.    Several aspects of Revlon's packaging, advertising, and marketing materials for its Age Defying DNA Advantage Products, individually and collectively, are false or at a minimum highly misleading, and are likely to cause confusion, mistake, or deception in the minds of ordinarily reasonable consumers, including (i) use of the terms "DNA," "DNA Advantage," "with DNA Advantage," and "Age Defying with DNA Advantage," (ii) the

prominent depiction of the double helix representation of DNA, (iii) the claimed "benefit" from "combin[ing]" the cream makeup and concealer with "powerful anti-aging skincare," and (iv) the efficacy claims that these products "[h]elp[] protect the skin's DNA to fight signs of aging," "help protect skin's DNA to fight the visible signs of aging," and "[h]elp[] protect skin's DNA from future damage to fight the signs of aging."

26.     On February 18, 2010, Revlon filed an application with the U.S. Trademark Office for federal trademark registration of the phrase "DNA ADVANTAGE" for an "ingredient used in cosmetics and makeup to protect against UV rays." On June 28, 2011, the U.S. Trademark Office granted Revlon a federal trademark registration for the phrase "DNA ADVANTAGE" for an "ingredient used in the manufacturing of cosmetics and makeup to protect against UV rays," based on Revlon's claim of first using the phrase in commerce on April 25, 2011.

27.     Revlon's Age Defying with DNA Advantage Cream Makeup represents that it has "SPF 20 / FPS 20." SPF stands for "Sun Protection Factor," and FPS its French equivalent, Facteur de Protection Solaire.

28.     To the extent Revlon simply means to imply that the Age Defying DNA Advantage Products offer SPF, representing, characterizing, and advertising this feature as "with DNA Advantage," and suggesting that the product "protects the skin's DNA," even if in some sense literally true, is highly misleading. Clearly, these product statements immediately suggest (as likely intended by Revlon) that the product ingredients provide some sort of "advantage" specifically linked to DNA, *above and beyond* normal SPF, that gives the Age Defying DNA Advantage Products an enhanced, scientifically-based, anti-aging efficacy.

29.     Indeed, nowhere on the label of Revlon Age Defying with DNA Advantage Cream Makeup does Revlon connect the "with DNA Advantage" representation to its SPF. Rather, the two are separated by six lines of text. Moreover, while "Age Defying" and "DNA Advantage" representations are prominent, "SPF 20 / FPS 20" appears in the smallest font on

the bottle, at the bottom. If anything, that "with DNA Advantage" and "SPF 20 / FPS 20" are so separated misleadingly implies that these are separate and distinct features of the product.

30.    Moreover, although Revlon Age Defying with DNA Advantage Cream Makeup contains SPF, neither of the other Age Defying DNA Advantage Products contain SPF. Thus, Revlon's "with DNA Advantage" representation either cannot be referring to SPF, or if it does, is wholly false with respect to the product line's concealer and powder products—which Revlon knew, having defined "DNA Advantage" essentially as sunscreen ("ingredient … to protect against UV rays"), in its 2010 trademark application which Revlon filed under oath under the penalty of perjury.

31.    In addition, contrary to Revlon's trademark application, Revlon's customer service agents who respond to customer inquiries (each of the DNA Advantage Product labels states "QUESTIONS? 1-800-473-8566") are either unable to articulate a concrete and definite meaning of "DNA Advantage," or represent that "with DNA Advantage" refers to the combination of several ingredients, beyond just those which give the cream makeup SPF, specifically: Niacinamide, Sodium Hyaluronate, Ceramide Complex, Cottonbloom Extract, and Acerola (Superfruit) Extract.

32.    Only the cream makeup, however, contains all of these ingredients. Both the concealer and powder contain only some of the ingredients. And the list of ingredients identified by customer service reps on the phone does not even include the ingredients that constitute sunscreen as listed on the cream makeup, specifically octinoxate (ethylhexyol methoxycinnamate) 3.5%, and titanium dioxide 9.5%.

33.    Moreover, none of the Age Defying DNA Advantage Products identify any of these ingredients identified by customer service reps as active ingredients. Rather, the concealer and powder do not purport to have *any* active ingredients, and the cream makeup lists only the two ingredients constituting sunscreen, as noted in the paragraph above.

34.    In addition, none of the ingredients identified by the customer service reps is capable of stimulating, interacting with, or otherwise affecting the DNA in human skin cells, as Revlon's advertising suggests.

35.     Revlon further bolsters its false or misleading references to "DNA" with the claim that a clinical study shows "96% of women saw flawless younger skin in 2 weeks." However, Revlon provides the public with scant information about this alleged study (nothing beyond the 96% claim), making it difficult or impossible for consumers to assess the veracity of Revlon's claim.

## B.      Revlon Misbranded the Age Defying DNA Advantage Products

### i.      The Federal Food, Drug, and Cosmetic Act

36.     The FDCA, 21 U.S.C. §§ 301 *et seq.*, governs the sale of foods, drugs, and cosmetics in the United States. The classification of a product as a food, drug, or cosmetic, affects the regulations by which the product must abide. In general, a product is characterized according to its intended use, which may be established, among other ways, by: (a) claims stated on the product's labeling, in advertising, on the Internet, or in other promotional materials; (b) consumer perception established through the product's reputation, for example by asking why the consumer is buying it and what the consumer expects it to do; or (c) the inclusion of ingredients well-known to have therapeutic use, for example fluoride in toothpaste.[1]

---

[1]  http://www.fda.gov/cosmetics/guidancecomplianceregulatoryinformation/ucm074201.htm *see also* 21 C.F.R. § 201.128 (

> The words *intended uses* or words of similar import . . . refer to the objective intent of the persons legally responsible for the labeling of drugs. The intent is determined by such persons' expressions or may be shown by the circumstances surrounding the distribution of the article. This objective intent may, for example, be shown by labeling claims, advertising matter, or oral or written statements by such persons or their representatives. . . . But if a manufacturer knows, or has knowledge of facts that would give him notice, that a drug introduced into interstate commerce by him is to be used for conditions, purposes, or uses other than the ones for which he offers it, he is required to provide adequate labeling for such a drug which accords with such other uses to which the article is to be put.)

37.     The FDCA defines <u>drugs</u>, in part, by their intended use, as "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease," or "articles (other than food) intended to affect the structure or function of the body of man or other animals," 21 U.S.C. § 321(g)(1).

38.     The FDCA defines <u>cosmetics</u> by their intended use, as "articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body . . . for cleansing, beautifying, promoting attractiveness, or altering appearance," 21 U.S.C. § 321(i)(1).

39.     The FDA has explained that "[s]ome products meet the definitions of both cosmetics and drugs," for example, "when a product has two intended uses" as with an anti-dandruff shampoo," which "is a cosmetic because its intended use is to cleanse the hair," and also "is a drug because its intended use is to treat dandruff. . . . Such products must comply with the requirements for both cosmetics and drugs." [2]

40.     The FDA has further explained that "[f]irms sometimes violate the law by marketing a cosmetic with a drug claim or by marketing a drug as if it were a cosmetic, without adhering to requirements for drugs."[3]

41.     California's counterpart to the FDCA, known as the Sherman Law, incorporates the FDCA's drug regulations. Cal. Health & Safety Code §§ 109925, 110110, 111550. Further, the Sherman Law provides that "[a]ny drug or device is misbranded if its labeling is false or misleading in any particular." *Id.* § 111330.

42.     New York EDN. Law § 6815 similarly provides that "[a] drug or device shall be deemed to be misbranded: a. If its labeling is false or misleading in any particular."

**ii.     The Age Defying DNA Advantage Products are Both Cosmetics and Drugs**

43.     Revlon markets the Age Defying DNA Advantage Products as cosmetics.

---

[2] *Id.*

[3] *Id.*

44.    But the Age Defying DNA Advantage Products are also drugs because an intended use of the products, as repeatedly demonstrated throughout Revlon's packaging, advertising, and marketing materials, is to affect the structure and function of the human body, specifically, DNA within human skin. Accordingly, the product is promoted for uses that cause it to be a drug under 21 U.S.C. § 321(g)(1), including through statements similar to those the FDA has found render other, similar products to be considered drugs under the Act.[4]

45.    Specifically, the following Revlon representations expressly set forth therapeutic uses or purposes for the Age Defying DNA Advantage Products, rendering them drugs under the FDCA:

      a.    "Help[] protect skin's DNA to fight signs of aging."

      b.    "Helps protect skin's DNA from future damage to fight the signs of aging."

      c.    "Lines and wrinkles are visibly diminished while skin is refreshed, hydrated, revitalized."

      d.    "Protection from visible signs of aging while diminishing the look of lines and wrinkles."

      e.    "[H]elps skin to feel conditioned and look luminous, minimizing the appearance of discoloration due to the signs of aging[.]"

      f.    "Targets undereye puffiness, dark circles, fine lines and wrinkles."

---

[4] *See*, *e.g.*, Oct. 9, 2008 FDA Warning Letter to Natural Biology, Inc., *available at* http://www.fda.gov/iceci/enforcementactions/warningletters/2008/ucm1048101.htm (finding product to be promoted as a drug in part based on representation that it "provid[es] greater protection against DNA damage than vitamins C, E, or beta-carotene.").

### iii. The Age Defying DNA Advantage Products are Misbranded Because their Labels Violate FDCA Regulations for Over-the-Counter (OTC) Drugs

46.     Pursuant to 21 U.S.C. § 352(c), "[a] drug . . . shall be deemed to be misbranded . . . . [i]f any word, statement, or other information required by or under authority of this chapter to appear on the label or labeling is not prominently placed thereon . . . ."

47.     Drug labeling regulations appear in Part 201 of Title 21 of the Code of Federal Regulations.

48.     Pursuant to 21 U.S.C. § 352(c), "[a] drug . . . shall be deemed to be misbranded . . . . [u]nless its labeling bears (1) adequate directions for use . . . ."

49.     The Age Defying DNA Advantage Products are misbranded because they do not state the active drug ingredients as required by 21 C.F.R. § 201.66(c), which provides in part:

> The outside container or wrapper of the retail package . . . shall contain . . . . (2) "Active ingredient" or "Active ingredients" "(in each [insert the dosage unit stated in the directions for use (e.g., table, 5 mL teaspoonful) or in each gram as stated in 333.110 and 333.120 of this chapter])", followed by the established name of each active ingredient and the quantity of each active ingredient per dosage unit. Unless otherwise provided in an applicable OTC drug monograph or approved drug application, products marketed without discreet dosage units (e.g., topicals) shall state the proportion (rather than the quantity) of each active ingredient.

50.     Specifically, the Revlon Age Defying with DNA Advantage Powder and Revlon Age Defying with DNA Advantage Concealer do not contain any "Active Ingredients" statement.

51.     Although the Revlon Age Defying with DNA Advantage Cream Makeup includes an "Active Ingredients" statement, it identifies only two ingredients that are typical to sunscreens, and which give the product its SPF. The cream makeup does not disclose any of the 5 ingredients that supposedly comprise the "DNA Advantage" as active ingredients.

52.    Revlon thus also fails to disclose the proportion of these ingredients on the Age Defying DNA Advantage Products' label and packaging, in violation of 21 C.F.R. §§ 201.66(c)(2).

53.    21 C.F.R. § 201.66(d) provides the "Format requirements" for the disclosures required under 21 C.F.R. § 201.66(c)(2). Since Revlon fails to even make those required disclosures, Revlon also violates 21 C.F.R. § 201.66(d).

54.    Accordingly, the Age Defying DNA Advantage Products are misbranded pursuant to 21 U.S.C. § 352(c) and 21 C.F.R. § 201.66.

55.    Revlon's failure to disclose the proportion of active ingredients in the Age Defying DNA Advantage Products misleadingly obscures from consumers the amounts or proportions contained in the products, which could therefore be miniscule.

56.    In addition, 21 C.F.R. § 201.5 sets forth the definition of "adequate directions for use" used in 21 U.S.C. § 352(f), and specific examples of inadequate directions. Since Revlon does not provide any directions for use, it is misbranded pursuant to both 21 U.S.C. § 352(f) and 21 C.F.R. § 201.5.

### iv.    The Age Defying DNA Advantage Products are Misbranded Because their Labels Violate FDCA Regulations for Cosmetics

57.    Pursuant to 21 U.S.C. § 362(c), "[a] cosmetic shall be deemed to be misbranded . . . . [i]f any word, statement, or other information required by or under authority of this chapter to appear on the label or labeling is not prominently placed thereon . . . ."

58.    Cosmetic labeling regulations appear in Part 701 of Title 21 of the Code of Federal Regulations.

59.    Pursuant to 21 C.F.R. § 701.3(d), because the Age Defying DNA Advantage Products are "cosmetic[s] [that are] also [ ] over-the-counter drug product[s]," they must "declare the active drug ingredients as set forth in 201.66(c)(2) and (d) of" title 21 of the Code of Federal Regulations.

60.    As alleged above in paragraphs 59 to 62, the Age Defying DNA Advantage Products fail to make the required statement of active drug ingredients under 21 C.F.R. §

201.66. Accordingly, the products are misbranded pursuant to 21 U.S.C. § 362(c) and 21 C.F.R. § 701.3.

> **v.     The Age Defying DNA Advantage Products are Unapproved New Drugs**

61.     Placing an unapproved new drug into the stream of commerce is an independent wrongful act under the FDCA, different than misbranding. 21 U.S.C. § 355(a).

62.     Under the FDCA, drugs must either receive premarket approval by the FDA through a New Drug Application process, or conform to a monograph for a particular drug category, as established by the FDA's Over-the-Counter Drug Review. Such monographs specify conditions whereby OTC drug ingredients are generally recognized as safe and effective, and not misbranded.

63.     The FDA has not conducted a review of the Age Defying DNA Advantage Products and found them to be generally recognized as safe. Nor has the FDA concluded that at least some of its active ingredients are generally recognized as safe or effective.

64.     Because the Age Defying DNA Advantage Products are not generally recognized as safe and effective when used as labeled, they are new drugs as defined in 21 U.S.C. § 321(p).

65.     Such new drugs may not be lawfully marketed in the United States without prior approval from the FDA as described in 21 U.S.C. § 355(a), in the form of a New Drug Application approval.

66.     Revlon has filed no New Drug Application for the Age Defying DNA Advantage Products, nor has the FDA ever approved any such application for the products.

## PLAINTIFFS' RELIANCE & INJURIES

67.     Plaintiffs purchased the Age Defying DNA Advantage Products relying on Revlon's claims that they provide "Age Defying" benefits and contain "DNA Advantage," to help protect their skins' DNA. These representations were (and are) false and misleading, and had (and have) the capacity, tendency, and likelihood to confuse or confound plaintiffs and other consumers acting reasonably.

68.     Plaintiffs paid more for the products than they otherwise would have absent these statements, and would not have been willing to pay the prices they did, or to purchase them at all, absent the misrepresentations.

69.     Because the Age Defying DNA Advantage Products did not actually affect the skin's DNA as promised, their true value was $0, and plaintiffs and other Age Defying DNA Advantage Product purchasers were injured at least in the amounts of their purchases.

70.     By using false and misleading claims, Revlon was able to command a market price for the Age Defying DNA Advantage Products significantly above a fair market price, and above what its price would have been absent Revlon's use of the false and misleading statements.

71.     Plaintiffs sustained legally cognizable injury in the form of lost money as a result of Revlon's misbranding, which also was in the nature of an omission, *i.e.*, Revlon's failure to disclose the Age Defying DNA Advantage Products' active drug ingredients and their proportions, as well as the failure to provide adequate directions for use.

72.     Had Revlon labeled the Age Defying DNA Advantage Products in conformance with applicable FDCA and state law cosmetic and drug regulations, plaintiffs may have been unwilling to purchase the Age Defying DNA Advantage Products at the prices they paid, and may not have purchased them at all.

73.     Plaintiffs sustained legally cognizable injury in the form of lost money as a result of Revlon's marketing the Age Defying DNA Advantage Products in a manner that causes them to be new drugs within the meaning of the FDCA. Since manufactures may not lawfully market or sell *any* new drug, the Age Defying DNA Advantage Products would not have been available for sale to plaintiffs if Revlon had acted lawfully.

## CLASS ACTION ALLEGATIONS

74.     Pursuant to Federal Rule of Civil Procedure 23, plaintiffs seek to represent a class of all persons in the United States who purchased, on or after April 25, 2011, one or more of the Age Defying DNA Advantage Products for personal, family, or household use, and not for resale.

75.     Pursuant to Federal Rule of Civil Procedure 23, plaintiff Rosen further seeks to represent a subclass of all persons in California who purchased one or more of the Age Defying DNA Advantage Products for personal, family, or household use, and not for resale.

76.     The members in the proposed class and subclass are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all class members in a single action will provide substantial benefits to the parties and Court.

77.     Questions of law and fact common to plaintiff and the class include, but are not limited to the following:

a.     Whether "with DNA Advantage" has a concrete, definite meaning, and if so, what that meaning is, and whether the representation is false or misleading in that it has the capacity, tendency, or likelihood of confusing or confounding ordinary consumers acting reasonably;

b.     If "with DNA Advantage" has no concrete, definite meaning, whether that, in itself, means the advertisement has the capacity, tendency, or likelihood of confusing or confounding ordinary consumers acting reasonably;

c.     Whether "Age Defying" as used for the Age Defying DNA Advantage Products is false or misleading in that it has the capacity, tendency, or likelihood of confusing or confounding ordinary consumers acting reasonably;

d.     Whether the Age Defying DNA Advantage Products have any efficacy in providing the "anti-aging" or "age-defying" benefits advertised;

e.     Whether the Age Defying DNA Advantage Products directly interact with, stimulate, or otherwise affect the human skin's DNA;

f.     Whether the Age Defying DNA Advantage Products' packaging or labels violate applicable FDCA and state law regulations relating to drugs and cosmetics;

g.  Whether Revlon marketed and sold the Age Defying DNA Advantage Products as new drugs, in violation of applicable FDCA and state law statutory and regulatory provisions;

h.  Whether Revlon marketed and sold the Age Defying DNA Advantage Products knowing that its representations were likely to confuse and deceive reasonable consumers;

i.  The proper equitable and injunctive relief;

j.  The proper amount of actual or compensatory damages;

k.  The proper amount of restitution or disgorgement;

l.  The proper amount of punitive damages; and

m.  The proper amount of reasonable litigation expenses and attorneys' fees.

78.  Plaintiffs' claims are typical of class members' claims in that they are based on the same underlying facts, events, and circumstances relating to Revlon's conduct.

79.  Plaintiffs will fairly and adequately represent and protect the interests of the class, have no interests incompatible with the interests of the class, and have retained counsel competent and experienced in class action litigation.

80.  Class treatment is superior to other options for resolution of the controversy because the relief sought for each class member is small such that, absent representative litigation, it would be infeasible for class members to redress the wrongs done to them.

81.  Questions of law and fact common to the class predominate over any questions affecting only individual class members.

82.  As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

## FIRST CAUSE OF ACTION

## UNFAIR AND DECEPTIVE BUSINESS PRACTICES, N.Y. GEN. BUS. L. § 349

### (By the Nationwide Class)

83.  Plaintiffs reallege and incorporate the allegations elsewhere in the First Amended Complaint as if fully set forth herein.

84.    Revlon's conduct constitutes deceptive acts or practices or false advertising in the conduct of business, trade or commerce or on the furnishing of services in New York which affects the public interest under N.Y. Gen. Bus. L. § 349.

85.    As alleged herein, by advertising, marketing, distributing, and selling the Age Defying DNA Products to plaintiffs and other class members with false or misleading claims and representations, Revlon engaged in, and continues to engage in, deceptive acts and practices.

86.    As alleged herein, by misbranding the Age Defying DNA Products, Revlon engaged in, and continues to engage in, deceptive acts and practices.

87.    Revlon's conduct was materially misleading to plaintiffs and the class.

88.    During the class period, Revlon carried out a plan, scheme and course of conduct which was consumer oriented.

89.    As a direct and proximate result of Revlon's violation of N.Y. Gen. Bus. L. § 349, plaintiffs and the class were injured and suffered damages.

90.    The injuries to plaintiffs and the class were foreseeable to Revlon and, thus the Revlon's actions were unconscionable and unreasonable.

91.    Revlon is liable for damages sustained by plaintiffs and the class to the maximum extent allowable under N.Y. Gen. Bus. L. § 349.

92.    Pursuant to N.Y. Gen. Bus. L. § 349(h), plaintiffs and the class seek an Order enjoining Revlon from continuing to engage in unlawful acts or practices, false advertising, and any other acts prohibited by law, including those set forth in this First Amended Complaint.

## SECOND CAUSE OF ACTION

### FALSE ADVERTISING, N.Y. GEN. BUS. L. § 350

### (By the Nationwide Class)

93.    Plaintiffs reallege and incorporate the allegations elsewhere in the First Amended Complaint as if fully set forth herein.

94.     Revlon has engaged and is engaging in consumer-oriented conduct which is deceptive or misleading in a material way, constituting false advertising in the conduct of any business, trade, or commerce, in violation of N.Y. Gen. Bus. L. § 350.

95.     As a result of Revlon's false advertising, plaintiffs and the class have suffered and continue to suffer substantial injury, including damages, which would not have occurred but for the false and deceptive advertising, and which will continue to occur unless Revlon is permanently enjoined by this Court.

## THIRD CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

### (By the Nationwide Class)

96.     Plaintiffs reallege and incorporate the allegations elsewhere in the First Amended Complaint as if fully set forth herein.

97.     Revlon misrepresented to plaintiffs and the class the characteristics and benefits of the Age Defying DNA Advantage Products, and omitted material facts concerning the true nature of the products.

98.     Revlon owed a duty to plaintiffs and the class to exercise reasonable care when issuing statements or disclosures regarding the Age Defying DNA Advantage Products' characteristics and benefits.

99.     Revlon's statements and disclosures regarding the characteristics and benefits of the Age Defying DNA Advantage Products were likely to deceive plaintiffs and the class.

100.    Revlon's omissions of material information were likely to deceive plaintiffs and the class in that, had Revlon not omitted such material information, the disclosure of that information would have resulted in plaintiffs and the class acting differently, for example, not purchasing the Age Defying DNA Advantage Products.

101.    Revlon's claims have influenced or are likely to influence future decisions of consumers and the buying public. Plaintiffs and the class, by purchasing the Age Defying DNA Advantage Products, reasonably acted in reliance on the truth of Revlon's representations, and the absence of the material information that Revlon deceptively omitted.

102.    As a direct and proximate result of plaintiffs' and the class's reliance upon the representations made by Revlon, plaintiffs and the class have sustained damages and ascertainable loss.

**FOURTH CAUSE OF ACTION**

**INTENTIONAL MISREPRESENTATION**

**(By the Nationwide Class)**

103.    Plaintiffs reallege and incorporate the allegations elsewhere in the First Amended Complaint as if fully set forth herein.

104.    Revlon represented to the public, including to plaintiffs and the class, that the Age Defying DNA Advantage Products provided a scientifically-based advantage over similar cosmetics, which would help protect the skin's DNA and provide age-defying benefits.

105.    Revlon's representations were false and misleading.

106.    At the time Revlon made statements or representations regarding the nature and qualities of the Age Defying DNA Advantage Products, Revlon knew that the statements and representations were false and misleading.

107.    Revlon made the misrepresentations alleged herein with the intention of inducing and persuading plaintiffs and the class to purchase the Age Defying DNA Advantage Products.

108.    Revlon further withheld and omitted material information about the Age Defying DNA Advantage Products with the intention of inducing and persuading plaintiffs and the class to purchase the products.

109.    Plaintiffs and the class, by purchasing the Age Defying DNA Advantage Products, reasonably relied on Revlon's false and misleading statements and misrepresentations, and on the absence of the material information that Revlon deceptively omitted.

110.    As a direct and proximate result of Revlon's intentional misrepresentations and deceptive omissions, plaintiffs and the class were induced to pay, and pay a premium for, the Age Defying DNA Advantage Products.

111.    Plaintiffs and the class were damaged through their purchase and use of the Age Defying DNA Advantage Products.

112.    Plaintiffs' and the class's reliance on Revlon's statements and representations of the nature and characteristics of the Age Defying DNA Advantage Products was reasonable. As a result, Revlon is guilty of malice, oppression, and fraud, and plaintiffs and the class are therefore entitled to recover exemplary or punitive damages.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE UNFAIR COMPETITION LAW,
### CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*
### (By the California Subclass)

113.    Plaintiff Rosen realleges and incorporates the allegations elsewhere in the First Amended Complaint as if fully set forth herein.

114.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200.

### Fraudulent

115.    As set forth herein, Revlon's claims relating to the Age Defying DNA Advantage Products are false or misleading, and likely to deceive reasonable consumers and the public.

### Unlawful

116.    Revlon has misbranded the Age Defying DNA Advantage Products. Misbranding is a "[p]rohibited act[]" under the FDCA, 21 U.S.C. § 331, and therefore Revlon has behaved in an "unlawful" manner under the UCL.

117.    Revlon has illegally marketed new drugs in violation of 21 U.S.C. § 355(a) and Cal. Health & Safety Code § 110110, and therefore has behaved in an "unlawful" manner under the UCL.

**Unfair**

118.    Revlon's conduct with respect to the labeling, advertising, and sale of Age Defying DNA Advantage Products is unfair because Revlon's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

119.    Revlon's conduct with respect to the labeling, advertising, and sale of the Age Defying DNA Advantage Products is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the False Advertising Law, the Consumers Legal Remedies Act, the Lanham Act, portions of the Federal Food, Drug, and Cosmetic Act, and portions of the California Sherman Food, Drug, and Cosmetic Law.

120.    Revlon's conduct with respect to the labeling, advertising, and sale of the Age Defying DNA Advantage Products is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves can reasonably avoid.

\*               \*               \*

121.    In accordance with Cal. Bus. & Prof. Code § 17203, plaintiff Rosen seeks an Order enjoining Revlon from continuing to conduct business through fraudulent or unlawful acts and practices, and to commence a corrective advertising campaign.

122.    On behalf of herself and the California subclass, plaintiff Rosen also seeks an Order for the restitution of all monies from the sale of Age Defying DNA Advantage Products that were unjustly acquired through acts of fraudulent, unlawful, or unfair competition.

## SIXTH CAUSE OF ACTION

## VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW,
## CAL. BUS. & PROF. CODE §§ 17500 *ET SEQ.*
### (By the California Subclass)

123.    Plaintiff Rosen realleges and incorporates the allegations elsewhere in the First Amended Complaint as if fully set forth herein.

124.    The FAL prohibits any statement in connection with the sale of goods "which is untrue or misleading," Cal. Bus. & Prof. Code § 17500.

125.    As set forth herein, Revlon's claims relating to the Age Defying DNA Advantage Products are untrue and misleading.

126.    Revlon knew, or reasonably should have known, that the claims were untrue or misleading.

127.    Plaintiff Rosen and members of the California subclass are entitled to injunctive and equitable relief, and restitution in the amount they spent on Revlon Age Defying DNA Advantage Products.

## SEVENTH CAUSE OF ACTION

## VIOLATIONS OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750 *ET SEQ.*

### (By the California Subclass)

128.    Plaintiff Rosen realleges and incorporates the allegations elsewhere in the First Amended Complaint as if fully set forth herein.

129.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

130.    Revlon's policies, acts, and practices were designed to, and did, result in the purchase and use of the products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

a.    § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b.    § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c.    § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d.    § 1770(a)(16): representing the subject of a transaction has been supplied

in accordance with a previous representation when it has not.

131.    As a result, plaintiff Rosen and the California subclass members have suffered irreparable harm and are entitled to injunctive relief.

132.    In compliance with Cal. Civ. Code § 1780(d), plaintiff Rosen's affidavit of venue was filed concurrently with the original Complaint.

133.    In compliance with Civ. Code § 1782, plaintiff Rosen sent written notice to Revlon of her claims, which Revlon received on April 3, 2014.

134.    In addition to injunctive relief, Rosen and the California subclass members are entitled to actual and punitive damages, as well as attorneys' fees.

## EIGHTH CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

### (By the Nationwide Class)

135.    Plaintiffs reallege and incorporate the allegations elsewhere in the First Amended Complaint as if fully set forth herein.

136.    In selling the Age Defying DNA Advantage Products to plaintiffs and the class members, Revlon made an affirmation of fact or promise that the products would provide a "DNA Advantage," and thereby "help[] protect skin's DNA," as well as related affirmations of fact, promises, and descriptions, which formed part of the basis of the bargain. Revlon thus expressly warranted the goods sold.

137.    The Age Defying DNA Advantage Products do not live up to these affirmations of fact, promises, and descriptions, causing the breach of warranty when plaintiffs and other consumers purchased them.

138.    Plaintiffs, on behalf of themselves and the class, seek actual damages for Revlon's breach of warranty.

## NINTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (By the Nationwide Class)

139.    Plaintiffs reallege and incorporate the allegations elsewhere in the First Amended Complaint as if fully set forth herein.

140.    In selling the Age Defying DNA Advantage Products to plaintiffs and the class, Revlon impliedly warranted that the goods sold were merchantable, but the Age Defying DNA Advantage Products do not protect, affect, or otherwise interact with the skin's DNA, or otherwise provide a purported "DNA Advantage."

141.    Plaintiffs and the class suffered injury as a result of Revlon's breach in that they paid money for a product that does not provide the benefits advertised.

142.    Plaintiffs, on behalf of themselves and the class, seek actual damages for Revlon's breach of warranty.

## TENTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF FITNESS

### (By the Nationwide Class)

143.    Plaintiffs reallege and incorporate the allegations elsewhere in the First Amended Complaint as if fully set forth herein.

144.    In selling the Age Defying DNA Advantage Products to plaintiffs and the class, Revlon impliedly warranted that the goods sold were fit for their particular purpose, e.g., providing an "Advantage" to the skin's DNA, as well as protecting the skin's DNA so as to provide "Age Defying" benefits.

145.    Revlon breached the warranty in that the Age Defying DNA Advantage Products did not provide the benefits advertised.

146.    Plaintiffs and the class suffered injury as a result of Revlon's breach in that they paid money for a product that did not adequately interact with the skin's DNA to be fit for its purpose.

147.    Plaintiffs, on behalf of themselves and the class, seek actual damages for Revlon's breach of warranty.

## ELEVENTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY, CAL. COMM. CODE § 2313

### (By the California Subclass)

148.    Plaintiff Rosen realleges and incorporates the allegations elsewhere in the First Amended Complaint as if fully set forth herein.

149.    There was a sale of goods from Revlon to plaintiff Rosen and the California subclass members.

150.    Revlon made an affirmation of fact or promise that the products would provide a "DNA Advantage," and thereby "help[] protect skin's DNA," as well as related affirmations of fact, promises, and descriptions, which formed part of the basis of the bargain. Revlon thus expressly warranted the goods sold.

151.    The Age Defying DNA Advantage Products do not live up to these affirmations of fact, promises, and descriptions, causing the breach of warranty when plaintiffs and other consumers purchased them.

152.    Plaintiff Rosen, on behalf of herself and the California subclass, seek actual damages for Revlon's breach of warranty.

## TWELFTH CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY,

### CAL. COMM. CODE § 2313(1)

### (By the California Subclass)

153.    Plaintiff Rosen realleges and incorporates the allegations elsewhere in the First Amended Complaint as if fully set forth herein.

154.    "Unless excluded or modified . . . a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Comm. Code § 2314(1).

155.   There was a sale of goods from Revlon to plaintiff Rosen and the California subclass members.

156.   In selling the Age Defying DNA Advantage Products to plaintiff and the class, Revlon impliedly warranted that the goods sold were merchantable,

157.   Revlon breached the warranty in that the Age Defying DNA Advantage Products do not protect, affect, or otherwise interact with the skin's DNA, or otherwise provide a purported "DNA Advantage."

158.   Plaintiffs Rosen and the California subclass members suffered injury as a result of Revlon's breach in that they paid money for a product that does not provide the benefits advertised.

159.   Plaintiffs Rosen on behalf of herself and the California subclass, seeks actual damages for Revlon's breach of warranty.

## THIRTEENTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF FITNESS, CAL. COMM. CODE § 2315

### (By the California Subclass)

160.   Plaintiff Rosen realleges and incorporates the allegations elsewhere in the First Amended Complaint as if fully set forth herein.

161.   "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." Cal. Comm. Code § 2315.

162.   There was a sale of goods from Revlon to plaintiff Rosen and the California subclass members.

163.   Revlon impliedly warranted the goods sold were fit for their particular purpose, e.g., interacting with and protecting the skin's DNA to provide "Age Defying" benefits.

164.   Revlon breached the warranty in that the Age Defying DNA Advantage Products did not provide the benefits advertised.

165.    Plaintiffs Rosen and the California subclass members suffered injury as a result of Revlon's breach in that they paid money for a product that did not adequately interact with the skin's DNA to be fit for its purpose.

166.    Plaintiff Rosen, on behalf of herself and the California subclass, seeks actual damages for Revlon's breach of warranty.

## FOURTEENTH CAUSE OF ACTION

### UNJUST ENRICHMENT

### (By the Nationwide Class)

167.    Plaintiffs reallege and incorporate the allegations elsewhere in the First Amended Complaint as if fully set forth herein.

168.    By means of its material misconduct as set forth herein, Revlon induced plaintiffs and the class to purchase the Age Defying DNA Advantage Products at a premium to their actual value, and to similar cosmetics that do not make "Age Defying" and "DNA Advantage" claims.

169.    As a consequence of this misconduct, plaintiffs and the class were spent money they would not otherwise have been willing to spend absent the misrepresentations and misconduct by Revlon.

170.    By virtue of the foregoing, Revlon has been unjustly enriched in an amount to be determined with respect to plaintiffs and the class, to the extent that Revlon received and kept revenues collected from the sale of the Age Defying DNA Advantage Products, which Revlon would not have received absent its misconduct.

## FIFTEENTH CAUSE OF ACTION

### RESTITUTION

### (By the Nationwide Class)

171.    Plaintiffs reallege and incorporate the allegations elsewhere in the First Amended Complaint as if fully set forth herein.

172.    By virtue of deceptive and unlawful business practices, Revlon charged and received payment for the Age Defying DNA Advantage Products. Revlon should not be

permitted to retain those payments in equity and good conscience, as those payments were obtained in contravention of the law. To permit Revlon to retain those payments would wrongfully confer a benefit upon Revlon at the expense of plaintiffs and the class.

173.    Under the circumstances, it would be inequitable for Revlon to retain these ill-gotten benefits, and therefore restitution to plaintiffs and the class is warranted.

## PRAYER FOR RELIEF

174.    Wherefore, plaintiffs, on behalf of themselves, all others similarly situated and the general public, pray for judgment against Revlon as to each and every cause of action, including:

A.    An Order declaring this action to be a proper class action, appointing plaintiffs and their counsel to represent the class, and requiring Revlon to bear the costs of class notice;

B.    An Order enjoining Revlon from selling the Age Defying DNA Advantage Products;

C.    An Order enjoining Revlon from selling Age Defying DNA Advantage Products in a false or misleading manner, including through use of references to "DNA," and in any manner that violates FDCA and other federal and state regulations including those concerning labeling;

D.    An Order requiring Revlon to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing product;

E.    An Order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Revlon from continuing the unlawful practices alleged herein, and injunctive relief to remedy Revlon's past conduct;

F.    An Order requiring Revlon to pay to the nationwide class restitution, including the California subclass members to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent

business act or practice, untrue or misleading advertising, or a violation of the UCL, FAL or CLRA, plus pre-and post-judgment interest thereon;

H.     An Order requiring Revlon to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

I.     An Order requiring Revlon to pay all actual and statutory damages permitted under the causes of action alleged herein;

J.     An Order requiring Revlon to pay punitive damages on any causes of action so allowable if plaintiffs prove Revlon's conduct was knowing, willful, malicious, oppressive, or reckless;

K.     An Order awarding attorneys' fees and costs to plaintiffs and the class;

L.     An Order providing for all other such equitable relief as may be just and proper.

## JURY DEMAND

 Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: May 6, 2014

/s/ *Jack Fitzgerald*
By: Jack Fitzgerald
**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 4294401)
*jack@jackfitzgeraldlaw.com*
THOMAS A. CANOVA (SBN 2108119)
*tom@jackfitzgeraldlaw.com*
The Palm Canyon Building
2870 Fourth Avenue, Suite 205
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555
**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (*Pro Hac Vice Pending*)
*ron@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
***Attorneys for Plaintiffs and the Proposed Class***