UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
ANNE ELKIND and SHARON ROSEN,
on behalf of themselves and all
others similarly situated,

                                        MEMORANDUM AND ORDER
                Plaintiffs,             14-CV-2484(JS)(AKT)

        -against-

REVLON CONSUMER PRODUCTS
CORPORATION,

                Defendant.
------------------------------------X
APPEARANCES
For Plaintiffs:     John Joseph Fitzgerald IV, Esq.
                    Thomas A. Canova, Esq.
                    Tran H. Nguyen, Esq.
                    Trevor Flynn, Esq.
                    Law Office of Jack Fitzgerald, PC
                    3636 Fourth Ave, Suite 202
                    San Diego, CA 92103

                    Ronald A. Marron, Esq.
                    Skye Resendes, Esq.
                    Law Offices of Ronald A. Marron
                    651 Arroyo Drive
                    San Diego, CA 92103

For Defendant:      Patricia Glaser, Esq.
                    Sean Riley, Esq.
                    Glaser Weil
                    10250 Constellation Blvd, 19th Fl.
                    Los Angeles, CA 90067

                    Jill Caroline Barnhart, Esq.
                    Nelson A. Boxer, Esq.
                    Petrillo Klein & Boxer LLP
                    655 Third Ave, 22nd Fl.
                    New York, NY 10017

SEYBERT, District Judge:

Plaintiffs Anne Elkind and Sharon Rosen (together, "Plaintiffs") commenced this putative class action on behalf of themselves and others similarly situated against defendant Revlon Consumer Products Corporation ("Defendant" or "Revlon"), alleging, inter alia, false and misleading advertising in violation of the New York General Business Law, N.Y. GEN. BUS. LAW § 349 et seq., and the California Business and Professional Code, CAL. BUS. & PROF. CODE § 17200 et seq.; breach of warranty; unjust enrichment; negligent misrepresentation; and fraud.

Pending before the Court is Revlon's motion to dismiss for failure to state a claim, or, in the alternative, to strike portions of Plaintiffs' First Amended Complaint. (Docket Entry 18.) For the following reasons, Defendant's motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND[1]

I.   The Products

Revlon markets, advertises, and sells three types of cosmetics under the brand name "Revlon Age Defying with DNA Advantage." (Am. Compl., Docket Entry 12, ¶ 1.) The three types of cosmetics are a cream makeup ("Foundation"), a powder

---

[1] The following facts are drawn from the First Amended Complaint and are assumed true for the purposes of this Memorandum and Order.

("Powder"), and a concealer ("Concealer" and together with the Foundation and the Powder, the "Products"). (Am. Compl. ¶¶ 1, 15.) The phrase "Age Defying with DNA Advantage" is prominently featured on the Products and their packaging. (Am. Compl. ¶ 16.) The Products' dress also contain a silhouetted "double-helix" shape often associated with the structure of DNA. (Am. Compl. ¶ 17.) In-store displays of the Products state that the Products "[h]elp[ ] protect the skin's DNA to fight signs of aging." (Am. Compl. ¶ 19.)

According to Plaintiffs, the phrase "Age Defying with DNA Advantage," together with the invocation of the double-helix silhouette and the in-store claim that the Products "[h]elp[ ] protect the skin's DNA to fight signs of aging" suggest that the Products work to retard aging by manipulating the DNA in skin cells. (Am. Compl. ¶¶ 24-25.) Specifically, Plaintiffs allege that these statements led them (and would lead a reasonable consumer) to believe that the Products would "interact with the skin's DNA, perhaps on a cellular or molecular level, to provide scientifically-enhanced therapeutic benefits that reverse, minimize, slow, or otherwise 'defy' the process of aging." (Am. Compl. ¶ 2.)

Elsewhere, Revlon bolsters its claims of the Products' age-defying effects. For example, Revlon's 2012 annual report described the Products as "help[ing to] protect the skin's DNA and

3

fight visible signs of aging." (Am. Compl. ¶ 21.) Revlon's website states that the Foundation contains "powerful anti-aging skincare to help protect skin's DNA to fight the visible signs of aging." (Am. Compl. ¶ 20.) Revlon has also registered the phrase "DNA Advantage" with the United States Trademark Office. (Am. Compl. ¶ 26.) The phrase, according to Revlon, refers to "an ingredient used in cosmetics and makeup to protect against UV rays." (Am. Compl. ¶ 26.) Notably, however, the Foundation is the only one of the Products that contains ingredients known to give products a Sun Protection Factor ("SPF"). (Am. Compl. ¶ 30.)

Plaintiffs further allege that the Products are incapable of functioning in the manner that their labeling suggests. Each of the Products, Plaintiffs allege, is composed of at least some the following ingredients: niacinamide, sodium hyaluronate, ceramide complex, cottonbloom extract, and acerola extract. (Am. Compl. ¶ 31.) The Foundation also contains the additional sunscreen ingredients octinoxate and titanium dioxide. (Am. Compl. ¶ 32.) According to Plaintiffs "none of the[se] ingredients . . . is capable of stimulating, interacting with, or otherwise affecting the DNA in human skin cells, as Revlon's advertising suggests." (Am. Compl. ¶ 34.)

II.  The Plaintiffs

Plaintiff Anne Elkind purchased the Foundation and the Concealer from a CVS retail store in Roslyn Heights, New York.

(Am. Compl. ¶ 22.)  Plaintiff Sharon Rosen purchased the Foundation and Concealer from either a Wal-Mart in Sacramento, California or an Ulta in Elk Grove, California.  (Am. Compl. ¶ 23.)

Both Plaintiffs allege that they saw the phrases "Age Defying [with] DNA Advantage" and "[H]elps protect skin's DNA to fight signs of aging" on the Products themselves, the in-store display, and certain unnamed periodical advertisements.  (Am. Compl. ¶ 24.)  Plaintiffs allege that they understood the phrases to suggest "that the products contained something very scientific and special having to do with DNA."  (Am. Compl. ¶ 24.)  Plaintiffs allege that they relied on those misrepresentations at the time of their purchase, and as a result paid more for the Products than they otherwise would have.  (Am. Compl. ¶¶ 68-69.)

Plaintiffs do not allege to have seen, prior to their purchase, the statements contained on Revlon's website or in Revlon's annual report.  (Am. Compl. ¶ 24.)

III. The Claims

From these facts, Plaintiffs assert fifteen causes of action: (1) false advertising in violation of New York General Business Law § 349; (2) false advertising in violation of New York General Business § 350; (3) negligent misrepresentation; (4) intentional misrepresentation; (5) unfair competition in violation of the California Business and Professional Code § 17200 et seq.; (6) false advertising in violation of the California

Business and Professional Code § 17500 et seq.; (7) violation of the California Civil Code § 1750 et seq.; (8) breach of express warranty under New York law; (9) breach of implied warranty of merchantability under New York law; (10) breach of implied warranty of fitness under New York law; (11) breach of express warranty in violation of the California Commercial Code; (12) breach of implied warranty of merchantability in violation of the California Commercial Code; (13) breach of implied warranty of fitness in violation of California Commercial Code; (14) unjust enrichment; and (15) restitution.

Broadly speaking, Plaintiffs' claims fall along two general lines of argument. First, Plaintiffs allege that Defendant's using the phrase "Age Defying with DNA Advantage" on the Products' labels and in other marketing duped them into believing that the product would favorably interact with their DNA on a molecular level. These allegations form the basis of Plaintiffs' second, third, fourth, sixth, and seventh through thirteenth causes of action. Second, because the phrase "Age Defying with DNA Advantage," manifests an intent that the Products be used to manipulate the cells, the Products are over-the-counter drugs, as defined by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et. seq. (the "FDCA"). And as such, the Powder and Concealer are mislabeled because they do not comply with the FDCA's drug labeling requirement that all of a drug's ingredients

6

be listed, and they therefore violate New York and California laws prohibiting the unlawful sale of products.  These allegations form the basis of Plaintiffs' first and fifth causes of action.  For simplicity's sake, the Court refers to those of Plaintiffs' claims that fall along the former line of argument as Plaintiffs' "Deceptive Advertising Claims" and those adopting the latter argument as Plaintiffs' "Mislabeling Claims."

DISCUSSION

Defendant challenges Plaintiffs' standing to bring claims for injunctive relief and to bring claims arising out of the marketing of the Powder.  Because standing is a jurisdictional matter, Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975), the Court considers those arguments before considering the merits of Defendant's motion to dismiss.

I.   Standing

A.   Injunctive Relief

In addition to monetary damages, Plaintiffs seek an order enjoining Revlon from selling the Products.  (Am. Compl. ¶ 174.)  Because they have not alleged any likelihood of continuing or future harm, however, Plaintiffs lack standing to seek this form of equitable relief.

"[W]hen seeking prospective injunctive relief, the plaintiff must prove the likelihood of future or continuing harm."  Pungitore v. Barbera, 506 F. App'x 40, 41 (2d Cir. 2012) (summary

order) (emphasis in original) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 111, 103 S. Ct. 1660, 1670, 75 L. Ed. 2d 675 (1983)). Plaintiffs have not done so here.  That Plaintiffs have been injured by their prior purchase of the Products is insufficient, as "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." O'Shea v. Littleton, 414 U.S. 488, 495-96, 94 S. Ct. 669, 676, 38 L. Ed. 2d 674 (1974).  Moreover, Plaintiffs are now aware of the alleged misrepresentations that they challenge, so there is no danger that they will again be deceived by them.  See generally Tomasino v. Estee Lauder Cos. Inc., 44 F. Supp. 3d 251 (E.D.N.Y. 2014); Nicosia v. Amazon.com, Inc., --- F. Supp. 3d ----, 2015 WL 500180, at *10 (E.D.N.Y. 2015).[2]

     Accordingly, because the Amended Complaint fails to establish any likelihood of future or continuing harm, injunctive relief is inappropriate here.

---

[2] Plaintiffs point to and the Court is aware of a number of cases that suggest that the requirement of a future or continuing injury is not applicable in those cases where injunctive relief is sought in the consumer context.  See, e.g., Ackerman v. Coca-Cola Co., No. 09-CV-0395, 2013 WL 7044866, at *15 (E.D.N.Y. July 18, 2013) (citing cases).  Because Lyons, remains binding precedent, however, the Court remains bound by its holding.  See Lyons, 461 U.S. at 112, 103 S. Ct. at 1670 ("We decline the invitation to slight the preconditions for equitable relief.").

B.   Products Not Purchased

Though they allege to have purchased only the Foundation and the Concealer, Plaintiffs bring claims arising from the Defendant's advertising of the Powder as well.  According to Defendants, Plaintiffs lack standing to bring those claims.  The Court agrees.

To establish standing under Article III, a plaintiff must show:

> (1) [T]hat he suffered an injury-in-fact--an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical; (2) that there was a causal connection between the injury and the conduct complained of; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Carver v. City of N.Y., 621 F.3d 221, 225 (2d Cir. 2010) (internal quotation marks and citation omitted) (ellipsis in original); Liberty Global Logistics LLC v. U.S. Mar. Admin., No. 13-CV-0399, 2014 WL 4388587, at *3 (E.D.N.Y. Sept. 5, 2014).  A plaintiff suffers an injury-in-fact where he has been injured in a "personal and individual way."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 n.1, 112 S. Ct. 2130, 2136 n.1, 119 L. Ed. 2d 351 (1992).

The requirement of Article III is "no less true with respect to class actions than with respect to other suits."  Lewis v. Casey, 518 U.S. 343, 357, 116 S. Ct. 2174, 2183, 135 L. Ed. 2d 606 (1996).  Thus, a plaintiff may not save claims for which he

9

lacks standing by purporting to assert them on behalf of others
who might have standing; "named plaintiffs who represent a class
must allege and show that they personally have been injured, not
that injury has been suffered by other, unidentified members of
the class to which they belong and which they purport to
represent." Id. (internal quotation marks and citation omitted).
Accordingly, "if none of the named plaintiffs purporting to
represent a class establishes the requisite of a case or
controversy with the defendants, none may seek relief on behalf of
himself or any other member of the class." O'Shea, 414 U.S. at
494, 94 S. Ct. at 675, 38 L. Ed. 2d 674 (citations omitted); see
also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-
Medco Managed Care, L.L.C., 504 F.3d 229, 241 (2d Cir. 2007) ("'To
establish Article III standing in a class action . . . . for every
named defendant there must be at least one named plaintiff who can
assert a claim directly against that defendant, and at that point
standing is satisfied and only then will the inquiry shift to a
class action analysis'" (quoting Newburg on Class Actions § 2:6 n.3
(4th ed. 2002)); Fort Worth Employees' Ret. Fund v. J.P. Morgan
Chase & Co., 862 F. Supp. 2d 322, 331 (S.D.N.Y. 2012) ("For each
claim asserted in a class action, there must be at least one class
representative (a named plaintiff or a lead plaintiff) with
standing to assert that claim.").

Insofar as Plaintiffs' claims arise from the marketing and labeling of the Powder, those claims fail at the first element. Because they have not purchased the Powder, Plaintiffs have not been injured in the "personal and individual way" required by Article III.  Lujan, 504 U.S. at 560 n.1, 112 S. Ct. at 2136 n.1, 199 L. Ed. 2d 351.

Because Plaintiffs do not have Article III standing to assert claims arising from the marketing of the Powder, the Court need not determine whether Plaintiffs have class standing to do so.  "The Article III standing determination should precede that of class certification."  In re Salomon Smith Barney Mut. Fund Fees Litig., 441 F. Supp. 2d 579, 605 (S.D.N.Y. 2006).  Whether Plaintiffs can satisfy the Second Circuit's test for class standing under Federal Rule 23--articulated in NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145, 162 (2d Cir. 2012)--is of no consequence.  Plaintiffs fail the Article III inquiry, and "it is black letter law that a rule of procedure (such as Rule 23) cannot create standing."  Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc., 714 F. Supp. 2d 475, 480 (S.D.N.Y. 2010).[3]

---

[3] Because the Court's conclusion rests on Plaintiffs' lack of Article III standing, the Court does not address whether Plaintiffs' claims would fail under DiMuro v. Clinique Labs., LLC, 572 F. App'x 27 (2d Cir. 2014).  There, the plaintiffs sued Clinque Laboratories for the allegedly deceptive marketing of a line of cosmetic products sold under the "Repairwear" product line.  Id. at 29.  The Court held that because the plaintiffs had only purchased three of the seven products in the line, they

The Second Circuit has distinguished between Article III standing and class standing. NECA-IBEW, 693 F.3d at 158.  Plaintiffs lack standing to assert the claims arising from the Powder required by Article III, and on that basis alone, those claims fail.

Accordingly, Plaintiffs' claims are DISMISSED insofar as they arise from the labeling and marketing of the Powder.

II.  Motion to Dismiss

The Court will first address the applicable legal standard.  Next, the Court considers the threshold issues of whether Plaintiffs' causes of action are statutorily pre-empted and whether the Court should abstain from hearing this action pursuant to the doctrine of primary jurisdiction.  Because the Court concludes that neither pre-emption nor primary jurisdiction bars the Court from considering Plaintiffs' Deceptive Advertising Claims, the Court proceeds to the merits of those claims.

A.  Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); Harris v. Mills, 572 F.3d 66, 71–72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to

_____

lacked class standing to challenge the advertising of the remaining four.  Id.

legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949-50; Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; Harris, 572 F.3d at 72.

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F. 3d 67, 71 (2d Cir. 1998). However, this limitation has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

B.   Threshold Issues

1.   Pre-emption

The doctrine of pre-emption mandates that "when Congress has chosen to legislate pursuant to its constitutional powers,

13

then a court must find local law pre-empted by federal regulation whenever the challenged state statute 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 317, 101 S. Ct. 1124, 1130, 67 L. Ed. 2d 258 (1981) (quoting Perez v. Campbell, 402 U.S. 637, 649, 91 S. Ct. 1704, 1711, 29 L. Ed. 2d 233 (1971)).  The rationale lies in respect for the Supremacy Clause, U.S. CONST., Art. VI, Cl. 2, which invalidates state laws that "interfere with, or are contrary to the laws of Congress." Gibbons v. Ogden, 22 U.S. 1, 211, 6 L. Ed. 23 (1824).  Jurisprudence has evolved to recognize three types of pre-emption:

> (1) express pre-emption, where Congress has expressly pre-empted local law; (2) field pre-emption, "where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law"; and (3) conflict pre-emption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives.

N.Y. SMSA Ltd. P'ship v. Town of Clarkstown, 612 F.3d 97, 104 (2d Cir. 2010) (quoting Wachovia Bank, N.A. v. Burke, 414 F.3d 305, 313 (2d Cir. 2005)).

Both express pre-emption and implied pre-emption are relevant here.  Express pre-emption occurs when "Congress . . . withdraw[s] specified powers from the States by enacting a

statute containing an express pre-emption prevision." <u>Arizona v.
United States</u>, 132 S. Ct. 2492, 2500-01, 183 L. Ed. 2d 351 (2012).
Implied pre-emption arises when, "in the absence of explicit
statutory language . . . Congress intended the Federal Government
to occupy [a field] exclusively," or when state law "actually
conflicts with federal law." <u>English v. Gen. Elec. Co.</u>, 496 U.S.
72, 79, 110 S. Ct. 2270, 110 L. Ed. 2d 65 (1990).  A claim is
impliedly pre-empted, therefore, when it concerns a field in which
"[1] the pervasiveness of the federal regulation precludes
supplementation by the States, [2] the federal interest in the
field is sufficiently dominant, or [3] 'the object sought to be
obtained by the federal law and the character of obligations
imposed by it . . . reveal the same purpose.'" <u>Schneidewind v.
ANR Pipeline Co.</u>, 485 U.S. 293, 300, 108 S. Ct. 1145, 1150, 99 L.
Ed. 2d 316 (1988) (ellipsis in original) (quoting <u>Rice v. Santa Fe
Elevator Corp.</u>, 331 U.S. 218, 230, 67 S. Ct. 1146, 1152, 91 L. Ed.
1447 (1947)).  For example, in <u>Buckman Co. v. Plaintiffs' Legal
Comm.</u>, the Supreme Court held that because Congress intended that
the FDCA be enforced exclusively by the Federal Government, <u>see</u>
21 U.S.C. § 337(a), claims seeking to enforce FDCA regulations, or
claims where the violation of FDCA regulations were a "critical
element" of the case were impliedly pre-empted, 531 U.S. 341, 352-
53, 121 S. Ct. 1012, 1019, 148 L. Ed. 2d 854 (2001).

Together and in the context of the FDCA, express pre-emption and implied pre-emption create a "narrow gap through which a plaintiff's state-law claim must fit if it is to escape express or implied pre-emption." In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig., 623 F.3d 1200, 1204 (8th Cir. 2010) (quoting Riley v. Cordis Corp., 625 F. Supp. 2d 769, 777 (D. Minn. 2009)). In short, "[t]he plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly pre-empted) . . . . [B]ut the plaintiff must not be suing because the conduct violates the FDCA (such a claim would be impliedly pre-empted under Buckman.)" Id. (quoting Riley, 625 F. Supp. 2d at 777); accord In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Pracs. Litig., 701 F. Supp. 2d 356, 375 (E.D.N.Y. 2010).

Because pre-emption is a matter of congressional intent, the Court begins its analysis with the applicable FDCA framework. Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152, 102 S. Ct. 3014, 3022, 73 L. Ed. 2d 664 (1982). The parties, however, dispute the applicable FDCA framework; they dispute whether the Powder and the Concealer are subject to the FDCA's regulation as cosmetics or over-the-counter drugs. The FDCA's definition of "drug" includes, inter alia, articles "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man" and articles "intended to affect the structure or any function of the body of man." 21 U.S.C. § 321(g) (emphasis

16

added).  Cosmetics, on the other hand, are articles "intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance."  21 U.S.C. § 321(i) (emphasis added).  In light of these definitions, "[c]ourts have held that the decision as to whether a product is a drug depends on its 'intended use,' which can be determined from objective evidence such as the product's current and past containers, instructions, and advertisements. Estee Lauder, Inc. v. U.S. Food & Drug Admin., 727 F. Supp. 1, 2 (D.D.C. 1989) (citing cases).  Those products that qualify as both a cosmetic and a drug are subject to the stricter requirements applicable to drugs.  United States v. Article . . . Consisting of 216 Cartoned Bottles, More or Less, Sudden Change, 409 F.2d 734, 739 (2d Cir. 1969).  In this Court's view, because the categorization of the Powder and Concealer hinges on the perceived intended use, resolving that question is inappropriate at this early pleading stage.  Accordingly and consistent with its obligation to accept as true all well-pleaded factual allegations, the Court assumes, for the purposes of this Memorandum and Order, that all of the Products are "Drugs" as defined by the FDCA.

The FDCA pre-empts any state requirement that "(1) relates to the regulation of a [non-prescription drug] and

(2) that is different from or in addition to, or that is otherwise not identical with [federal law]."  21 U.S.C. § 379r.

Plaintiffs' Deceptive Advertising Claims are not pre-empted because they fail at the first element.  The FDCA does not endeavor to regulate—and therefore does not purport to pre-empt--whether certain phrases on the branding of non-prescription drugs are misleading.  Indeed, "advertising issues relating to . . . misleading or deceptive claims are outside the scope of pre-emption."  See H.R. Rep. No. 105-399, at 103 (1997), 1997 U.S.C.C.A.N. 2880, 2893 (Conf. Rep.).  The FDCA prohibits the sale of a drug "[i]f its labeling is false or misleading in any particular," 21 U.S.C. § 352, but goes no further.  In contrast, "every day courts decide whether conduct is misleading." Musgrave v. ICC/Marie Callender's Gourmet Prods. Div., No. 14-CV-2006, 2015 WL 510919, at *6 (N.D. Cal. Feb. 5, 2015).

Put another way, Plaintiffs' Deceptive Advertising claims are independent of the FDCA, and would exist even in its absence.  See Church & Dwight Co. Inc. v. SPD Swiss Precision Diagnostics, GmbH, No. 14-CV-0585, 2014 WL 2526965, at *11 (S.D.N.Y. June 3, 2014).  Determining whether the phrase "Age Defying with DNA Advantage" is misleading under New York and California law does not require the Court to interpret, apply, add to, or work through FDCA regulations, and pre-emption therefore does not apply.  See, e.g., Id.; In re Bayer Corp., 701 F. Supp.

2d at 375 (refusing to find cause of action pre-empted where the claims "would give rise to recovery even had the FDCA never been enacted"); <u>Jovel v. i-Health, Inc.</u>, No. 12-CV-5614, 2013 WL 5437065, at *5 (E.D.N.Y. Sept. 27, 2013) ("[Plaintiff's] claims that [defendant] misrepresented the effectiveness of its products is a traditional claim of consumer misrepresentation, not an attempt to enforce the FDCA's labeling requirements."); <u>Mut. Pharm. Co. v. Ivax Pharm., Inc.</u>, 459 F. Supp. 2d 925, 935 (C.D. Cal. 2006) ("So long as courts are not required to perform 'authoritative interpretation and direct application of FDA regulations,' then the simple fact that a matter touches upon an area dealt with by the FDA is not a bar to proceeding with a claim." (quoting <u>Summit Tech., Inc. v. High-Line Med. Instruments, Co.</u>, 933 F. Supp. 918, 933 (C.D. Cal. 1996)).

If this Court ultimately concludes that the challenged conduct is misleading under New York or California law, it might announce an additional labeling requirement on non-prescription drugs, but such a requirement would not <u>relate to</u> the FDCA's regulation of non-prescription drug labels, and such a requirement would therefore fall beyond the scope of the FDCA's province. <u>See</u> <u>Goldemberg v. Johnson & Johnson Consumer Cos., Inc.</u>, 8 F. Supp. 3d 467, 475-76 (S.D.N.Y. 2014); <u>In re PepsiCo, Inc., Bottled Water Mktg. & Sales Pracs. Litig.</u>, 588 F. Supp. 2d 527, 538 n.10 (S.D.N.Y. 2008) (refusing to hold that "state law claims cannot

survive pre-emption where they are premised on misrepresentations concerning subject matter that the FDA has not endeavored to regulate").

The Court finds further support for its conclusion that Plaintiffs' Deceptive Advertising Claims are not pre-empted in lack of any suggestion that the FDA is at all interested in issuing any relevant guidance.  Those cases that have found similar state-law claims pre-empted have done so where the FDA has spoken on a certain practice, and they are distinguishable on those grounds. For example, in Bowling v. Johnson & Johnson, --- F. Supp. 3d ---, 2014 WL 5643955, at *3 (S.D.N.Y. 2014), the Court held pre-empted claims against a mouthwash manufacturer for including on the product's label that it "Restores Enamel."  The FDA issued a monograph directly relating to the "Restores Enamel" claim, and the court therefore could not intervene.  Id. at *3 ("This case might be different if the FDA had issued no guidance . . . . As it stands, however, the FDA has issued a monograph directly on point." (emphasis in original) (citation omitted)).  Other cases have reached similar results.  See, e.g., Ivie v. Kraft Foods Global, Inc., 961 F. Supp. 2d 1033, 1041 (N.D. Cal. 2013) (violation of FDCA's disclosure placement regulations held pre-empted); Am. Home Prods. Corp. v. Johnson & Johnson, 672 F. Supp. 135 (S.D.N.Y. 1987) (dismissing Lanham Act claim because the FDA had specifically inspected and approved the packaging at issue).

Plaintiffs' Mislabeling Claims, however, do not squeak through the "narrow gap through which a plaintiff's state-law claim must fit if it is to escape express or implied pre-emption." In re Medtronic, Inc., 623 F.3d at 1204 (internal quotation marks and citation omitted).  These claims arise because Plaintiffs allege that the Powder and the Concealer violate the FDCA, and prosecuting that violation lies squarely within the province of the FDA.[4]  See 21 U.S.C. § 371 (giving the FDA regulatory authority over the enforcement of the FDCA); Buckman, 531 U.S. at 342; Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc., 586 F.3d 500, 509 (7th Cir. 2009) ("[T]he Food, Drug, and Cosmetics Act . . . does not authorize a private cause of action.") (citations omitted).  Accordingly, Plaintiffs' Mislabeling Claims (counts one and five) are DISMISSED WITH PREJUDICE.[5]

### 2.   Primary Jurisdiction

Defendant next contends that the Court should refrain from entertaining Plaintiffs' claims as a matter of deference to the FDA, pursuant to the doctrine of primary jurisdiction.

---

[4] Tellingly, unlike Plaintiffs' Deceptive Advertising Claims, Plaintiffs' Mislabeling Claims do not exist independent of the FDCA.  See Church & Dwight, 2014 WL 2526965, at *11.

[5] Because Plaintiffs' Mislabeling Claims are dismissed, the Court agrees with Defendant's assertion that Plaintiffs' allegations of FDCA labeling regulations are irrelevant to the remaining causes of action.  Accordingly, Defendant's motion to strike pursuant to Federal Rule 12(f) is GRANTED with respect to Paragraphs forty-six through sixty-six of the Amended Complaint.

Primary jurisdiction is a matter of judicial prudence which provides that the courts should not mettle in claims where the enforcement "requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." United States v. W. Pac. R. Co., 352 U.S. 59, 64, 77 S. Ct. 161, 165, 1 L. Ed. 2d 126 (1956) (citation omitted). Courts in the Second Circuit have repeatedly stressed the doctrine's narrow scope. See Goya Foods, Inc. v. Tropicana Prods., Inc., 846 F.2d 848, 851 (2d Cir. 1988); Global Crossing Bandwith, Inc. v. OLS, Inc., No. 05-CV-6423L, 2009 WL 763483, at *2 (W.D.N.Y. Mar. 19, 2009) ("[T]he case law establishes that it should not be lightly invoked or applied, and that cases in which its application is warranted tend to be the exception, not the norm.").

Though "'[n]o fixed formula exists for applying the doctrine of primary jurisdiction,'" the Second Circuit has counseled courts to focus on four factors in determining whether to apply the doctrine:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
>
> (2) whether the question at issue is particularly within the agency's discretion;
>
> (3) whether there exists a substantial danger of inconsistent rulings; and

      (4) whether a prior application to the agency
      has been made.

Ellis v. Tribune Television Co., 443 F.3d 71, 82-83 (2d Cir. 2006)
(quoting W. Pac. R. Co., 352 U.S. at 64, 77 S. Ct. at 165)).
Additionally, courts should weigh "the advantages of applying the
doctrine against the potential costs resulting from complications
and delay in the administrative proceedings." Id. (quoting Nat'l
Commc'ns Ass'n, Inc. v. AT & T Co., 46 F.3d 220, 222 (2d Cir.
1995)).

      Regarding the first factor, whether the ultimate
question is one better suited to FDA determination: Plaintiffs'
Deceptive Advertising Claims call on the Court to determine whether
the phrase "DNA Advantage" is misleading to a reasonable consumer
in light of the Products' actual effects.   The Court is well-
equipped to answer this question.   See, e.g., Goldemberg, 8 F.
Supp. 3d at 476; Church & Dwight, 2014 WL 2526965, at *16; Jovel,
2013 WL 5437065, at *7; In re Frito-Lay N. Am., Inc. All Natural
Litig., No. 12-MD-2413, 2013 WL 4647512, at *8 (E.D.N.Y. Aug. 29,
2013) ("'This case is far less about science than it is about
whether a label is misleading,' and the reasonable-consumer
inquiry upon which some of the claims in this case depends is one
to which courts are eminently well suited, even well versed."
(quoting Jones v. ConAgra Foods, Inc., 912 F. Supp. 2d 889, 898
(N.D. Cal. 2012)).   Accordingly, because the ultimate question is

one of consumer confusion rather than anything of the technical or scientific nature better suited to the FDA, the first factor weighs against applying the doctrine of primary jurisdiction.

Regarding the second factor, whether the question lies within the FDA's discretion: the decision whether to regulate the use of the term "DNA Advantage" falls within the discretion of the FDA, because the FDA may prohibit any labels that are "misleading in any particular."  See 21 U.S.C. § 362; Goldemberg, 8 F. Supp. 3d at 477.  This factor therefore weighs in favor of applying the primary jurisdiction doctrine.

Regarding the third factor, the danger of inconsistent rulings: though it goes unmentioned by the parties, the Court is aware of a similar case pending in this District considering whether the defendants committed similar false advertising by marketing a cosmetic serum with the phrase "repair[s] the appearance of past visible damage."  Tomasino, 44 F. Supp. 3d at 255.  While it is at least conceivable that the Court's maintenance of this action will result in a ruling inconsistent with Tomasino, the Court is less concerned about the danger of this inconsistency. See Goldemberg, 8 F. Supp. 3d at 477 (noting that conflicts routinely occur among courts).  Instead, the danger of inconsistency on which the Court focuses is the danger that the FDA may issue guidance that conflicts with the Court's ruling. See, e.g., Id.; Jovel, 2013 WL 5437065, at *7.  In this vein, the

24

parties have not suggested that any relevant FDA ruling or guidance is imminent, so that danger is relatively low.  <u>Janney v. Mills</u>, 944 F. Supp. 2d 806, 814-15 (N.D. Cal. 2013) ("Nevertheless, in repeatedly declining to promulgate regulations governing the use of 'natural' as it applies to food products, the FDA has signaled a relative lack of interest in devoting its limited resources to what it evidently considers a minor issue.").  Accordingly, this factor weighs against applying the doctrine of primary jurisdiction.

Regarding the fourth factor, whether there has been a prior application to the agency: the parties acknowledge that no prior application to the FDA has been made in this case.  While this factor is not dispositive, <u>Bernhardt v. Pfizer, Inc.</u>, No. 00-CV-4042, 2000 WL 1738645, at *3 (S.D.N.Y. Nov. 22, 2000), it weighs against applying the doctrine of primary jurisdiction.

<u>Finally</u>, while nothing suggests that Plaintiffs will face any significant hardship by delaying these proceedings to allow the FDA a first look at whether the use of the term "DNA Advantage" is misleading, it is the general aim of the courts to secure a "just, speedy, and inexpensive resolution of civil disputes."  28 U.S.C. § 471.

Based on this analysis, the Court declines to apply the doctrine of primary jurisdiction to Plaintiffs' Deceptive Advertising Claims.

C.   <u>Plaintiffs' Deceptive Advertising Claims</u>

    1.   <u>New York General Business Law § 350</u>

New York General Business Law § 350 states, "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." N.Y. GEN. BUS. LAW § 350. To state a claim for the violation of section 350, a plaintiff must plead: "(1) that the act, practice or advertisement was consumer-oriented; (2) that the act, practice or advertisement was misleading in a material respect, and (3) that the plaintiff was injured as a result of the deceptive practice, act or advertisement." <u>Pelman v. McDonald's Corp.</u>, 237 F. Supp. 2d 512, 525 (S.D.N.Y. 2003) (collecting cases). Additionally, a plaintiff must plead reliance on the misleading advertising at the time of purchase.[6] <u>See Horowitz</u>, 613 F. Supp. 2d at 288; <u>McGill v. Gen. Motors Corp.</u>, 231 A.D.2d 449, 450, 647 N.Y.S.2d 209, 210 (1st Dep't 1996) (affirming dismissal where there was no showing that plaintiff was aware of the representation at the time of purchase); <u>Andre Strishak & Assocs., P.C. v. Hewlett</u>

---

[6] Plaintiffs rely in part on advertisements or pronouncements by Defendant of which they were unaware at the time of purchase, such as statements in Defendant's annual report or in response in inquiries to a customer service telephone number. (Am. Compl. ¶¶ 30-31.) Because Plaintiffs have not pled that they relied upon those alleged misrepresentations at the time of purchase, they cannot form the basis of a Section 350 claim. <u>See Horowitz v. Stryker Corp.</u>, 613 F. Supp. 2d 271, 288 (E.D.N.Y. 2009).

<u>Packard Co.</u>, 300 A.D.2d 608, 610, 752 N.Y.S.2d 400, 403 (2d Dep't 2002) (same).

Defendant disputes whether Plaintiffs pled an injury cognizable under Section 350. (Def's Br., Docket Entry 19, at 16-17.) Plaintiffs allege that they paid a premium for the product based on Defendant's alleged misrepresentations. (Am. Compl. ¶¶ 69-70.) This is a sufficient allegation of injury.[7] <u>See,</u> <u>e.g.,</u> <u>Servedio v. State Farm Ins. Co.</u>, 889 F. Supp. 2d 450, 453 (E.D.N.Y. 2012) ("[A] plaintiff who alleges that a deceptive practice caused him to pay more than the good or service he actually received was worth may be able to satisfy the injury requirement."), <u>aff'd</u>, 531 F. App'x 110 (2d Cir. 2013); <u>Jernow v.</u> <u>Wendy's Int'l, Inc.,</u> No. 07-CV-3971, 2007 WL 4116241, at *3 (S.D.N.Y. Nov. 15, 2007).

Accordingly, because Plaintiffs have adequately pled injury under the Section 350, Defendant's motion to dismiss that claim (count two) is DENIED.

---

[7] The Court does not find persuasive Defendant's argument that the "premium" alleged by Plaintiffs is inadequately pled because it lacks numerical specificity. As Plaintiffs point out, determining the exact cost of the premium recovered due to the alleged misrepresentations would require discovery to which Plaintiffs have not yet been entitled and expert analysis that Plaintiffs were not required to undertake at this early pleading stage. <u>See</u> <u>Rosales v. FitFlop USA, LLC</u>, 882 F. Supp. 2d 1168, 1174 (S.D. Cal. 2012) (allowing similar allegations of premium paid).

2.   Negligent Misrepresentation

Defendant asserts that Plaintiffs' claims for negligent misrepresentation must be dismissed pursuant to the economic loss doctrine.  (Def.'s Br. at 18-20.)   The Court agrees.

The economic loss doctrine restricts the remedy of plaintiffs who have suffered economic loss, but not personal or property injury, to an action in contract.  EED Holdings v. Palmer Johnson Acquisition Corp., 387 F. Supp. 2d 265, 277 (S.D.N.Y. 2004).  "If the damages suffered are of the type remediable in contract, a plaintiff may not recover in tort."  Carmania Corp., N.V. v. Hambrecht Terrell Int'l, 705 F. Supp. 936, 938 (S.D.N.Y. 1989).   The doctrine applies to claims for negligent misrepresentation.  Weisblum v. Prophase Labs, Inc., --- F. Supp. 3d ----, 2015 WL 738112, at *11 (S.D.N.Y. 2015); Cherny v. Emigrant Bank, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009); Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A., 244 F.R.D. 204, 215 (S.D.N.Y. 2007).  Accordingly, Plaintiffs' claim for negligent misrepresentation (count three) is DISMISSED WITH PREJUDICE.

3.   Intentional Misrepresentation

The economic loss doctrine does not apply, however, to Plaintiffs' intentional misrepresentation claim.  Weisblum, 2015 WL 738112, at *12 ("Courts applying both New York and California law have allowed intentional misrepresentation claims to proceed, notwithstanding the economic loss rule.") (collecting cases); EED

28

Holdings, 387 F. Supp. 2d at 278 ("New York courts have routinely permitted fraud and contract claims to proceed in tandem for the purpose of recovering pure economic loss.").

To state a claim for fraud under New York law, a plaintiff must plead that: "'(1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance.'" See Liberty Mut. Ins. Co. v. Palace Car Servs. Corp., No. 06-CV-4881, 2007 WL 2287902, at *2 (E.D.N.Y. Aug. 8, 2007) (quoting Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 940 (2d Cir. 1998)). Additionally, fraud claims are subject to the heightened pleading requirements of Federal Rule 9(b). FED. R. CIV. P. 9(b).

Plaintiffs have adequately pled their fraud claim. Plaintiffs allege a material false misrepresentation: the statements of the Products' efficacy suggested by "use of the terms 'DNA,' 'DNA Advantage,' 'with DNA Advantage,' and 'Age Defying with DNA Advantage.'" (Am. Compl. ¶ 25.) They plead when and where Defendant is alleged to have made those representations. (Am. Compl. ¶¶ 16-18.) By pleading that Defendant knew the phrase did not have the effects suggested, (Am. Compl. ¶ 28), Plaintiffs have likewise pled sufficient facts to support an inference that Defendant intended to defraud its customers. See Hughes v. Ester

29

C Co., 930 F. Supp. 2d 439, 473 (E.D.N.Y. 2013); FED. R. CIV. P. 9(b) ("[C]onditions of a person's mind may be alleged generally."). Finally, Plaintiffs appropriately plead that they relied on the labels and in-store advertisements, (Am. Compl. ¶ 67), and that they suffered economic injury as a result of that reliance, (Am. Compl. ¶¶ 69-73).

The Court finds little merit in Defendant's argument that the fraud claim must fail because Plaintiffs have not alleged "that Revlon owed Plaintiffs a duty separate and apart from the contractual duties imposed on Revlon under the law of warranty." (Def.'s Br. at 19-20.)  "[I]t is well established that a misrepresentation of present fact which is the inducement for a contract is collateral to said contract, and can support a separate fraud claim." EED Holdings, 387 F. Supp. 2d at 279.  Plaintiffs allege that the misrepresentations regarding the efficacy of the Products induced them to purchase the products. "Those allegations suffice for now." Weisblum, 2015 WL 738112, at *12.

Accordingly, Defendant's motion to dismiss Plaintiffs' fraud claim (count 4) is DENIED.

### 4.  Express Warranty Claims

Plaintiffs next bring claims under New York and California law for the Products' failure of an express warranty.

To state a claim for breach of express warranty under New York law, a plaintiff must allege "[1] a material statement

amounting to a warranty; [2] the buyer's reliance on this warranty as a basis for the contract with his immediate seller; [3]  the breach of this warranty; and [4] injury to the buyer caused by the breach." Avola v. Louisiana-Pac. Corp., 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013) (citing CBS Inc. v. Ziff-Davis Pub. Co., 75 N.Y.2d 496, 503, 553 N.E.2d 997, 1000, 554 N.Y.S.2d 449 (1990)). Similarly, "[t]o prevail on a breach of express warranty claim [under the California commercial code], a plaintiff must prove that the seller: (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." Keegan v. Am. Honda Motor Co., 838 F. Supp. 2d 929, 949 (C.D. Cal. 2012) (internal quotation marks and citation omitted).  Notably, reliance on the warranty is not an element of an express warranty claim under California law. See Id. Both laws require a plaintiff to plead some affirmative statement of fact that forms the basis of the warranty.  The statement must definite enough so that its "'natural tendency [is] . . . to induce the buyer to purchase.'" Weiner v. Snapple Beverage Corp., No. 07-CV-8742, 2011 WL 196930, at *5 (S.D.N.Y. Jan. 21, 2011) (quoting Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp., 689 F. Supp. 2d 585, 604 (S.D.N.Y. 2010)).

Plaintiffs have stated claims for breach of express warranty under New York and California law. "Age Defying with DNA Advantage" may be plausibly inferred to suggest that the product would combat or reverse aging by interacting with one's DNA. At this early pleading stage, such a statement of fact regarding the Products' efficacy is sufficient to constitute an express warranty. See, e.g., Goldemberg, 8 F. Supp. 3d at 482 (phrase "Active Naturals" sufficient to constitute an express warranty); Avola, 991 F. Supp. 2d at 396 (claims that synthetic siding product would behave "just like wood" sufficient); Ackerman v. Coca-Cola Co., No. 09-CV-0395, 2010 WL 2925955, at *17 (E.D.N.Y. July 21, 2010) ("vitamins + water = all you need" held actionable); Weisblum 2015 WL 738112, at *1 (statement that product would "shorten" the common cold held actionable). While Defendant correctly points out that vague statements of a product's superiority are non-actionable puffery, see Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 160 (2d Cir. 2007), the Court cannot say, as a matter of law, that the phrase "Age Defying with DNA Advantage" is so vague. Instead, a reasonable jury may interpret that phrase as a statement that the product would operate in an objective, measurable way. See Avola, 991 F. Supp. 2d at 393-94.

Additionally, both New York and California law require that the plaintiff in an express warranty action give notice to the seller. See N.Y. U.C.C. LAW § 2-607(3)(a); CAL. COM. CODE § 2607.

32

"[T]he sufficiency and timeliness of the notice is generally a question for the jury." Hubbard v. Gen. Motors Corp., No. 95-CV-4362, 1996 WL 274018, at *4 (S.D.N.Y. May 22, 1996).

Here, Plaintiffs alleged that they provided notice to Defendant of their claims on April 3, 2014.  (Am. Compl. ¶ 133.) This allegation, for now, is sufficient. See Amerol Corp. v. Am. Chemie-Pharma, Inc., No. 04-CV-0940, 2006 WL 721319, at *8 (E.D.N.Y. Mar. 17, 2006) ("The notice required to preserve its right to sue for damages need only 'alert [the prospective defendant] that the transaction [was] troublesome.'" (alterations in original) (quoting Cliffstar Corp. v. Elmar Indus., Inc., 254 A.D.2d 723, 724, 678 N.Y.S.2d 222, 223 (4th Dept. 1998)).

Accordingly, Defendant's motion to dismiss Plaintiffs' express warranty claims (counts eight and eleven) is DENIED.

### 5.  Implied Warranty Claims

Under both New York law and California law, claims of implied warranty may be brought only by those in privity with the named defendant. Jackson v. Eddy's LI RV Ctr., Inc., 845 F. Supp. 2d 523, 530-31 (E.D.N.Y. 2012); Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 248 (2d Cir. 1986); Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1024 (9th Cir. 2008).  Plaintiffs do not allege any contractual privity with Defendant, so their implied warranty claims (counts nine, ten, twelve, and thirteen) are DISMISSED.

33

6.   Unjust Enrichment and Restitution

Plaintiffs bring claims for unjust enrichment and restitution, but they fail to demonstrate how those claims are in any way distinct from the contract and tort claims brought herein. Accordingly, those claims (counts fourteen and fifteen) are DISMISSSED as duplicative. Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790, 967 N.E.2d 1177, 1185, 944 N.Y.S.2d 732 (2012) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim"); Palco Telecom Serv., Inc. v. Global Warranty Grp., LLC, No. 14-CV-4818, 2015 WL 1509598, at *7 (E.D.N.Y. Mar. 31, 2015).

III. Leave to Replead

Plaintiffs have already attempted to cure any defects in their initial complaint by filing an Amended Complaint, but have still failed to properly state certain claims. Moreover, Plaintiffs do not set out how the claims dismissed herein may be cured by way of amendment. Accordingly, the Court declines to afford Plaintiffs an opportunity to replead those claims. Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962) (noting that denial of leave to replead is appropriate in light of "repeated failure to cure deficiencies by amendments previously allowed."); Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 118 (2d Cir. 2007) ("Plaintiffs [are] not entitled to an advisory opinion from the Court informing them of the deficiencies

34

in the complaint and then an opportunity to cure those deficiencies." (internal quotation marks omitted)).

<u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to dismiss or, in the alternative, to strike portions of Plaintiffs' First Amended Complaint (Docket Entry 18) is GRANTED IN PART and DENIED IN PART. Counts one, three, five, nine, ten, twelve, thirteen, fourteen, and fifteen are DISMISSED WITH PREJUDICE, the remaining claims are DISMISSED insofar as they arise from Defendant's marketing and labeling of the Powder, and paragraphs forty-six through sixty-six of the First Amended Complaint are STRICKEN. Defendant's motion is DENIED in all other respects. Counts two, four, six, seven, eight, and eleven shall proceed to discovery.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.


Dated:    May   14  , 2015
          Central Islip, New York


35