**IN THE UNITED STATES COURT**

**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANNE ELKIND and SHARON ROSEN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> REVLON CONSUMER PRODUCTS CORPORATION, <br><br> Defendant. | Case No. 2:14-cv-02484-JS-AKT <br><br> Judge: Hon. Joanna Seybert |

---

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR**

**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

---

## TABLE OF CONTENTS

I.      SUMMARY OF LITIGATION TO DATE ...................................................................1

II.     SUMMARY OF THE SETTLEMENT .....................................................................3

    A.    Discontinuance of DNA Advantage Product Line...................................................3

    B.    Monetary Relief .....................................................................................................3

    C.    Costs of Notice and Administration, Attorneys' Fees, and Incentive Award..........4

III.    THE SETTLEMENT SATISFIES THE CRITERIA FOR
        PRELIMINARY APPROVAL ...............................................................................5

    A.    Standard of Review ...............................................................................................5

    B.    The Court Should Certify the Class for Settlement Purposes................................7

        1.    Numerosity.................................................................................................8

        2.    Commonality...............................................................................................9

        3.    Typicality ..................................................................................................10

        4.    Adequacy of Representation .....................................................................11

        5.    The Proposed Class Meets the Requirements of Rule 23(b)(2)................12

        6.    The Proposed Class Meets the Requirements of Rule 23(b)(3)................14

    C.    The Court Should Grant Preliminary Approval of the Proposed Settlement.........16

        1.    The Settlement Is The Product Of Serious, Informed, Non-Collusive
              Negotiations, Including Mediation By An Experienced Neutral...............16

        2.    The Settlement has no Obvious Deficiencies and does not
              Improperly Grant Preferential Treatment to the Class
              Representatives or Segments of the Class .................................................17

        3.    The Proposed Settlement Meets the *Grinnell* Factor Test
              for Preliminary Approval .........................................................................19

    D.    The Proposed Form of Class Notice and Notice Plan Satisfy the
          Requirements of Rule 23 ......................................................................................25

    E.    The Proposed Timeline for Events Should be Adopted........................................27

IV.     CONCLUSION ...................................................................................................27

i

## TABLE OF AUTHORITIES

**CASES**

*Allison v. Citgo Petroleum Corp.*,
   151 F.3d 402 (5th Cir. 1998) .................................................................................. 13

*Amchem Prods., Inc. v. Windsor*,
   117 S.Ct. 2231 (1997) ................................................................................... 7, 14

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) ................................................................................... 8

*Damassia v. Duane Reade, Inc.*,
   250 F.R.D. 152 (S.D.N.Y. 2008) ......................................................................... 9

*Danieli v. Int'l Bus. Machines Corp.*,
   No. 08 Civ. 3688 (SHS), 2009 U.S. Dist. LEXIS 106938 (S.D.N.Y. Nov. 16, 2009) ............. 18

*Delarosa v. Boiron, Inc.*,
   275 F.R.D. 582 (C.D. Cal. 2011) ................................................................... 9, 10

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
   89 F.R.D. 87 (S.D.N.Y. 1981) ........................................................................... 14

*Dziennik v. Sealift, Inc.*,
   No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701 (E.D.N.Y. May 29, 2007) ......................... 11

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ............................................................... 9, 14, 24

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ....................................................................................... 9, 11

*Gilliam v. Addicts Rehab. Ctr. Fund*,
   05 Civ. 2452 (RLE), 2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008) ..................... 25

*Green v. Wolf Corp.*,
   406 F.2d 291 (2d Cir. 1968) ............................................................................... 15

*In re Abbott Labs. Norvir Anti-Trust Litig.*,
   Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899 (N.D. Cal. June 11, 2007) ............... 8

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................... 20, 22, 23, 24

*In re Currency Conversion Fee Antitrust Litig.*, 2006-2 Trade Cas. (CCH) ¶ 75,505,
   2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8, 2006) ........................................... 16

*In re Ferrero Litig.*,
   No. 11-CV-205 H(CAB), 2011 WL 5557407 (S.D. Cal. Nov. 14, 2011) ............................ 10

*In re Frontier Ins. Grp., Inc. Sec. Litig.*,
   172 F.R.D. 31 (E.D.N.Y 1997) ........................................................................... 15

*In re Giant Interactive Group, Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ......................................................................... 17

ii

*In re GM Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ..................................................................... 17

*In re Initial Pub. Offering Sec. Litig.*,
    243 F.R.D. 79 (S.D.N.Y. 2007) ................................................................ 7

*In re Prudential Sec. Inc Ltd. P'ships Litig.*,
    164 F.R.D. 362 (S.D.N.Y. 1996) .............................................................. 25

*In re Traffic Exec. Ass'n-Eastern R.R.s*,
    627 F.2d 631 (2d Cir. 1980) ................................................................ 7, 16

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ................................................................... 14

*Jermyn v. Best Buy Stores, L. P.*,
    No. 08 Civ. 214 (CM), 2012 U.S. Dist. LEXIS 90289 (S.D.N.Y. June 27, 2012) .................. 18

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
    109 F.R.D. 391 (S.D.N.Y. 1986) ............................................................... 9

*Marisol A. by Forbes v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) ................................................................... 10

*Martens v. Smith Barney Inc.*,
    181 F.R.D. 243 (S.D.N.Y. 1998) .............................................................. 11

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1995) .................................................................... 6

*McBean v. City of New York*,
    228 F.R.D. 487 (S.D.N.Y. 2005) ............................................................. 14

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009) ................................................................ 6, 16

*Milonas v. Williams*,
    691 F.2d 931 (10th Cir. 1982) ................................................................ 11

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ........................................................ 17

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ................................................................... 24

*Nieves v. Community Health Plan*,
    No. 08 Civ. 321 (VB) (PED), 2012 U.S. Dist. LEXIS 37720 (S.D.N.Y. Feb. 24, 2012) ..... 7, 16

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
    No. 08 Civ. 7670 (BSJ) (JCF), 2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb. 9, 2010) ......... 18

*Probe v. State Teachers' Ret. Sys.*,
    780 F.2d 776 (9th Cir. 1986) .................................................................. 13

*Reyes v. Buddha-Bar NYC*,
    No. 08-civ-02494 (DF), 2009 U.S. Dist. LEXIS 45277 (S.D.N.Y. May 28, 2009) ................. 12

iii

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ................................................................. 11

*Rodolico v. Unisys Corp.*,
  199 F.R.D. 468 (E.D.N.Y. 2001) .......................................................... 11

*TBK Partners, Ltd. v. W. Union Corp.*,
  517 F. Supp. 380 (S.D.N.Y. 1981) ....................................................... 20

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*,
  No. 01 Civ. 11814 (MP), 2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) ................. 25

*Torres v. Gristede's Operating Corp.*,
  Nos. 04-CV-3316, 08-CV- 8531, 08-CV-9627 (PAC), 2010 U.S. Dist. LEXIS 139144
  (S.D.N.Y. Dec. 21, 2010) ...................................................................... 22

*Trief v. Dun & Bradstreet Corp.*,
  144 F.R.D. 193 (S.D.N.Y. 1992) ............................................................. 9

*Velez v. Novartis Pharms. Corp.*,
  No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30, 2010) ............ 18

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S.Ct. 2541 (2011) .......................................................... 9, 10, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ......................................................... 6, 16

*Zinser v. Accufix Research Inst.*,
  253 F.3d 1180 (9th Cir. 2001) ........................................................... 13

## OTHER AUTHORITIES

7A C.A. Wright, A.R. Miller, & M. Kane,
  Federal Practice & Procedure §1777 (2d ed. 1986) ................................. 14

Manual for Complex Litig., § 21.632 ....................................................... 25

## RULES

Fed. R. Civ. P. 23(a) ....................................................................... 7

Fed. R. Civ. P. 23(a)(1) .................................................................. 8, 9

Fed. R. Civ. P. 23(a)(2) .................................................................... 9

Fed. R. Civ. P. 23(a)(3) ................................................................... 10

Fed. R. Civ. P. 23(a)(4) ................................................................... 11

Fed. R. Civ. P. 23(b)(2) .............................................................. 13, 14

Fed. R. Civ. P. 23(b)(3) .............................................................. 14, 15

Fed. R. Civ. P. 23(c)(2)(B) ............................................................... 25

Fed. R. Civ. P. 23(e) ..................................................................... 19

Fed. R. Civ. P. 23(f) ..................................................................... 23

Fed. R. Civ. P. 23(g)(1)...................................................................................... 12

Fed. R. Civ. P. 23(g)(1)(A) ............................................................................... 12

**TREATISES**

4 Herbert B. Newberg & Alba Conte,
  Newberg on Class Actions § 11.41, at 87 (4th ed. 2002).................................... 6, 16

4 Herbert Newberg & Alba Conte,
  Newberg on Class Actions § 11.25, at 38-39 (4th ed. 2002) ..................................... 6

Manual for Complex Litigation, Fourth ("MCL 4th")
  § 21.632, at 320 (Fed. Judicial Center 2004) ....................................................... 6, 7

## I.      SUMMARY OF LITIGATION TO DATE

Plaintiffs Anne Elkind and Sharon Rosen brought this consumer protection class action lawsuit on behalf of themselves and the putative class of purchasers of Defendant Revlon Consumer Product Corporation's ("Revlon" or "Defendant") DNA Advantage line of three cosmetic products: foundation, powder and concealer (the "Products").  *See generally* Dkt. No. 12 (First Am. Compl. or "FAC")., Plaintiffs asserted a total of 11 claims on behalf of a nationwide class under New York law, and on behalf of a California subclass under California law. (*Id.* ¶¶ 83-173.) These included claims for false advertising under N.Y. Gen. Bus. L. § 349 (id. ¶ 86), and under the "unlawful" prong of California's Unfair Competition Law ("UCL,") Cal. Bus. & Prof. Code §§ 17200 et seq. (id. ¶ 116). . Plaintiffs further alleged the DNA Advantage Products were misbranded under the federal Food, Drug and Cosmetics Act ("FDCA"), and thus actionable under state law. (*See generally id.* ¶¶ 36-66.)

Revlon vigorously fought this case, contending a class could not be certified and that the claims lacked merit.  Revlon brought a motion to dismiss, alleging a host of affirmative defenses (Dkt. Nos. 18-22, 31), which Plaintiffs opposed (Dkt. No. 28).  As a result, the Court struck injunctive relief from the lawsuit, finding there was a lack of Article III standing; removed claims for the powder Product; and also removed claims that the Products were unapproved new drugs based on the doctrine of preemption.  In addition, the Court dismissed with prejudice counts one (N.Y. Gen. Bus. L. § 349), three (negligent misrepresentation), five (Cal. bus. & Prof. Code § 17200 *et seq.*), nine (breach of implied warranty of merchantability), ten (breach of implied warranty of fitness), twelve (breach of implied warranty under Cal. Comm. Code § 2313(1)), thirteen (breach of implied warranty under Cal. Comm. Code § 2315), fourteen (unjust enrichment), and fifteen (restitution) of the First Amended Complaint.  (Dkt. No. 79.)

The parties attended an in-person mediation before the Honorable Peter Lichtman (Ret.) on

August 27, 2015, which included counsel for the parties plus a Revlon representative.  Decl. of Ronald A. Marron filed herewith ("Marron Decl.") ¶ 29. While this mediation was not successful on that date, the parties did subsequently, over a period of several months negotiate the specific terms of the settlement presently before the Court.

In the course of this litigation, Defendant produced and Plaintiffs' counsel reviewed substantial documentary evidence, including over 100,000 pages of evidence, regarding the Products' sales, advertising, labeling, company finances and organization, product testing and articles Revlon claimed supported the efficacy of the Products.  Marron Decl. ¶ 25.  Percipient witness depositions were taken; numerous third party subpoenas served; experts retained; and expert reports exchanged. *Id.* ¶ 28.  Over the course of the litigation, counsel for the parties were able to obtain an in-depth understanding of the strengths and weaknesses of their clients' respective positions.  *Id.* ¶ 31; *see also* Decl. of Jack Fitzgerald ("Fitzgerald Decl.") ¶ 4.  As the record shows, this case was hard fought.[1]

---

[1]  The parties also engaged in lengthy analysis of the laws applicable to the labeling claims here, with Defendant's counsel setting forth detailed factual and legal analysis why they believed the claims on the Products fully complied with the law, and Class Counsel setting forth detailed factual and legal analysis why they believed the claims were not lawful or were false and deceptive.  *See* Marron Decl. ¶¶ 25-35; Dkt. Nos. 18-22, 28, 31.  Based on diligent effort, Class Counsel was aware of the attendant strengths, risks, and uncertainties of Plaintiffs' claims, and Defendant's defenses, during the course of negotiations.  Marron Decl. ¶ 25-35; Fitzgerald Decl. ¶¶ 2, 4.

Defendant, on the other hand, vigorously denies any wrongdoing or liability, and contends that it would be wholly successful in defeating Plaintiffs' claims at or before trial.  Riley Decl. ¶¶ 7, 10.  At trial or before, Revlon would argue that the Products are properly labeled, that their labeling and marketing is not false or misleading, and that the Plaintiffs have not met their burden of proof that the Products were not efficacious or falsely labeled.  Defendant also would argue, among other things, that Plaintiffs cannot prove that class action is a superior resolution to Plaintiffs' claims, would strongly contest class certification and, if certification did occur, would file a motion to decertify the class.  By way of example and without limitation, Revlon presented three rebuttal expert reports on November 16, 2015 opining in detail that, among other matters, no uniform class wide approach existed to survey consumer purchasing decisions or to calculate alleged damages related to the DNA Advantage products.  In addition and without limitation, these reports detailed extensive individualized fact issues bearing upon surveying consumers, the consumer purchasing decisions,

Class Counsel exercised due diligence to confirm the adequacy, reasonableness, and fairness of the settlement.  Marron Decl. ¶¶ 25-35 ; Fitzgerald Decl. ¶¶ 2, 4.  Despite the vigorous opposition on both sides, the parties appreciate the costs and uncertainty attendant to any litigation, and have agreed to a proposed settlement agreement.  Marron Decl., Ex. 1 ("Sett. Agmt.").[2]  Class Counsel agreed to settle the action pursuant to the provisions of the Settlement, after considering, among other things: (i) the benefits to Plaintiffs and the Class under the terms of the Settlement; (ii) the uncertainty of being able to prevail at trial; (iii) the uncertainty relating to Defendant's defenses and the expense of additional motion practice in connection therewith; (iv) the attendant risks, difficulties, and delays inherent in litigation, especially in complex actions such as this; and (v) the desirability of consummating this Settlement promptly in order to provide substantive relief to Plaintiffs and the Class without unnecessary delay and expense.  Marron Decl. ¶¶ 25-35; Fitzgerald Decl. ¶¶ 2, 4; Sett. Agmt. §§ III (A)-(B).

## II.   <u>SUMMARY OF THE SETTLEMENT</u>

### A.  Discontinuance of DNA Advantage Product Line

Revlon shall discontinue and not recommence manufacturing, advertising, promotion, distribution, offer for sale, and sale of the specific line of DNA Advantage Products at issue in this action (foundation, concealer, and powder) by December 31, 2017.  Sett. Agmt. § III (C).  Notwithstanding the compliance deadline of December 31, 2017, Revlon represents that, as of November 2013, it has discontinued its DNA Advantage concealer and powder.  Id.

### B.  Monetary Relief

In addition, the Settlement provides for refunds to the Class.  Sett. Agmt. § III (D).  Within

---

varied exposure to labelling and advertising and pricing.  Riley Decl. ¶ 8.

[2] All initial-capped words refer to the terms and definitions in the Settlement Agreement.

seven (7) days of the Court's Preliminary Approval of the settlement,   Revlon shall pay $900,000 into

a Dahl Administration Qualified Settlement Fund ("QSF") created with a separate tax identification

number, to cover all expenses associated with final settlement approval by the Court including notice,

administration, class member claims, and plaintiffs' service awards, legal expenses, and attorneys'

fees.  Those QSF shall be distributed and used as follows:

1. Class members shall receive $3 per claim (i.e., for each unit purchased), up to a total of 3 units without receipt.

2. Class members with receipts shall receive $3 per claim (no cap).

3. No less than $250,000 shall be available for payment of class member claims.

4. Absent exhaustion of the $250,000 minimum, the remaining amount up to the $250,000 "floor" will be distributed cy pres to a charitable entity designated by the Parties that reasonably relates to the issues in the case.  The Parties propose that the cy pres recipient be Look Good Feel Better ("LGFB") www.lookgoodfeelbetter.org, a public service program of The Personal Care Products Foundation ("Foundation"), a charitable organization[3].

5. No more than $400,000 shall be paid for class member claims.  In the event that claims exceed that amount, payments for claims shall be reduced pro rata.

Class members can also opt out if they wish to pursue their own action for damages.  Sett.

Agmt. §§ III (D), (E)(7).

### C.    Costs of Notice and Administration, Attorneys' Fees, and Incentive Award

All Notice and Claims Administration costs, attorneys' fees and Class Representatives

Enhancement Awards shall be paid out of the QSF.  Sett. Agmt. §§ III(D)(1), (D)(2)(j), (E).  This is a

benefit to the class, since plaintiffs are ordinarily required to bear the burden of notice in class actions.

The Media Notice Plan provides a broad range of notice as discussed in Section III. D. of this

---

[3]  Supported by volunteer beauty professionals trained by the Foundation of the American Cancer Society, and the Professional Beauty Association, and open to all women with cancer who are undergoing chemotherapy, radiation, or other forms of treatment, the LGFB teaches beauty techniques and provides cosmetics and other beauty-related products to cancer patients to help them manage the appearance-related side effects of cancer treatment. www.lookgoodfeelbetter.org.

brief, *infra*.  *See also* Sett. Agmt., Ex. D ("Media Notice Plan") and Declaration of Jeffrey Dahl ("Dahl Decl.").  The amount for Notice and Administration depends in part on the number of class members and claims, but presently is estimated at between approximately $65,000 and $85,000, based on the Dahl Administration Fee Summary dated February 12, 2016, as well as the Dahl/FRWD Media Plan dated February 19, 2016 (setting forth a detailed plan for digital, web-based media notice on platforms reasonably directed to reaching purchasers of the subject Products, attached to the Settlement Agreement as Exhibit D).  Dahl is a recognized class action notice provider and claims administrator. *See* Dahl Decl. ¶ 2 & Ex. 1.

Subject to Court approval, Plaintiffs shall seek an award of their costs and attorneys' fees in the amount remaining from the QSF after satisfying the Authorized Claimants, the Class Representative Enhancement awards, and notice and administration expenses as provided above.  Sett. Agmt. § III (D)(2)(k).  Defendant shall bear its own costs and attorney's fees.  *Id.*  Defendant has agreed to pay Enhancement awards to the two Class Representatives of up to $5,000 each, subject to Court approval, out of the QSF as a reward for their efforts in seeing that this case was brought, litigated, and resulted in substantive benefits to the public and consumers.  *See id.*  The amount sought by Class Counsel will be summarized in a separate fee motion that will be made publicly available via the Notice Website, prior to the deadline for class members to object or opt out.  Out of the fee sought, the Plaintiffs' firms have a fee splitting agreement: 40% to The Law Office of Jack Fitzgerald, PC, and 60% to Law Offices of Ronald A. Marron, APLC.

## III.   THE SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY APPROVAL

### A.   Standard of Review

The Second Circuit has long recognized "the strong judicial policy in favor of settlements,

particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (internal quotation marks omitted); *accord McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009); *see also* 4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.41, at 87 (4th ed. 2002) ("Newberg") ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).

"Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation." Manual for Complex Litigation, Fourth ("MCL 4th"), § 21.632, at 320 (Fed. Judicial Center 2004) (footnote omitted). If the settlement passes muster at the preliminary approval stage, the court sets a formal fairness hearing to determine whether the settlement should be granted final approval, and notice of the settlement and hearing is given to the class. Id. § 21.633, at 321-22; *see also* 4 Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.25, at 38-39 (4th ed. 2002) (endorsing two-step process). At the preliminary-approval stage, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms . . . ." MCL 4th § 21.632, at 321. The judge should review the settlement for concerns "such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the class, the need for subclasses, or excessive compensation for attorneys." *Id.* "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible [final] approval, preliminary approval is granted." *Nieves v. Community Health Plan*, No. 08 Civ. 321 (VB) (PED), 2012 U.S. Dist. LEXIS 37720, at *12 (S.D.N.Y. Feb. 24,

2012) (internal quotation marks omitted); *accord In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).[4]

This Motion will first address the propriety of class certification and then explain why the Court should preliminarily approve the Settlement.

### B.     The Court Should Certify the Class for Settlement Purposes[5]

A proposed class may be certified for settlement purposes if it satisfies Federal Rule of Civil Procedure 23(a), namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Amchem Prods., Inc. v. Windsor*, 117 S.Ct. 2231, 2248 (1997).  In a case where a class has not yet been certified for litigation purposes, "[p]rovisional settlement class certification and appointment of class counsel [at the preliminary-approval stage] have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the

---

[4] A settlement "falls within the range of possible approval" if there is a basis for believing that the more rigorous standard for final approval can be satisfied. In essence, a granting of preliminary approval constitutes "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n-Eastern R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980), quoted in *Nieves*, 2012 U.S. Dist. LEXIS 37720, at *12.  In addition, if no class certification is in effect at the time of preliminary approval, "the judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."  MCL 4th § 21.632, at 321.  "If there is a need for subclasses, the judge must define them and appoint counsel to represent them." *Id.*  "Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members." *Id.* § 21.633, at 321.

[5] The settlement class is defined as all Persons in the United States who, during the Class Period (April 25, 2011 to the date the Motion for Preliminary Approval of the Settlement is filed) purchased one or more Revlon Age Defying with DNA Advantage Cream Makeup, Concealer, and Powder, in any package, size, or iteration, for personal, family or household use, and not for resale. Specifically excluded from the class, however, are any Person(s) who timely opts-out of the Class. Sett. Agmt. § II.

date and time of the final approval hearing." *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 (LTS), 2011 U.S. Dist. LEXIS 11931, at *3 (S.D.N.Y. Jan. 20, 2011). Thus, courts routinely grant conditional certification of a plaintiff class for settlement purposes. *See*, *e.g.*, *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 184 (S.D.N.Y. 2012) (settlement class conditionally certified at preliminary-approval stage); *Nieves*, 2012 U.S. Dist. LEXIS 37720, at *10 (same); *Palacio v. E*Trade Fin. Corp.*, No. 10 Civ. 4030 (RJH) (DCF), 2012 U.S. Dist. LEXIS 41886, at *4 (S.D.N.Y. Mar. 12, 2012) (same).[6]

Plaintiffs here seek settlement class certification under Rules 23(b)(2) and/or (b)(3). For settlement purposes only, Defendant does not object to a finding that the class elements are met. Sett. Agmt. § III (A)(1).

### 1.    Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." "Where the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *In re Abbott Labs. Norvir Anti-Trust Litig.*, Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899, at *6 (N.D. Cal. June 11, 2007) (internal citations and quotations omitted). Generally, classes of forty or more are sufficiently numerous. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, Plaintiffs seek to certify a class of nationwide purchasers of Revlon Age Defying with DNA Advantage Cream Makeup, Concealer, and Powder, in any package, size, or iteration ("Revlon's

---

[6] This certification is not final or binding, but is reviewed in connection with the final fairness hearing. Plaintiffs will then be required to establish on a more detailed basis that the settlement class satisfies the requirements of Rule 23 and, if so, the class certification will be made final if the settlement is approved. *See In re Take Two Interactive Sec. Litig.*, No. 06 Civ. 803 (RJS), 2010 U.S. Dist. LEXIS 143837, at *16 (S.D.N.Y. June 29, 2010) ("Courts often certify classes for settlement purposes, and it is not uncommon for courts to certify settlement classes on a preliminary basis, at the same time as the preliminary approval of the fairness of the settlement, solely for the purpose of settlement, deferring final certification of the class until after the fairness hearing.").

DNA Advantage Products" or the "Products"), which are sold in numerous retail stores throughout the United States. The proposed Settlement Class potentially consists of tens of thousands of claimants, which can reasonably be inferred from Defendant's sales volume. *See id.*; Riley Decl. ¶ 5. Therefore, the Class is sufficiently numerous such that joinder of all individual claimants would be impracticable. *See* Fed. R. Civ. P. 23(a)(1).

### 2. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." All questions of fact and law need not be common to satisfy the rule. Rather, there need only be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986); *see also Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008) (commonality satisfied where two questions of law were common to all class members). Courts construe the commonality requirement liberally. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (citing *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992)).

"In addition, all class members must "have suffered the same injury." *Wal-Mart Store, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon* ("*Falcon*"), 457 U.S. 147, 157 (1982)). In the context of claims for false or deceptive advertising, there is essentially a single misrepresentation (that the Products are effective for their advertised purposes) and a single injury (loss of money for a product that did not work as represented). *See Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 589 (C.D. Cal. 2011).

Here, Class members share numerous common questions, including (a) whether Revlon advertised or marketed the Products in a way that was false or misleading, (b) whether Revlon concealed material facts from class members, (c) whether, as a result of Revlon's misrepresentations, Plaintiffs and other members of the class suffered an ascertainable loss by purchasing the Products, and (d) whether Plaintiffs and the class are entitled to recover damages or other equitable relief as a

result of Revlon's alleged unlawful conduct.  Revlon made uniform representations on the Products' labeling and packaging, as well as on its websites, as to the Products' properties.  The labeling was uniform throughout the United States, and did not differentiate for any specific market or region.  Riley Decl. ¶ 6.  Class Members therefore share a common alleged injury because they were all allegedly exposed to the same representations on each Product, and the Class is limited to purchasers of the Products.  Sett. Agmt. § II (H).  Thus, for purposes of a Settlement Class, all potential Class Members were exposed to Defendant's uniform advertisements at the time of purchase. *See Delarosa*, 275 F.R.D. at 589.  This action, therefore, presents common questions of law or fact concerning whether Defendant made false or deceptive representations about its Products, and determination of whether the representations were true or deceptive would resolve all claims "in one stroke." *Dukes*, 131 S.Ct. at 2551.[7]

### 3.   Typicality

Rule 23(a)(3) sets a "permissive standard," and the named Plaintiffs' claims are typical of the class if they are "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020.  Rule 23(a)(3) requires that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted).  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiff and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).  "Like the commonality requirement, typicality does not require

---

[7] This case does not pose commonality problems that might arise in an employment class action, where a defendant supervisor may have subjected different plaintiffs to disparate, discriminatory treatment. *See Dukes*, 131 S.Ct. at 2554 (noting commonality could be proven where there was "a uniform employment practice"); *In re Ferrero Litig.*, No. 11-CV-205 H(CAB), 2011 WL 5557407, at *3-4  (S.D. Cal. Nov. 14, 2011).

the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182; *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). Also, the representative plaintiff must be a member of the class they seek to represent.  *Falcon*, 457 U.S. at 156.

Here, the proposed Class Representatives have claims typical to the Class and are members of the Class they seek to represent.  Ms. Elkind and Ms. Rosen allegedly sought out Defendant's Products based on the representations the Products provided a cosmetic "DNA Advantage," and suffered the same alleged injury in fact – loss of money in the amount of the purchase price – when the Products allegedly were not as advertised.  All purchasers and Class Members were exposed to Defendant's representations about the Products' "DNA Advantage" because the labels, packaging, and websites are the same throughout the United States.  Riley Decl. ¶ 6.

### 4.    Adequacy of Representation

Rule 23(a)(4) requires that the Class Representative parties "fairly and adequately represent the interests of the class.  The adequacy requirement is met if plaintiffs: (1) are represented by competent counsel who are qualified, experienced and generally able to conduct the litigation; and (2) do not have "interests antagonistic to those of the remainder of the class." *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 477 (E.D.N.Y. 2001) (internal quotation marks omitted). "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701, at *19 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)). Regarding qualifications of proposed Class Counsel, the Court should analyze "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Here, the requirements for adequacy are satisfied.  Plaintiffs do not have interests that conflict with the proposed Settlement Class.  Plaintiffs and the Class purchased the Products, believing the DNA Advantage representations made on the Products' packaging, and lost money as a result when the Products were not as advertised.  FAC ¶¶ 16, 22-24.  Moreover, the packaging of each Revlon DNA Advantage Product appeared the same throughout the United States.  *Id.*; Riley Decl. ¶ 6.

Class Counsel performed extensive work to date in successfully mediating and negotiating the proposed Settlement over the course of this case's pendency.  Marron Decl. ¶¶ 29-30, 34.  Class Counsel has numerous years' experience, and demonstrated success, in bringing the same types of false labeling claims at issue in this action.  *See, e.g.*, Marron Decl. ¶¶ 4-24 & Ex. 2; Fitzgerald Decl. ¶ 3 & Ex. A.  This action involves complex cosmetics labeling and scientific proof issues, class action requirements, common law fraud theories, and statutory consumer fraud.  Plaintiffs agree that Settlement Class Counsel are competent, qualified, and will more than adequately protect the Class' interests.  *See Reyes v. Buddha-Bar NYC*, No. 08-civ-02494 (DF), 2009 U.S. Dist. LEXIS 45277, at *7 (S.D.N.Y. May 28, 2009) (adequacy requirement met where class counsel has "an established record of competent and successful prosecution of large . . . class actions, and the attorneys working on the case are likewise competent and experienced in the area.") (internal quotation marks omitted).  Accordingly, Plaintiffs request the Court appoint Plaintiffs' counsel as Class Counsel for purposes of settlement, pursuant to Rule 23(g)(1) (requiring a certified class to also have appointed class counsel).

### 5.   The Proposed Class Meets the Requirements of Rule 23(b)(2)[8]

Certification under Rule 23(b)(2) is appropriate where a defendant has acted on "grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  "A class seeking monetary damages may be certified

---

[8] The Settlement contemplates that the Class will be certified under Rule 23(b)(3) or Rule 23(b)(2), or both.

pursuant to Rule 23(b)(2) where [monetary] relief is 'merely incidental to [the] primary claim for injunctive relief.'" *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1195 (9th Cir. 2001) (citing *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986)).

Plaintiffs' claims for restitution are "incidental" to the Complaint's primary claims for various forms of injunctive relief. *Dukes*, 131 S.Ct. at 2557. Plaintiffs' primary claims relating to removing the Products from the market, or to relabel them, are primarily equitable in nature. *See* FAC. Plaintiffs and the Class' claims for restitution were secondary in that any compensation would have flowed directly out of Defendant's alleged misrepresentations or omissions. *See Dukes*, 131 S.Ct. at 2559 (stating that damages are incidental when they "flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief.") (citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998)). Plaintiffs' basis for seeking modification to the Products' packaging, or to have the Products cease circulation in the marketplace, also flow directly from the basis of Defendant's alleged liability to the Class as a whole: the Products' allegedly false and deceptive marketing.

Further, if Defendant's labeling conduct was unlawful as to one Plaintiff, it was unlawful as to the entire Class. *Id.* at 2557 (stating Rule 23(b)(2) injunctive relief is appropriate when defendant's conduct is unlawful "as to all of the class members" and applies "when a single injunction or declaratory judgment would provide relief to each member of the class," thereby benefitting each Class Member equally). Here, Revlon's agreement to discontinuance of the DNA Advantage Products will afford relief to each Member of the Class and benefit the Class equally. This Court should, therefore, certify the Class under Rule 23(b)(2) for settlement purposes. For settlement purposes only, Defendant does not object to a finding that the class should be certified under Rule 23(b)(2). Sett. Agmt. § III (A).

**6.**      **The Proposed Class Meets the Requirements of Rule 23(b)(3)**

Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action."  7A C.A. Wright, A.R. Miller, & M. Kane, Federal Practice & Procedure §1777 (2d ed. 1986)).  Rule 23(b)(3) certification requires that: (i) questions of law or fact common to the class predominate over questions affecting only individual members; and (ii) a class action is superior to resolution by other available means.  Fed. R. Civ. P. 23(b)(3).  For settlement purposes only, Defendant does not object to a finding that the class should be certified under Rule 23(b)(3).  Sett. Agmt. § III (A).

### *i.*      *Predominance*

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.* at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York,* 228 F.R.D. 487, 502 (S.D.N.Y. 2005). The predominance requirement "is designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Frank,* 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623).  The predominance requirement "does not require that all questions of law or fact be common; it only requires that the common questions predominate over individual questions." *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981).

Here, Plaintiffs would have to prove that the Products' labeling is false and deceptive before any remedy can be achieved.  *See* N.Y. Gen. Bus. Law §§ 349-350; Cal. Civ. Code 1750; Cal. Bus. & Prof. Code §§ 17200, 17500.  As discussed above, for purposes of a Settlement Class, the same

14

common questions relevant to the Rule 23(a)(2) analysis predominate, including whether Revlon misrepresented the effectiveness and nature of the Products sold in the United States; whether the claims were material to consumers who purchased the Products, and whether purchasers paid more than they otherwise would have been willing to pay if the Products had been labeled differently. Therefore, predominance is satisfied.

### ii.    Superiority

Class treatment is also the superior means to adjudicate Plaintiffs' claims.  The Court should certify the Settlement Class if it finds that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Green* v. *Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Settlement Class certification is superior where individual claims are small or modest. *In re Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 49 (E.D.N.Y 1997). Settlement Class treatment here will facilitate the favorable resolution of all Settlement Class Members' claims. Given the large numbers of Settlement Class Members and the multitude of common issues present, the class device is also the most efficient and fair means of adjudicating these claims. Class treatment in the settlement context is superior to multiple individual suits or piecemeal litigation because it greatly conserves judicial resources and promotes consistency and efficiency of adjudication. Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of many thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication.  *See* Fed. R. Civ. P. 23(b)(3).

In addition, each Class Member's claim, individually, is of relatively low value. As a practical matter, absent the use of the settlement class action device, it would be too costly and inefficient for any individual plaintiff to finance a lawsuit asserting such claims through trial and appeal.  For these reasons, the superiority requirement is easily satisfied.

### C.    The Court Should Grant Preliminary Approval of the Proposed Settlement

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. Newberg § 11.25. To grant preliminary approval, the court must find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); Newberg § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).  Here, there is probable cause for the Court to grant preliminary approval of the Settlement Agreement and schedule the fairness hearing.

### 1.    The Settlement Is The Product Of Serious, Informed, Non-Collusive Negotiations, Including Mediation By An Experienced Neutral

The first consideration in the preliminary-approval analysis is whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations." *Nieves*, 2012 U.S. Dist. LEXIS 37720, at *12 (internal quotation marks omitted).  Indeed, even under the more rigorous standard governing final approval, where a settlement has been negotiated at arm's length by experienced, informed counsel, there is a presumption that it is fair and reasonable.  *McReynolds*, 588 F.3d at 803; *Wal-Mart Stores, Inc.*, 396 F.3d at 117.[9]

---

[9] A court may also consider whether the settlement was reached with the assistance of a judicial officer or other experienced neutral.  *See In re Currency Conversion Fee Antitrust Litig.*, 2006-2 Trade Cas. (CCH) ¶ 75,505, 2006 U.S. Dist. LEXIS 81440, at *14-15 (S.D.N.Y. Nov. 8, 2006) (granting preliminary settlement approval) ("Here, the settlement negotiations were extensive, spanning a number of months and involving various mediation sessions with former Magistrate Judge Infante. . . . Judge Infante's participation in the negotiations substantiates the parties' claim that the negotiations took place at arm's length."); *see also Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012) ("The involvement of Ruth D. Raisfeld, Esq., an experienced and well-known employment and class action mediator, is also a strong indicator of procedural fairness."); *In re Giant*

Here, the settlement negotiations took place between counsel for the Parties and involved the services of a competent, experienced, and independent jurist, the Honorable Peter Lichtman (Ret.).  Plaintiffs had two independent law firms – the Law Offices of Ronald A. Marron, APLC and the Law Office of Jack Fitzgerald, PC – representing their interests and the interests of the putative and certified Classes; Defendant is represented by Patricia Glaser and Sean Riley of Glaser Weil and Nelson Boxer of Petrillo Klein & Boxer, LLP .  The fact that the Settlement was prompted by an experienced judge is one factor that demonstrates the Settlement was anything but collusive. *See, e.g*., *Morris*, 859 F. Supp. 2d at 618.

The initial Mediation was followed by months of detailed and adversarial negotiations between the Parties plus the filing of expert reports on both sides, with overall negotiations lasting approximately six months before the Settlement Agreement was finalized.  Marron Decl. ¶¶ 25-35; *see also* Fitzgerald Decl. ¶¶ 2, 4.  The material settlement terms were not reached before both sides' counsel thoroughly investigated and researched the relevant facts and law, including reviewing over 100,000 pages of discovery produced by Defendant, and after retaining and reviewing expert reports produced by both sides.  *See id.*

### 2.  The Settlement has no Obvious Deficiencies and does not Improperly Grant Preferential Treatment to the Class Representatives or Segments of the Class

The settlement does not provide "unduly preferential treatment of class representatives or segments of the class," MCL 4th § 21.632, at 321. Each claim of a class member in a given category

---

*Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) ("[C]ounsel have provided the Court significant evidence demonstrating that this settlement was the product of prolonged, arms-length negotiation, including as facilitated by a respected mediator."). Moreover, if the terms of the settlement are fair, courts generally assume the negotiations were proper. *See In re GM Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785-86 (3d Cir. 1995).

(i.e., receipt and non-receipt categories) will be paid $3 per purchase, with receipt-bearing class members being entitled to more based on the fact their damages are provably higher.  The differences between the payment between receipt-bearing and non-receipt bearing class members reasonably reflect the relative strengths of these two categories of claims in litigation.  *See Danieli v. Int'l Bus. Machines Corp.*, No. 08 Civ. 3688 (SHS), 2009 U.S. Dist. LEXIS 106938, at *13 (S.D.N.Y. Nov. 16, 2009) (granting preliminary settlement approval) ("As to the proposed plan of allocation, the Court finds that the proposed plan is rationally related to the relative strengths and weaknesses of the respective claims asserted.").  The Settlement Agreement provides monetary relief to all Class Members, including the Class Representatives.  Sett. Agmt. at §§ III (D).  All Class Members will benefit equally from the discontinuation of the Products in the marketplace which Defendant has agreed to undertake.  *Id.* § III (C).

The Settlement Agreement grants the Representative Plaintiffs the right to apply to the Court for an incentive award of up to $5,000 each.  *Id.* § III (D)(2)(i).  The amount of any award is within the Court's discretion and, thus, will not be unreasonable in light of the Representative Plaintiffs' role in this case.  "Courts in this district and elsewhere routinely approve incentive awards of the type sought here." *Jermyn v. Best Buy Stores, L. P.*, No. 08 Civ. 214 (CM), 2012 U.S. Dist. LEXIS 90289, at *22 (S.D.N.Y. June 27, 2012); *see also Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670 (BSJ) (JCF), 2010 U.S. Dist. LEXIS 12762, at *4 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); *Velez v. Novartis Pharms. Corp.*, No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, at *68-69 (S.D.N.Y. Nov. 30, 2010) (collecting decisions approving incentive awards ranging from $50,000 to $300,000).  Both Plaintiffs will file detailed declarations of the time they spent assisting with prosecution of this case in connection with

the fee/incentive award motion, which will then be posted publicly online so that class members can review and comment on the amounts sought.  Accordingly, the Settlement Agreement does not give preferential treatment to the Class Representatives.

In regard to the factor of whether the settlement provides any "excessive compensation for attorneys," (MCL 4th § 21.632, at 321), the settlement contemplates that Plaintiffs' Counsel would apply for a total fee-and-cost award of a portion of the QSF using the lodestar approach.  *See* Sett. Agmt. § III (D)(2)(k).  The requested fee will range from $420,000 to $590,000, depending on the final cost of notice and the claims made.  Given counsel's costs, the fee component alone of the requested award will be approximately one-third of that incurred by Plaintiffs' counsel to date, far less than their lodestar.  Marron Decl. ¶ 32.

### 3. The Proposed Settlement Meets the *Grinnell* Factor Test for Preliminary Approval

Under Federal Rule of Civil Procedure 23(e), the district court must determine whether the proposed settlement is "fundamentally fair, adequate, and reasonable."  In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Although the Court's task on this motion is merely to perform an "initial evaluation," Newberg § 11.25, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement. The Grinnell factors are:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463 (citations omitted).

Nearly all of the Grinnell factors weigh in favor of approval of the Settlement Agreement or are neutral.

### i.     *Litigation Through Trial Would Be Complex, Costly, and Long* (**Grinnell Factor 1**)

Plaintiffs' claims involve complex issues under the FDCA and the Products' claimed efficacy. The costs and risks associated with continuing to litigate this action would require extensive resources and Court time, such as expert testimony and dueling *Daubert* motions.  "Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation."  *Nat'l Rural Telecomms. Coop v. DirecTV*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).  Thus, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  Id. at 526.

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. W. Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981). This case is no exception. As discussed above, the Parties have engaged in extensive discovery.  In addition to their own pre-filing investigation, and expert reports, Plaintiffs reviewed almost 100,000 pages of documents they received through discovery. *See* Marron Decl. ¶ 25; Fitzgerald Dec. ¶ 2. The next step in the litigation would have been expert depositions, contested motions for class certification and summary judgment, all of which would be costly and time-consuming for the parties and the Court. The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Class. This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals. Consequently, this Grinnell factor plainly weighs in favor of preliminary approval of the proposed Settlement.

### ii.     *The Reaction of the Class* (**Grinnell** *Factor 2*)

Since Notice of the Settlement has not yet been issued to the Class, it is not possible to gauge the reaction of the Class at this time. However, with each Class Member receiving $3 per purchase for 3 purchases without a receipt, and $3 for all purchases for which a class member has a receipt, we expect the class will react favorably.  The Court should consider that class members still received a makeup, even if the Products allegedly did not provide any "DNA Advantage."  Documents uncovered during discovery showed that the premium pricing Revlon itself assigned to the DNA Advantage advertising amounted to an increased price per package of about 7% per package, or approximately $1 for a $15 purchase.  Fitzgerald Decl. ¶ 2.  Here, the Settlement provides $3 per package to class members, or triple the expected trial result.  Since the premium price attributable to the allegedly false advertising is the most the class could have received at trial, and the Settlement trebles that amount, the result is favorable to the class.

### iii.    *Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case* (**Grinnell** *Factor 3*)

Here, Class Counsel identified and conducted an extensive investigation as to the claims arising from Revlon's manufacture, distribution, and advertising of the Products. Thereafter, the parties conducted substantial discovery, including the exchange of written discovery. Responses to the written discovery requests, including verified interrogatories, were served in accordance with the schedule set by the Court.  Additionally, Plaintiffs reviewed over 100,000 pages of documents produced by Revlon, including highly confidential documents.  Marron Decl. ¶ 25; Fitzgerald Decl. ¶ 2. And, expert reports were exchanged, showing vigorous opposition between the parties.[10]

---

[10] The efforts made by counsel on both sides confirms that they are sufficiently well apprised of the facts of this action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the proposed settlement.  "The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Operating*

### iv.   *Plaintiffs Would Face Real Risks if the Case Proceeded* (**Grinnell** *Factors 4 and 5*)

"It can be difficult to ascertain with precision the likelihood of success at trial.  The Court cannot and need not determine the merits of the contested facts and legal issues at this stage, and to the extent courts assess this factor, it is to determine whether the decision to settle is a good value for a relatively weak case or a sell-out of an extraordinary strong case."  *Misra,* 2009 WL 4581276, at *7.

This case involved complex issues of scientific efficacy of the DNA Advantage Products, consumer reactions to same, and the amount of alleged loss attributable to the challenged advertising. Revlon firmly contends its Products are not falsely or deceptively advertised, and that its experts showed that extensive individual issues predominated.  Defendant maintains its expert reports clearly show certification would not have been maintainable, and that the merits could not be won. By way of example and without limitation, Revlon presented three rebuttal expert reports on November 16, 2015 opining in detail that, among other matters, no uniform class wide approach existed to survey consumer purchasing decisions or to calculate damages related to the DNA Advantage products.  In addition and without limitation, these reports detailed extensive individualized fact issues bearing upon surveying consumers, the consumers' purchasing decisions, consumers varied exposure to labelling and advertising and pricing.  (Riley Decl. ¶ 8).[11]  In the context of this litigation, Plaintiffs

---

*Corp.*, Nos. 04-CV-3316, 08-CV- 8531, 08-CV-9627 (PAC), 2010 U.S. Dist. LEXIS 139144, at *16 (S.D.N.Y. Dec. 21, 2010) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted). The discovery conducted in this matter clearly traverses this hurdle. Therefore, this Grinnell factor also weighs in favor of preliminary approval.

[11] Although Plaintiffs believe their case is strong, it is not without risk. Plaintiffs recognize that Defendant has factual and legal defenses that, if successful, could potentially defeat or substantially impair the value of Plaintiffs' claims.  For example, Plaintiffs might not be able to: (1) satisfy their burden of demonstrating that the Products are ineffective for everyone, as necessary for a warranty

and the Class face risks and further litigation will only delay relief to the Class Members. The proposed Settlement, however, alleviates these risks and provides a monetary benefit to the Class in a timely fashion that minimizes any significant commitment of future resources by the parties and the Court. Therefore, this *Grinnell* factor also favors preliminary approval.

### v.     *Establishing a Class and Maintaining it Through Trial Would Not be So Simple (***Grinnell** *Factor 6)*

The risk of maintaining the class status through trial is also present. The Court has not yet certified the proposed Class and the Parties anticipate that such a determination would be reached only after exhaustive briefing.  Revlon would argue that individual questions preclude class certification. Revlon would also argue that a class action is not a superior method to resolve Plaintiffs' claims and that a class trial would not be manageable. Should the Court certify the class, Revlon would likely challenge certification and move to decertify, forcing another round of briefing. Revlon may also seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f).  Risk, expense, and delay permeate such a process. The proposed settlement eliminates this risk, expense, and delay. Therefore, this factor weighs in favor of preliminary approval.

### vi.     *Defendant's Ability to Withstand a Greater Judgment (***Grinnell** *Factor 7)*

Revlon probably could withstand a greater judgment. However, a "'defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.'" *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178, n.9.  Thus, at worst, this factor is

---

cause of action; (2) overcome the fact that certain claims may be preempted; or (3) retain class certification through trial.  In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotation marks omitted).  Defendant's motion to dismiss struck Plaintiffs claims for mislabeling under the FDCA, removed the Powder Products' claims, eliminated the claims for injunctive relief and dismissed with prejudice nine causes of action.  Defendant believes they would have won at trial and that the case would not be certified.  Riley Decl. ¶ 10.

neutral.

### vii.   *The Settlement Amount is Reasonable in Light of the Possible Recovery and the Attendant Risks of Litigation* (**Grinnell** *Factors 8 and 9*)

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186 (internal quotation marks omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. As the Second Circuit stated in *Grinnell*, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." 495 F.2d at 455 n.2.

Here, the Settlement Amount is more than reasonable in light of the potential recovery.  Each Class Member will receive $3 per purchase (limit on 3 purchases without a receipt), which represents *three times* the estimated premium price that Revlon itself determined applied to the "DNA Advantage"-specific advertising.  Fitzgerald Decl. ¶ 2.  Class members did receive makeup for their purchases, and therefore a full refund would not have been achievable at trial.  *See id.*  Further, given the units sold (approximately 3 million), the QSF establishes sufficient monies to reimburse purchasers of the Products throughout the United States for the premium price garnered:  Plaintiffs' expert calculated the class's damages at no more than $2.8 million. Thus, the Settlement is basically one-third of maximum damages after trial.  In addition, Revlon is discontinuing the advertising entirely

and discontinuing sales of the Products.  Sett. Agmt. § III (C).[12]

Thus, these *Grinnell* factors also weigh in favor of preliminary approval.

**D.      The Proposed Form of Class Notice and Notice Plan Satisfy the Requirements of Rule 23**

If the Court's *prima facie* review of the relief offered and notice provided by the settlement are fair and adequate, it should order that notice be sent to the class.  Manual for Complex Litig., § 21.632 at 321.   Notice of a class action settlement must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Here, Defendant does not sell its Products directly to consumers, but only to third party retailers and distributors, who sell the Products on store shelves.   Thus, individual notice is not possible; and notice by publication is the "best notice practicable under the circumstances."  *See id.*; *In re Prudential Sec. Inc Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996) (to satisfy due process, "notice [to class members must be] reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections") (internal quotation marks omitted).

The proposed Notice and Media Notice Plan are adequate, constituting the best possible notice under the circumstances, and therefore comply with due process.  *See* Sett. Agmt. § III (E) & Exs. B,

---

[12] In addition, Revlon has agreed to fund the QSF, from which the costs of notice and administration and reasonable counsel fees and costs for Class Counsel, subject to Court approval will be paid.  Weighing the benefits of the Settlement against the risks associated with proceeding in litigation, the Settlement is more than reasonable. Moreover, when Settlement assures immediate payment of substantial amounts to Class Members, and does not "sacrifi[e] 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund*, 05 Civ. 2452 (RLE), 2008 U.S. Dist. LEXIS 23016, at *13 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, No. 01 Civ. 11814 (MP), 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004)).

F (short and long notices), Ex. D (Notice Plan); Dahl Decl. ¶¶ 4-33 & Exs. 1-3.  The Notices are neutral, and written in an easy-to-understand clear language, giving consumers (1) basic information about the lawsuit; (2) a description of the benefits provided by the settlement; (3) an explanation of how Class Members can exercise their right to object to the settlement; (4) an explanation that any claims against Defendant that could have been litigated in this action will be released; (5) the names of counsel for the Class and information regarding attorney's fees, costs and incentive awards; (6) the fairness hearing date, along with an explanation of eligibility for appearing; and (7) the settlement web site for additional information.   Sett. Agmt. § III (E) & Exs. B, F.  The Notices are also eye-catching, and mirror the exemplar notices set forth in the Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist (2010).  *Id.*; Dahl Decl. ¶ 33.

The Notice Plan involves (a) Web-based notice using paid banner ads on targeted websites; (b) Additional web-based notice using "keyword" searches displaying banner ads; (c) Social media ads and postings targeting relevant interest areas; (d) Earned media notice using a nationwide press release; (e) A dedicated, informational website through which Settlement Class Members can obtain more detailed information about the Settlement and access the Notice and case documents; and  (f) A toll-free telephone helpline by which Settlement Class Members can obtain additional information about the Settlement and request a copy of the Notice.   It also includes Class Action Fairness Act mailings to the Attorneys General of each state and the U.S. Attorney General.  Sett. Agmt., Ex. D.

The Parties have selected a qualified third-party Class Action Administrator with particular expertise in targeted online notice, Dahl Administration, to disseminate the notice and process claims. Dahl Decl. ¶¶ 4-33 & Exs. 1-3.  In light of the foregoing, the Court should approve the form of Notice, the manner of notice in the Notice Plan, and the chosen Claims Administrator.

E.      **The Proposed Timeline for Events Should be Adopted**

| Event | Date |
|---|---|
| Preliminary Approval Granted | Day 1 |
| Class Settlement Website Activated | On or before Day 7 |
| Notice First Published Online | On or before Day 7 |
| Notice Period Runs | For 30 days after notice starts |
| Claims Deadline ("Claim-In Period") | Through Day 61 |
| Class Counsel to File Motion for Attorney's Fees and Costs and Incentive Award, and for Final Approval | Day 75 |
| Last Day to Postmark or Submit Opt Out or Objection Online | Day 85 |
| Parties to Respond to Objectors, at their Option | Day 92 |
| Final Approval Hearing | Day 99 or as set by the Court |

Accordingly, the Parties request the Court schedule the Final Approval Hearing approximately

99 days after the order granting preliminary approval, or as soon thereafter as practical.

## IV.   **CONCLUSION**

For the foregoing reasons, the Parties jointly respectfully request this Court grant the relief

requested.


Respectfully submitted,

Dated: June 30, 2016                  */s/ Ronald A. Marron*
                                      **LAW OFFICES OF RONALD A. MARRON, APLC**
                                      RONALD A. MARRON (pro hac vice)
                                      *ron@consumersadvocates.com*
                                      SKYE RESENDES (pro hac vice)
                                      *skye@consumersadvocates.com*
                                      651 Arroyo Drive
                                      San Diego, California 92103
                                      Telephone: (619) 696-9006
                                      Facsimile: (619) 564-6665


                                      */s/ Jack Fitzgerald*
                                      **THE LAW OFFICE OF JACK FITZGERALD, PC**
                                      JACK FITZGERALD (pro hac vice)
                                      *jack@jackfitzgeraldlaw.com*
                                      THOMAS A. CANOVA (SBN 2108119)
                                      *tom@jackfitzgeraldlaw.com*

3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**Attorneys for Plaintiffs and the Proposed Class**


By: <u>*/s/ Sean Riley*</u>
    Sean Riley
    GLASER WEIL FINK HOWARD AVCHEN &
    SHAPIRO LLP
    10250 Constellation Blvd., 19th Floor
    Los Angeles, California 90067
    Telephone:  (310) 553-3000

    **Attorneys for Defendant Revlon Consumer Products Corporation**