**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
ANNE ELKIND and SHARON ROSEN, on
behalf of themselves and all others similarly
situated,

                                  Plaintiffs,

                 - against -

REVLON CONSUMER PRODUCTS
CORPORATION,

                                 Defendant.
---------------------------------------------------------X

**AMENDED**
**REPORT AND**
**RECOMMENDATION**

CV 14-2484 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**     **PRELIMINARY STATEMENT**

       This is a putative consumer class action filed by Anne Elkind and Sharon Rosen on

behalf of themselves and all others similarly situated, against Revlon Consumer Products

Corporation.  Plaintiffs aver that Revlon falsely advertised the efficacy of its "Age Defying with

DNA Advantage" line of cosmetics.  *See* First Amended Class Action Complaint ("FAC")

[DE 12], ¶¶ 1-5.  The parties conducted discovery over a two-year period, which included a

limited stay while Judge Seybert considered and issued a ruling on Revlon's motion to dismiss.

*See* DE 79.

       Thereafter, the parties directed their efforts toward a resolution of this case and ultimately

filed a "Joint Motion for Settlement of Class Action."  *See* DE 109 ("Joint Motion").  Judge

Seybert referred the motion to this Court for a Report and Recommendation on whether the

motion should be granted.  *See* DE 111.  The parties jointly seek certification of a class defined

as "all Persons in the United States who, during the Class Period (April 25, 2011 to the date the

Motion for Preliminary Approval of the Settlement is filed) purchased one or more Revlon Age

Defying with DNA Advantage Cream Makeup, Concealer, and Powder, in any package, size, or iteration, for personal, family or household use, and not for resale."  Memorandum of Law in Support of Joint Motion for Preliminary Approval of Class Action Settlement ("Joint Mem.") [DE 109-1], n.5.  For the reasons set forth below, the Court respectfully recommends to Judge Seybert that the Joint Motion for class certification and preliminary approval be GRANTED.

## II.  **BACKGROUND**

### A.  **The Underlying Facts**

On April 17, 2014, Anne Elkind and Sharon Rosen (collectively, "Plaintiffs") filed a First Amended Class Action Complaint against Revlon Consumer Products Corporation ("Defendant" or "Revlon") on behalf of themselves and a purported class of individuals who purchased foundation, powder or concealer bearing the brand name "Revlon Age Defying with DNA Advantage" ("the Products").  *See generally* FAC.  According to Plaintiffs, Revlon has advertised that the Products "help protect the skin's DNA and fight visible signs of aging."  FAC ¶ 1.  Plaintiffs allege that Revlon's use of the term "DNA Advantage" misleads customers into mistakenly thinking that the Products' ingredients "interact with the skin's DNA, perhaps on a cellular or molecular level, to provide scientifically-enhanced therapeutic benefits that reverse, minimize, slow, or otherwise 'defy' the process of aging."  *Id.*, ¶ 2.  According to Plaintiffs, the Products are not capable of accomplishing the advertised results.

In support of their claim, Plaintiffs point to representations made by Revlon in its federal trademark registration, namely, that "DNA Advantage" refers to an "ingredient in the manufacturing of cosmetics and makeup to protect against UV rays."  *Id.*, ¶ 3.  According to Plaintiffs, "DNA Advantage" refers to "nothing more than sunscreen."  *Id.*  In addition, they assert that deceptive advertising leads consumers to believe that the ingredients contain not just

sunscreen but elements which arm the Products with an "enhanced, scientifically-based, anti-aging efficacy." *Id.*, ¶ 28.  Moreover, Plaintiffs claim that only one of the three products even contains sunscreen. *Id.*, ¶ 3.  According to Plaintiffs, Revlon's use of the phrase "Age Defying" in conjunction with "DNA Advantage" and the double helix design of the Products and/or the Products' packaging, compound the deception. *Id.*, ¶ 5.

Based on the foregoing information, Plaintiffs assert fifteen causes of action in the FAC, nine on behalf of a nationwide class of purchasers and six on behalf of a California subclass of purchasers.  The following causes of action were alleged on behalf of the nationwide class: (1) deceptive and false advertising in violation of New York General Business Law § 349; (2) false advertising in violation of New York General Business Law § 350; (3) negligent misrepresentation; (4) intentional misrepresentation; (5) breach of express warranty; (6) breach of implied warranty of merchantability; (7) breach of implied warranty of fitness; (8) unjust enrichment; and (9) restitution.  As to the California subclass of purchasers, Plaintiffs asserted the following claims: (1) unfair competition in violation of the California Business and Professional Code § 17200 *et seq.*; (2) false advertising in violation of the California Business and Professional Code § 17500 *et seq.*; (3) violation of the California Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*; (4) breach of express warranty in violation of the California Commercial Code § 2313; (5) breach of implied warranty of merchantability in violation of California Commercial Code § 2313(1); and (6) breach of implied warranty of fitness in violation of California Commercial Code § 2315.  *See generally* FAC.  The parties sharply disagree on the viability of the above causes of action.  *See* Class Action Settlement Agreement ("the Agreement") [DE 110], § I.C.

### B.    Relevant Procedural History

Plaintiffs filed their original Complaint on April 17, 2014.  DE 1.  The FAC was subsequently filed on May 6, 2014.  DE 12.  Revlon moved to dismiss the FAC on June 6, 2014 pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, or, in the alternative, to strike portions of the FAC.  DE 18, 19.  Revlon's motion was granted in part and denied in part by Judge Seybert.  *See generally* DE 79.  In a Memorandum and Order dated May 14, 2015, Judge Seybert struck Plaintiffs' claim for injunctive relief and all claims arising from the marketing and labeling of the "DNA Advantage" powder product.  *See* DE 79 at 7-12.  In that same Order, Judge Seybert also dismissed several other causes of action and denied Plaintiffs the opportunity to replead them.  DE 79 at 34.  Judge Seybert left intact Plaintiffs' claims for false advertising under New York General Business Law § 350 and California Business and Professional Code § 17500 *et seq*., as well as their claims for intentional misrepresentation and breach of express warranty.  *See generally* DE 79.  The parties were directed to proceed with discovery in connection with the remaining claims.  *Id*. at 35.

On August 27, 2015, the parties participated in a mediation before the Honorable Peter Lichtman (Ret.).  Mem., p. 2.  Although the parties were unable to settle this case at the mediation, the mediation did prompt settlement discussions that occurred over the course of several months and resulted in the Settlement Agreement presently before the Court.  *Id*.

### C.    The Instant Joint Motion for Preliminary Approval of Class Action Settlement

On June 30, 2016, Plaintiffs and Revlon filed a Joint Motion for Preliminary Approval of Class Action Settlement.  DE 109.  The parties request that the Court enter an Order certifying a class defined as "all Persons in the United States who, during the Class Period (April 25, 2011 to the date the Motion for Preliminary Approval of the Settlement is filed) purchased one or more

Revlon Age Defying with DNA Advantage Cream Makeup, Concealer, and Powder, in any package, size, or iteration, for personal, family or household use, and not for resale."  Joint Mem. at 7, n.5;  The Agreement [DE 110], § II.H.[1]

The parties explain that the proposed settlement agreement is the product of "vigorously fought" litigation involving thorough fact and expert discovery, the exchange of lengthy analyses pertaining to the strengths and weaknesses of each party's position, and months of settlement negotiations.  *See* Joint Mem. at 1-2.  According to counsel, consideration of the following factors, among others, prompted them to make a concerted effort to resolve this matter short of trial:

> (i) the benefits to Plaintiffs and the Class under the terms of the Settlement; (ii) the uncertainty of being able to prevail at trial; (iii) the uncertainty relating to Defendant's defenses and the expense of additional motion practice in connection therewith; (iv) the attendant risks, difficulties, and delays inherent in litigation, especially in complex actions such as this; and (v) the desirability of consummating this Settlement promptly in order to provide substantive relief to Plaintiffs and the Class without unnecessary delay and expense.

*See id*. at 3.

Looking to the terms of the Agreement itself, the document provides that in exchange for a full release from liability, Revlon agrees to grant Plaintiffs and the nationwide class both injunctive and monetary relief.  The Agreement, § III.C.-D.  In regards to the proposed injunctive relief, Revlon will discontinue the DNA Advantage product line by no later than December 31,

---

[1]     In light of the procedural posture of this case and the parties' proposed class, the Court limits its consideration to those causes of action which are alleged on behalf of the proposed nationwide class, not on behalf of the California subclass.  *See generally* FAC.

2017. *Id*., § III.C.  This does not prohibit Revlon from selling off any DNA Advantage Products "remaining in Defendant's inventory or in channel following such discontinuance." *Id*.

The monetary relief provided for in the Agreement comes in the form of a refund.  *Id*., § III.C.  Revlon will deposit $900,000 into a "Qualified Settlement Fund" ("QSF") — created and maintained by the agreed upon Claims Administrator — within seven days of the Court's issuing a Preliminary Approval Order.  *Id*., § III.D.1.  The QSF is to be distributed in the following manner:

1. Class members shall receive $3 per claim (i.e., for each unit purchased), up to a total of 3 units without receipt.

2. Class members with receipts shall receive $3 per claim (no cap).

3. No less than $250,000 shall be available for payment of class member claims.

4. Absent exhaustion of the $250,000 minimum, the remaining amount up to the $250,000 "floor" will be distributed *cy pres* to a charitable entity designated by the Parties that reasonably relates to the issues in the case. The Parties propose that the *cy pres* recipient be Look Good Feel Better ("LGFB") www.lookgoodfeelbetter.org, a public service program of The Personal Care Products Foundation ("Foundation"), a charitable organization.

5. No more than $400,000 shall be paid for class member claims. In the event that claims exceed that amount, payments for claims shall be reduced pro rata.

   Class members can also opt out if they wish to pursue their own action for damages.

Joint Mem. at 4 (citing The Agreement, §§ III (D), (E)(7)).  Moreover, "[a]ll Notice and Claims Administration costs, attorneys' fees and Class Representatives Enhancement Awards shall be paid out of the QSF[,]" which, the parties explain, is a financial burden that normally falls on plaintiffs in class actions.  *Id*. (citing The Agreement §§ III(D)(1), (D)(2)(j), (E)).  In this regard,

the Class representatives request Court approval of enhancement awards of $5,000 each or as otherwise ordered by the Court.  The Agreement, § III.D.2.(i).

The parties retained Dahl Administration, LLC ("Dahl") as the Notice Administrator and Settlement Administrator.  The Agreement, § III.E.  Dahl has designed a notice plan that utilizes digital web-based media to disseminate notice to settlement class members.  The Agreement, § III.E.2.  Notice will commence no later than seven days after the date of the Preliminary Approval Order and shall continue for 30 days or as otherwise mandated in the Order.  *Id*.  Dahl will also maintain a class settlement website which will "explain the Settlement, give answers to frequently asked questions, and provide links to the Notice, the Agreement, and other Court documents."  *Id*. at § III.E.3.

The amount of fees sought by class counsel will be submitted to the Court in a separate fee application which will be published on the class settlement notice website prior to the deadline for potential class members to opt in or opt out of the instant action.  Joint Mem. at 5.  Class counsel's fees will be distributed according to the following fee arrangement:  40% to The Law Office of Jack Fitzgerald, PC, and 60% to the Law Offices of Ronald A. Marron, APLC.  *Id*.  Revlon agrees to bear its own costs and attorney's fees.  *Id*.

The parties seek settlement class certification under Rules 23(b)(2) and/or (b)(3).  *Id*. at 8 (citing The Agreement, § III(A)(1)).  Plaintiffs maintain that the proposed class satisfies the requisite elements of Rule 23(a), namely, (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  *Id*. at 8-15.  In addition, the parties maintain that the proposed class meets the requirements of Rule 23(b)(2) for settlement purposes since Revlon has acted on "grounds that apply generally to the class, so that final injunctive relief … is appropriate respecting the class as a whole."  *Id*. at 12 (citing *Zinser v. Accufix Research Inst*., 253 F.3d

1180, 1195 (9th Cir. 2001).  Injunctive relief is appropriate when a defendant's conduct is unlawful "as to all of the class members" and applies "when a single injunction … would provide relief to each member of the class."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360, 131 S. Ct. 2541, 2557, 180 L.E.2d 374 (2011).  Counsel also assert that certification is proper under Rule 23(b)(3) for settlement purposes only at this juncture because the actual interests of the parties can best be served by settling their differences in a single action.  Joint Mem. at 14 (citing 7A C.A. Wright, A.R. Miller & M. Kane, Federal Practice & Procedure § 1777 (2d ed. 1986)).

Plaintiffs further request that the Court grant preliminary approval of the proposed settlement agreement on the grounds that it is "the product of serious, informed, non-collusive negotiations," *id*. at 16 (quoting *Nieves v. Community Choice Health Plan of Westchester, Inc.*, No. 08 CV 321, 2012 WL 857891, at *4 (S.D.N.Y. 2012)) (internal quotation marks omitted), that it lacks any obvious deficiencies such as "unduly preferential treatment of class representatives or segments of the class" *id*. at 17 (citing Manual for Complex Litigation, Fourth § 21.632, at 321) (Fed. Judicial Center 2004)), and that it satisfies the well-known evaluative factors set forth by the Second Circuit in *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc*., 209 F.3d 43 (2d Cir. 2000);  *id*. at 17.

## III.   DISCUSSION

### A.   Class Action Settlements

Pursuant to Fed. R. Civ. P. 23(e) "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  If the parties arrive at an agreement before the class is certified, then the "plaintiffs typically seek certification

for the limited purpose of giving effect to the settlement reached." *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 88 (D. Conn. 2010) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618 (1997)).  Before a class can be certified, the party seeking certification must demonstrate, through the presentation of "affidavits, documents, or testimony," that the requirements of Rule 23(a) and (b) have been met.  *Menkes*, 270 F.R.D. at 89 (citing *In re Initial Public Offerings Securities Lit.*, 471 F.3d 24, 41 (2d Cir. 2006)).  This analysis does not change in the context of settlement only certification.  *See Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 78 (E.D.N.Y. 2007) (quoting *In re Medical X–Ray Film Antitrust Litig.*, No. 93-5904, 1997 WL 33320580, at *2 (E.D.N.Y. December 26, 1997).  "Notwithstanding the parties' willingness to stipulate to the factual requisites necessary for the certification of the class for settlement purposes, '[t]he party seeking certification has the burden of demonstrating that all of the class certification criteria are met. . . .'"  *Karvaly*, 245 F.R.D. at 78; *see Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (citing *Amchem Prods.*, 521 U.S. at 614; *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202-03 (2d Cir. 2008)) ("The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met.").  Determining whether the party seeking certification has satisfied its burden "demand[s] undiluted, even heightened, attention in the settlement context. . . [as] a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  *Amchem Prods., Inc.*, 521 U.S. at 620 (citing Fed. R. Civ. P. 23(c), (d)).

Class certification under Rule 23 requires a two-step analysis.  First, "the court must be persuaded, 'after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *In re Vivendi Universal, S.A. Secs. Litig.*, 242 F.R.D. 76, 82 (S.D.N.Y. 2007) (quoting *Gen. Tel.*

*Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)), reconsideration granted in part, 242 F.R.D 76 (S.D.N.Y. 2007), *aff'd*, 2009 WL 855799 (2d Cir. 2016); *see Perez v. Allstate Ins. Co.*, No. 11-1812, 2014 WL 4635745, at *13 (E.D.N.Y. Sept. 16, 2014).  The prerequisites of Rule 23(a) are as follows:

> (1)  the class is so numerous that joinder of all members is impracticable;
>
> (2)  there are questions of law or fact common to the class;
>
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see, e.g.*, *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010); *Teamsters Local 445 Freight Div. Pension, Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).

"Once a court has concluded that Rule 23(a)'s four requirements have been satisfied, it must then proceed to the second step, *i.e.*, determine 'whether the class is maintainable pursuant to one of the subsections of Rule 23(b).'"  *Perez*, 2014 WL 4635745, at *13 (quoting *Vivendi*, 242 F.R.D. at 83); *see Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (noting that, in addition to satisfying Rule 23(a)'s requirements, a party "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)"); *see also Bourlas v. Davis Law Associates*, 237 F.R.D. 345, 350 (E.D.N.Y. 2006) ("In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3).") (quoting *Amchem*, 521 U.S. at 614) (internal quotation marks omitted).

"Generally speaking, Rule 23(b) addresses the types of relief available, as well as the rights of absent class members." *Perez*, 2014 WL 4635745, at *13 (citing Fed. R. Civ. P. 23(b)). Here, Plaintiffs seek certification under Rule 23(b)(2) and/or (b)(3).  *See* Joint Mem. at 8.  In this regard, Rule 23(b)(2) and (3) provide as follows:

> A class action may be maintained if Rule 23(a) is satisfied and if:
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>
>> (D) the likely difficulties in managing a class action.

When considering whether Rule 23's requirements have been met, the United States Supreme Court has instructed courts that it "may be necessary for [them] to probe behind the pleadings before coming to rest on the certification question." *Wal–Mart Stores, Inc.*, 564 U.S. at 350 (quoting *Falcon*, 457 U.S. at 160–61) (internal quotation marks omitted).  Such analysis often will "overlap with the merits of the plaintiff's underlying claim," as questions concerning class certification may be "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id*. at 351 (quoting *Falcon*, 457 U.S. at 160) (internal quotation marks omitted).

However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013). That is, "[m]erits questions may be considered to the extent—but only to the extent— that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195. Ultimately, "[t]he dispositive question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Spread Enters., Inc. v. First Data Merchant Servs. Corp.*, 298 F.R.D. 54, 66 (E.D.N.Y. 2014) (quoting *Kowalski v. YellowPages.com, LLC*, No. 10-7318, 2012 WL 1097350, at *12 (S.D.N.Y. Mar. 31, 2012)) (internal quotation marks omitted), *appeal docketed*, 14-887 (2d Cir. March 26, 2014).

Although the Court's analysis in the class certification context must be "rigorous," courts in the Second Circuit employ a "liberal rather than restrictive construction of Rule 23, adopt[ing] a standard of flexibility in deciding whether to grant certification." *Bourlas*, 237 F.R.D., at 350 (quoting *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006)) (internal quotation marks omitted); *see Pecere v. Empire Blue Cross and Blue Shield*, 194 F.R.D. 66, 69 (E.D.N.Y. 2000) ("[T]he law in the Second Circuit favors the liberal construction of Rule 23 and courts may exercise broad discretion when they determine whether to certify a class."). Indeed, "[c]ourts in this Circuit have displayed 'a preference for granting rather than denying class certification.'" *Morris v. Alle Processing Corp.*, No. 08-4874, 2013 WL 1880919, at *5 (E.D.N.Y. 2013) (quoting *Gortat v. Capala Bros.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009)); *see Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (quoting *Sharif ex rel. Salahuddin v. New York State Educ. Dep't.*, 127 F.R.D. 84, 87 (S.D.N.Y.1989)) ("Rule 23 is given liberal rather

than restrictive construction, and courts are to adopt a standard of flexibility[.]") (internal quotation marks omitted).

Once a proposed class is certified, a court will turn to the merits of the settlement agreement to determine whether approval is appropriate. Courts favor approval of class action settlements. *In re Luxottica Group S.p.A. Secs. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (citing *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y.1995)) ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'"); *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). However, courts must not substitute "rubber stamp" approval for independent judgment. *Bourlas*, 237 F.R.D. at 355 (citing *Grinnell Corp.*, 495 F.2d at 462). Pursuant to Fed. R. Civ. P. 23(e)(2), courts must thoughtfully inquire into the "fair[ness], reasonable[ness], and adequa[cy]" of the agreement. In doing so, courts embark on a two-part inquiry. *See Passafiume v. NRA Group, LLC*, 274 F.R.D. 424, 430 (E.D.N.Y. 2010) (citing *In re Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)); *see also Hernandez v. Merrill Lynch & Co., Inc.*, No 11-8472, 2012 WL 5862749, at *1 (S.D.N.Y. 2012). First, a court must consider whether preliminary approval of the agreement is appropriate. *Bourlas*, 237 F.R.D. at 355 (citing Fed. R. Civ. P. 23(e)(1)(B)-(C)). Once a court grants preliminary approval of a proposed settlement agreement, the second step of the two-part inquiry commences — determining the adequacy of the proposed manner in which notice of the certification, the proposed settlement terms, and the date of the final fairness hearing will be disseminated to class members. *See id.* at 355 (citing *In re Initial Public Offering Secs. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005)). The notice must also inform the class members of their

options in terms of objecting to and withdrawing from the settlement.  *Passafiume*, 274 F.R.D. at 431 (quoting *Reade–Alvarez*, 237 F.R.D. at 34); *see Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).  Once a proposed settlement agreement passes the preliminary approval stage, the final fairness hearing takes place, at which time the Court will have the opportunity to closely examine the intricacies of the settlement terms and to assess their fairness.  *See In re Traffic Executive Association-Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980) (citing Manual For Complex Litigation s 1.46 at 55 n.10 (1977)) (Preliminary approval "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.").

## B.    Rule 23(a) Prerequisites

### 1.    Numerosity

Rule 23(a)(1) permits a class action only when the "class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Impracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) (citing *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913-14 (9th Cir. 1964);  *Advertising Specialty Nat'l Ass'n v. FTC*, 238 F.2d 108, 119 (1st Cir. 1956);  *Goldstein v. North Jersey Trust Co*., 39 F.R.D. 363, 367 (S.D.N.Y.1966);  7A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1762, at 159 (1986);  3B Moore's Federal Practice ¶ 23.05[3], at 23-156 (2d ed. 1992));  rather, "Rule 23(a)(1) only requires that, in the absence of a class action, joinder would be 'simply difficult or inconvenient.'"  *Spread Enters.*, 298 F.R.D. at 67 (quoting *Russo v. CVS Pharm., Inc.*, 201 F.R.D. 291, 294 (D. Conn. 2001)) (citing *Robidoux*, 987 F.2d at 935); *see Casale v. Kelly*, 257 F.R.D. 396, 405 (S.D.N.Y. 2009) (citing *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC*, 504 F.3d 229, 244–45 (2d Cir.

2007); *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964))

("Impracticable does not mean impossible; joinder may merely be difficult or inconvenient,

rendering use of a class action the most efficient method to resolve plaintiffs' claims.").

The Second Circuit has held that "numerosity is presumed at a level of 40 members."

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see, e.g.*, *Perez*, 2014

WL 4635745, at *14; *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100, 104

(E.D.N.Y. 2011) (citing *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 203 (S.D.N.Y. 2006));

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008); *Guzman v. VLM, Inc.*,

No. 7-1126, 2008 WL 597186, *5 (E.D.N.Y. Mar. 2, 2008)).  Although a "precise quantification

of [the] class[] is not required," the plaintiffs must provide the Court with a "reasonabl[e]

estimate [of]" the potential number of plaintiffs.  *Bourlas*, 237 F.R.D., at 351 (citing *Edge v. C.

Tech Collections, Inc.*, 203 F.R.D. 85, 89 (E.D.N.Y. 2001)); *Spread Enters.*, 298 F.R.D. at 67

(quoting *Russo*, 201 F.R.D. at 295).  In this regard, courts "are empowered to make common

sense assumptions to support a finding of numerosity.'"  *Morris*, 2013 WL 1880919, at *7

(quoting *Nicholson v. Williams*, 205 F.R.D. 92, 98 (E.D.N.Y. 2001)) (internal quotation marks

omitted) (citing *Hamelin v. Faxton–St. Luke's Healthcare*, 274 F.R.D. 385, 394 (N.D.N.Y.

2011)) ("[P]laintiffs may rely on reasonable inferences drawn from the available facts to estimate

the size of the class.")); *Pecere*, 194 F.R.D. at 70 (quoting *LeGrand v. New York City Transit

Auth.*, No. 95-0333, 1999 WL 342286, *3 (E.D.N.Y. May 26, 1999)) (internal quotation marks

omitted) (citing *Deflumer v. Overton*, 176 F.R.D. 55, 58 (N.D.N.Y.1997)); *German v. Federal

Home Loan Mortgage Corp.*, 885 F. Supp. 537, 552 (S.D.N.Y.1995)).

Here, Plaintiffs seek certification of a class of nationwide purchasers of Revlon Age

Defying with DNA Advantage Cream Makeup, Concealer, and Powder.  Plaintiffs assert that the

proposed Class potentially consists of "tens of thousands of claimants, which can reasonably be inferred from Defendant's sales volume." Joint Mem., p. 9. In support of this proposition, Plaintiffs filed a Declaration by Attorney Sean Riley, counsel for Revlon. According to Mr. Riley, the Products were sold in retail stores and drugstores across the United States. *See* Declaration of Sean Riley, Esq. ("Riley Decl."), annexed as Ex. 11 to Notice of Joint Motion and Joint Motion For Preliminary Approval of Class Action Settlement [DE 109], ¶ 5. Mr. Riley further asserted that "[t]he sales volume of the Products indicates that there are, at a minimum, tens of thousands of class members and potential claimants." *Id.* Although Plaintiffs have not provided any quantitative evidence of the large sales volume ascribed to Defendant, the Court finds that it can reasonably infer that the proposed class is sufficiently numerous given the general ubiquity of Revlon products in retail stores and drugstores.

### 2. *Commonality*

The commonality requirement under Rule 23(a)(2) is met when there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has held that "[a]ny competently crafted class complaint literally raises common 'questions.'" *Dukes*, 564 U.S. at 349 (internal quotation marks omitted). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" *Id.* at 350 (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009) (internal quotation marks omitted). "That said, a single common issue of law or fact suffices to satisfy Rule 23(a)(2)." *Perez*, 2014 WL 4635745, at *15 (citing *Dukes*, 131 S. Ct. at 2556); *see Garcia*, 281 F.R.D. at 105 (quoting *Damassia*, 250 F.R.D.

at 156) ("[C]ourts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members."). "'Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.'" *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137-38 (2d Cir. 2015) (quoting *Suchanek v. Sturm Foods*, Inc., 764 F.3d 750, 756 (7th Cir. 2014)).

"Commonality does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment." *Garcia*, 281 F.R.D. at 105 (quoting *Damassia*, 250 F.R.D. at 156) (internal quotation marks omitted); *see Johnson*, 780 F.3d at 137 (citing Joseph M. McLaughlin, McLaughlin on Class Actions § 4:7 (11th ed. 2014)) ("The claims for relief need not be identical for them to be common; rather, Rule 23(a)(2) simply requires that there be issues whose resolution will affect all or a significant number of the putative class members."); *see also Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 415 (S.D.N.Y. 2013) (quoting *White v. Western Beef Properties*, No. 07-2345, 2011 WL 6140512, at *3 (E.D.N.Y. Dec. 9, 2011)) ("[C]ommonality does not require plaintiffs to show that class members perform identical duties—an 'impossible task.'"), on reconsideration in part, 293 F.R.D. 578 (S.D.N.Y. 2013), *aff'd*, No. 13-3873, 2015 WL 525697 (2d Cir. Feb. 10, 2015). "'A court may find a common issue of law even though there exists 'some factual variation among class members' specific grievances . . . .'" *Perez*, 2014 WL 4635745, at *15 (quoting *Han v. Sterling Nat'l Mortg. Co.*, No. 09-5589, 2011 WL 4344235, at *3 (E.D.N.Y. Sept. 14, 2011) (internal quotation marks omitted). "'The commonality requirement may [thus] be met when individual circumstances of class members differ, but their injuries derive from a unitary course of conduct.'" *Perez*, 2014 WL 4635745, at *15 (quoting *Han*, 2011 WL 4344235, at *3); *see Guzman*, 2008 WL 597186, at *6.

Counsel for the parties maintain that the commonality requirement is met "[i]n the context of claims for false or deceptive advertising, [as] there is essentially a single misrepresentation (that the Products are effective for their advertised purposes) and a single injury (loss of money for a product that did not work as represented)."  Joint Mem. at 9 (citing *Delarosa v. Boiron, Inc*., 275 F.R.D. 582, 589 (C.D. Ca. 2011)).  Plaintiffs' counsel asserts that here the proposed class members were exposed to uniform advertisements containing misrepresentations as to the efficacy of Revlon's DNA Advantage line of cosmetics.  *Id*. at 10.  In his Declaration in support of the motion to approve the class action settlement, Revlon's counsel, Sean Riley, states that "[d]uring this class period, Revlon's labeling, packaging, and website for its Products were uniform throughout the United States and did not differentiate for any specific market, region, or location."  Riley Decl., ¶ 6.  According to counsel, the injuries arising from those uniform advertisements are also common.  Joint Mem. at 9.  More specifically, counsel maintains that the proposed class members share the following common questions, among others:

> (a) whether Revlon advertised or marketed the Products in a way that was false or misleading, (b) whether Revlon concealed material facts from class members, (c) whether, as a result of Revlon's misrepresentations, Plaintiffs and other members of the class suffered an ascertainable loss by purchasing the Products, and (d) whether Plaintiffs and the class are entitled to recover damages or other equitable relief as a result of Revlon's alleged unlawful conduct.

*Id*. at 9-10.

The Court finds that the commonality requirement has been satisfied.  As noted, the parties agree that the advertisements at issue were uniform across the United States.  The conduct ascribed to Revlon, therefore, constitutes a "unitary course of conduct by a single system."  *See Ebin v. Kangadis Food Inc*., 297 F.R.D. 561, 565 (S.D.N.Y. 2014) (quoting *Marisol A*., 126 F.3d

at 377) ("'The commonality requirement may be met where the individual circumstances of class members differ but their 'injuries derive from a unit[ar]y course of conduct by a single system.'").  As such, any member of the proposed class would have the same central claim:  that the advertisements were misleading or deceptive.  *See Ackerman v. Coca-Cola Co.*, No. 09-395, 2013 WL 7044866, at \*10 (E.D.N.Y. July 18, 2013) (citing *Seekamp v. It's Huge, Inc.*, No. 09-0018, 2012 WL 860364, at \*3 (N.D.N.Y.  Mar. 13, 2012)).  Resolution of this claim would require the Court to consider "common questions" of law and/or fact such as those proposed by Plaintiff's counsel.

In order for the commonality requirement to be satisfied, not only must there exist common questions of law or fact, but those common questions must have the capacity to "generate common answers."  *See In re Scotts EZ Seed Litigation*, 304 F.R.D. 397, 405 (S.D.N.Y. 2015) (quoting *Wal–Mart Stores, Inc.*, 564 U.S. at 349) (internal quotation marks omitted).  Here, because the advertisements are uniform, the question of whether they are false or misleading will generate common answers across the proposed class.  Moreover, the "ascertainable loss" referenced in common question (c) above, can be measured uniformly across the class, for example, by using the premium paid for the product.  *See Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 62 (E.D.N.Y. 2015) (citing *Ebin*, 2013 WL 6504547, at \*5);  *see also Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015)).  In light of the above analysis, the Court finds that the commonality requirement has been met.

### 3.    *Typicality*

The commonality and typicality requirements "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of

19

the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 157 n.13 (1982). "As a result, the commonality and typicality requirements tend to merge into one another, and similar considerations 'animate' the analysis of both Rule 23(a)(2) and Rule 23(a)(3)." *Morris*, 2013 WL 1880919, at *8 (quoting *Marisol A*., 126 F.3d at 376); *see Falcon*, 457 U.S. at 157 n.13.

The typicality component under Rule 23(a)(3) requires that the claims or defenses of the class representatives be typical of those of the class. Fed. R. Civ. P. 23(a)(3). Courts in this Circuit have observed that, in light of the Supreme Court's decision in *Dukes*, "the analysis of commonality and typicality has recently become stricter." *Morris*, 2013 WL 1880919, at *9 (citing *Dukes*, 564 U.S. at 350-51; *Flores v. Anjost Corp*., 284 F.R.D. 112, 125 (S.D.N.Y.2012)) (noting that "the Supreme Court explained that in order for claims to be 'productively litigated at once' they must depend on a 'common contention . . . of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"). Nonetheless, the typicality requirement "'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove defendant's liability.'" *Morris*, 2013 WL 1880919, at *8 (quoting *Marisol A*., 126 F.3d at 376) (citing *Garcia*, 281 F.R.D. at 106); *Butto v. Collecto Inc.*, 290 F.R.D. 372, 393 (E.D.N.Y 2013) (quoting *Assif v. Titleserv, Inc.*, 288 F.R.D. 18, 24 (E.D.N.Y.2012)) ("With regard to typicality, Rule 23(a)(3) requires that each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.") (internal quotation marks omitted). "[M]inor variations in the fact patterns underlying individual claims does not

defeat typicality." *Perez*, 2014 WL 4635745, at *17 (quoting *Robidoux*, 987 F.2d at 937)

(internal quotation marks omitted).

In the instant case, the Court finds that Plaintiffs' claims are typical of those of the

proposed class members in that they arise from uniform advertisements of identical products.

Plaintiffs and the proposed class would therefore present similar legal arguments in prosecuting

their cases. *See Bourlas*, 237 F.R.D. at 351-52. Such legal arguments would include, for

example, an assertion that Revlon's use of the term "DNA Advantage" is deceptive or

misleading in light of the true nature of the Products' ingredients. These similarities safeguard

the interests of class members who will not appear before the Court to advocate on their own

behalf. *See id.* at 352 (quoting *In re Risk Mgmt. Alternatives, Inc., Fair Debt Collection*

*Practices Act Litig.*, 208 F.R.D. 493, 505 (S.D.N.Y. 2002)). Accordingly, the typicality

requirement has been satisfied.

### 4.    Adequacy of Representation

Finally, Rule 23(a)(4) permits class certification only if "the representative parties will

fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To ensure that

all members of the class are adequately represented, district courts must make sure that the

members of the class possess the same interests, and that no fundamental conflicts exist among

the members." *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013) (citing *In re Literary Works*

*in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011); *Denney v. Deutsche Bank*

*AG*, 443 F.3d 253, 268 (2d Cir. 2006)); *see, e.g.*, *Morris,* 2013 WL 1880919, at *11  (quoting

*Garcia*, 281 F.R.D. at 107) (to satisfy Rule 23(a)(4), "'plaintiffs must show that . . . the class

representatives' interests are not 'antagonistic to the interest of other members of the class'"). In

order to meet the adequacy requirement, the party seeking class certification must establish two

elements:  (1) the proposed class counsel is "qualified, experienced, and generally able to conduct the litigation," and (2) the representative plaintiffs' interests are not antagonistic to those of the proposed class.  *Bourlas*, 237 F.R.D., at 352 (quoting *Reade-Alvarez*, 237 F.R.D. at 32); *see Ebin*, 297 F.R.D. at 566;  *see also Ackerman*, 2013 WL 7044866, at *11.

The Court finds that the parties have satisfied the adequacy requirement.  As to the qualifications and experience of class counsel, the parties submitted declarations in which counsel for Plaintiffs attest to their qualifications, experience with similar class actions, and understanding of the instant case.  *See generally* Declaration of Ronald A. Marron, Esq. ("Marron Decl."), annexed as Ex. 2 to Notice of Joint Motion and Joint Motion For Preliminary Approval of Class Action Settlement [DE 109].  *See generally* Declaration of Jack Fitzgerald, Esq. ("Fitzgerald Decl."), annexed as Ex. 5 to Notice of Joint Motion and Joint Motion For Preliminary Approval of Class Action Settlement [DE 109].  Mr. Marron stated that he was admitted to the State Bar of California in 1995 and has been a member in good standing ever since.  Marron Decl., ¶ 4.  His practice, which he founded in 1996, is largely devoted to "the area of false and misleading labeling of food, dietary supplements, cosmetics, and over-the-counter ("OTC") drug products."  *Id*., ¶¶ 4-5.  Mr. Marron has provided an extensive list of consumer cases in which he acted or is acting as class counsel.  *See generally* Marron Decl.  A number of those cases appear to have involved protracted, complex litigation resulting in multimillion dollar judgments in his clients' favor.  *Id*.  Moreover, it appears that Mr. Marron has devoted significant time and resources analyzing the strengths and weaknesses of the claims and defenses in the instant case.  *See id*., ¶¶ 25-35.  For example, Mr. Marron attested that he reviewed over 100,000 pages of documentary evidence produced by Revlon pertaining to the "products' sales, advertising, labeling, company finances and organization, and articles Revlon claimed supported

22

the efficacy of the products." *Id.*, ¶ 25. Likewise, he has engaged in a lengthy exchange of legal analyses with Revlon's counsel regarding the applicable labeling laws. *Id.*, ¶ 26. Moreover, the depositions of percipient witnesses were taken, third party subpoenas were served and expert reports were exchanged. *Id.*, ¶ 28. Mr. Marron asserts that the settlement agreement before the Court is the product of six months of negotiations that began with an in-person mediation before the Honorable Peter Lichtman (Ret.). *Id.*, ¶ 29-30.

According to Mr. Marron, his firm teamed up with the Law Office of Jack Fitzgerald "to ensure adequate representation." *Id.*, ¶ 32. Mr. Fitzgerald stated that his firm devotes much of its practice to consumer protection class actions. Fitzgerald Decl., ¶ 3. In this regard, counsel provided outlines for numerous consumer cases in which his firm was appointed class counsel and was successful. *See generally id*. According to Mr. Fitzgerald, he has helped consumers recover millions of dollars. *See generally id.*, Ex. A. Mr. Fitzgerald is a member of two state Bars and is admitted to practice in seven federal districts as well as the Ninth Circuit. *Id.*, ¶ 1.

The Court finds that counsels' "established record of competent and successful prosecution of large [] class actions" provides ample proof that counsel are "qualified, experienced, and generally able to conduct the litigation." *See Reyes v. Buddha-Bar NYC*, No. 08-2494, 2009 WL 5841177, at *3 (S.D.N.Y. 2009) (citing *Mohney v. Shelly's Prime Steak*, No. 06-4270, 2009 U.S. Dist. LEXIS 27899, at *11-12 (S.D.N.Y. Mar. 31, 2009)). The first element of the adequacy requirement is therefore satisfied. *See id.*

Further, the Court has not been presented with any evidence that the interests of the Plaintiffs are antagonistic to those of the proposed class. In fact, the Court finds that the interests of the Plaintiffs and those of the class are largely aligned. "Therefore, little, if any, risk exists that the plaintiff would not vigorously pursue the prosecution of the class action in the absence of

the proposed class members." *Bourlas*, 237 F.R.D., at 352.  Accordingly, the adequacy

requirement of Rule 23(a)(4) has been satisfied.

### 5.    *Implied Requirement of Ascertainability*

"The Court of Appeals for the 'Second Circuit has recognized a fifth pre-condition to

class certification: the implied requirement of ascertainability.'"  *Belfiore*, 311 F.R.D. at 65

(quoting *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 407) (citing *Brecher v. Rep. of Argentina*, 806

F.3d 22 (2d Cir. 2015).  "A class is ascertainable when defined by objective criteria that are

administratively feasible and when identifying its members would not require a mini-hearing on

the merits of each case."  *Brecher*, 806 F.3d 22, 24-25 (quoting *Charron v. Pinnacle Grp. N.Y.*

*LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010)) (internal quotation marks omitted).  The Court notes

that the standard for ascertainability is not a rigorous one.  *In re Scotts EZ Seed Litig.*, 304 F.R.D.

at 407 (quoting *Ebin*, 297 F.R.D. at 567); *Gortat v. Capala Bros., Inc.*, No. 07-3629, 2010 WL

1423018, at *2 (E.D.N.Y. Apr. 9, 2010), *aff'd*, 568 Fed. Appx. 78 (2d. Cir. 2014).  "In fact,

'[c]lass members need not be ascertained prior to certification, but the exact membership of the

class must be ascertainable at some point in the case.'"  *Belfiore*, 311 F.R.D. at 66 (quoting *In re*

*Methyl Tertiary Butyl Ether Prod. Liability Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002)).

Although the parties fail to specifically address ascertainability in their joint motion, *see*

*generally*, Joint Mem., the Court finds that based on its independent review of the undisputed

facts, the requirement has been satisfied.  The proposed class is comprised of individuals who

purchased foundation, powder or concealer belonging to the "Revlon Age Defying with DNA

Advantage" line of cosmetics.  Given the nature of this action, it is apparent that members of the

class could be ascertained by producing a receipt of purchase.  It is likely, however, that many if

not most of the potential class members discarded their receipts.  Courts within the Second

Circuit have adopted opposing views on whether a proposed class can satisfy the ascertainability requirement under these circumstances.  *See generally Belfiore*, 311 F.R.D. at 65-66 (comparing courts' varying views).  According to some courts, "self-identification" might adequately replace "proof of purchase" when the allegedly deceptive and misleading statements were uniform.  *See id*. at 66 (citing *Ebin*, 297 F.R.D. at 567; *Ault v. J.M. Smucker Co.*, 310 F.R.D. 59, 65-66 (S.D.N.Y. 2015); *Weiner v. Snapple Beverage Corp.*, No. 07-8742, 2010 WL 3119452, at *13 (S.D.N.Y. Aug. 5, 2010) (denying certification where only certain of the products contained the misleading labels)).  Here, Revlon's counsel has asserted that the advertisements at issue were in fact uniform throughout the United States, regardless of which third party retailer sold the Products.  *See* Riley Decl., ¶ 6.  Given the uniformity of the advertisements at issue, the Court finds that potential members of the instant class can be ascertained by application of an "objective criteria," namely, whether the individual purchased the Products on or after April 25, 2011.  Self-identification constitutes an adequate substitute for "proof of purchase" under these circumstances.  *See Ackerman*, 2013 WL 7044866, at *16 ("While it may be difficult to locate those individuals, since most will not have kept receipts or other documentation of their purchases, the criteria used to define the class are objective.") (citing *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Ca. 2012)).  Therefore, the Court finds that the ascertainability requirement has been met.  Taking into account all of the factors analyzed here, the Court has determined that the requirements of Rule 23 (a) have been satisfied.

### C.    Rule 23(b)(2) Prerequisite

Since the requirements of Rule 23(a) are satisfied, the Court must now determine whether the class is maintainable under one of the subsections of Rule 23(b).  *Perez*, 2014 WL 4635745, at *13 (quoting *Vivendi*, 242 F.R.D. at 83) (citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426,

1432 (2013)).  Here, Plaintiffs assert that the instant action is maintainable under Rule 23 (b)(2)

or (b)(3).  The Court will explore each subsection in turn below.

Rule 23(b)(2) "allows class treatment when the party opposing the class has acted or

refused to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole."  *Dukes*, 564 U.S.

at 360 (internal quotation marks omitted).  As a preliminary matter, the Court finds that Plaintiffs

have standing to seek injunctive relief.[2]  Some courts in this Circuit have held that plaintiffs in

false advertising cases lack standing because they are not at risk for purchasing additional units

of a product.  In one instance, the court found that since the Plaintiffs' purchase of the product

led them to the conclusion that the product was ineffective, the plaintiffs were not likely to

purchase the product again.  *See Tomasino v. Estee Lauder Companies Inc*., 44 F. Supp. 3d 251,

255-56 (E.D.N.Y. 2014) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38

L.Ed.2d 674 (1974) (finding plaintiff lacks standing to seek injunctive relief in case involving

New York General Business Law § 349 because plaintiff is unlikely to purchase product again).

However, courts within the Second Circuit have also held "that plaintiffs have standing to seek

injunctive relief based on the allegation that a product's labeling or marketing is misleading to a

reasonable consumer, because to hold otherwise would effectively bar any consumer who avoids

the offending product from seeking injunctive relief."  *Belfiore*, 94 F. Supp. 3d at 445 (quoting

*Ackerman*, 2013 WL 7044866, at *2-3, *14–15, *15 n.23) (collecting cases) ("Given plaintiff's

dissatisfaction with Freshmates, it is unlikely he will re-purchase the product again.  No

---

[2]     The Court recognizes that Judge Seybert dismissed the Plaintiffs' claims for injunctive relief on the grounds that Plaintiffs lacked standing.  For purposes of this Order, and in light of the fact that the parties seek certification for settlement purposes only, the Court will assume that Plaintiffs do have standing to pursue injunctive relief.

information to the contrary has been provided.  Based on the law as interpreted, he has

standing."); *see Delgado v. Ocwen Loan Servicing, LLC*, No. 13 Civ. 4427, 2014 WL 4773991

(E.D.N.Y. Sept. 24, 2014) (quoting *Larsen v. Trader Joe's Co*., No. 11-05188, 2012 WL

5458396, at *4 (N.D. Cal. June 14, 2012)) (To make a determination that Plaintiffs "have no

federal standing to enjoin a deceptive practice once they become aware of the scheme would

'eviscerate the intent of the California legislature in creating consumer protection statutes.'").

The Court finds particularly persuasive the reasoning set forth by Judge Weinstein in

*Belfiore*.  In determining that the Plaintiffs had standing to pursue injunctive relief, Judge

Weinstein held, in relevant part, that:

> To hold [that plaintiff lacks Article III standing] would denigrate the
> New York consumer protection statute, designed as a major support of
> consumers who claim to have been cheated. The only way a consumer
> could enjoin deceptive conduct would be if he were made aware of the
> situation by suffering injury. But once the consumer learned of the
> deception, he would voluntarily abstain from buying and therefore
> could no longer seek an injunction.

*Belfiore*, 311 F.R.D. at 67.  Based on the foregoing factors, the Court finds that Plaintiffs have

standing to pursue injunctive relief.  The Court must now determine whether certification under

Rule 23(b)(2) is appropriate.

"To certify a class under Rule 23(b)(2), plaintiffs must show that defendants 'acted or

refused to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole.'"  *Davis v. City of

New York*, 296 F.R.D. 158, 165 (S.D.N.Y. 2013).  In discussing Rule 23(b)(2), the Supreme

Court in *Dukes* explained that:

> When a class seeks an indivisible injunction benefitting all its
> members at once, there is no reason to undertake a case-specific
> inquiry into whether class issues predominate or whether class
> action is a superior method of adjudicating the dispute.
> Predominance and superiority are self-evident.

*Dukes*, 564 U.S. 338 at 362-63.  Claims for individualized monetary damages may require

individualized hearings, and therefore preclude class certification under Rule 23(b)(2).  *See*

*Parker v. Time Warner Entm't Co.*, L.P., 331 F.3d 13, 23 (2d Cir. 2003) (Newman, Jon. O.,

concurring).  If, however, monetary damages are "incidental" to the requested declaratory or

injunctive relief, then those damages may not prevent certification under Rule 23(b)(2).  *See*

*Dukes*, 564 U.S. 338 at 360; *see Belfiore*, 311 F.R.D. at 68 (quoting *Ault*, 310 F.R.D. at 68, 2015

WL 4692454, at *8) (citing *Nationwide Life Ins. Co. v. Haddock*, 460 Fed. Appx. 26, 29 (2d Cir.

2012) ("'Individualized monetary claims are inappropriate in a class certified under Rule

23(b)(2); therefore, claims for monetary relief may not be certified under Rule 23(b)(2), at least

where ... the monetary relief is not incidental to the injunctive or declaratory relief.'"); *see also*

*U.S. v. City of New York*, 276 F.R.D. 22, 32-33 (E.D.N.Y. 2011) (citing *Dukes* 131 S. Ct. at

2557-58) (certification of a class seeking monetary damages is not appropriate under Rule

23(b)(2), "at least where those claims are more than wholly incidental to the injunctive relief

sought by the class.").

     Here, Plaintiffs' claims arise from Revlon's alleged false advertising of the efficacy of its

DNA Advantage Line.  It is undisputed that the advertisements giving rise to this action were

uniform across the United States.  It is therefore apparent that Revlon acted in a manner which

applies to the proposed class generally.  To remedy this alleged wrong, Revlon has agreed to

discontinue the DNA Advantage Line. The Agreement, § III.C.  Such relief provides a single

solution and will protect the rights of all consumers.  *See City of New York*, 276 F.R.D. at 29.

     Classes certified under Rule 23(b)(2) must be cohesive.  *Laumann v. Nat'l Hockey*

*League*, 105 F. Supp. 3d 384, 395 (S.D.N.Y. May 14, 2015) (citing Newberg on Class Actions

§ 4:34;  *Barnes v. American Tobacco Co.*, 161 F.3d 127, 143 (3d Cir.1998));  *Belfiore*, 311

F.R.D. at 68 (citing *Laumann*, 105 F. Supp. 3d at 395); *In re Rezulin Prod. Liab. Litig*., 210

F.R.D. 61, 75 (S.D.N.Y. 2002) ("In short, although there is no predominance or superiority

requirement under Rule 23(b)(2), classes certified pursuant to it must be cohesive.").  Here, the

Court's analysis regarding commonality adequately demonstrates that the cohesion requirement

has been satisfied.

Moreover, the Court finds that the monetary relief sought by Plaintiffs is incidental to the

requested injunctive relief.  In addition to discontinuing the DNA Advantage Line, Revlon has

agreed to deposit $900,000 in a QSF.  *See* The Agreement, § III.D.  The parties have proposed

the following refund payment plan:  "Class members shall receive $3 per claim (i.e., for each

unit purchased), up to a total of 3 units without receipt," and "Class members with receipts shall

receive $3 per claim (no cap)."  Joint Mem. at 4 (citing The Agreement at § III.D., E.(7)).  The

amount available for these payments to class members, including, at a minimum, tens of

thousands of purchasers, Joint Mem. at 9, must be no less than $250,000 but no more than

$400,000.  *Id*. § III.D.2.(d)-(e).  The proposed plan advocates for payment of a uniform amount

per unit to each class member.  The maximum number of payments that each member receives is

determined through application of an objective criteria, namely, whether that individual retained

a receipt of his or her purchase.  Given the modest size of the payments contemplated here, as

well as the uniformity with which those payments will be made across the class, the Court finds

that the monetary damages incidental to the injunctive relief sought will not require complex

individualized mini-hearings that might preclude certification under Rule 23(b)(2).  *Compare*

*Dukes*, 544 U.S. at 366-67 (2011) (denying certification of plaintiffs' claims for backpay under

Rule 23(b)(2) on the grounds that "Wal–Mart is entitled to individualized determinations of each

employee's eligibility for backpay.").

Accordingly, the Court respectfully recommends to Judge Seybert that Plaintiff's motion to certify the class under Rule 23(b)(2) be GRANTED.

### D.     Rule 23(b)(3) Prerequisites

Plaintiffs also contend that the class should be certified under Rule 23(b)(3).  In order for a court to certify a class under Rule 23(b)(3), it must determine that "questions of law or fact common to the members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "The Rule 23(b)(3) test is, on one hand, less arduous in the settlement context, since the Supreme Court has recognized that where a settlement class is involved, 'a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.'"  *Bourlas*, 237 F.R.D. at 353 (quoting *Amchem*, 521 U.S. at 620, 117 S. Ct. 2231).  In this context, the Court will explore below whether the proposed class satisfies the predominance and superiority requirements.

### 1.     Predominance

The predominance element of Rule 23(b)(3) requires a showing that common questions "predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  It is a test that has been held to be "readily met" in cases involving alleged consumer fraud.  *See Karvaly*, 245 F.R.D. at 85 (citing *Amchem Prods. Inc.*, 521 U.S. at 625).  "A court's inquiry into [predominance] 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation' and is similar to the analysis of the commonality and typicality requirements."  *Morris*, 2013 WL 1880919, at *12 (quoting *Amchem*, 521 U.S. at 623) (citing *Niemiec v. Ann Bendick Realty*, No. 4-897, 2007 WL 5157027, *12 (E.D.N.Y. April 23, 2008)); *see Perez*, 2014

WL 4635745, at *19 (citing *Amchem Prods. Inc.*, 521 U.S. 623).   "'To meet the predominance requirement, a plaintiff must establish that the issues that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof.'"   *Morris*, 2013 WL 1880919, at *12 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132–33 (2d Cir. 2001)); *see Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (citing *Amchem Prods. Inc.*, 521 U.S. 623).  The Court notes that "Rule 23(b)(3) requires only "a showing 'that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.'"  *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 408 (quoting *Amgen Inc.*, 133 S.Ct. at 1191).

Consistent with the above points, the Court reviews Plaintiff's claims to determine whether they are susceptible to classwide proof.  In this regard, the relevant claims are those that are asserted on behalf of the nationwide class:  false advertising under NY GBL § 350, intentional misrepresentation and breach of express warranty.

To assert a claim under NY GBL § 350, a plaintiff "must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 944 N.Y.S.2d 452, 452, 967 N.E.2d 675 (2012)) (internal quotation marks omitted).  Courts in this district have held that consumer actions cannot be certified under Rule 23(b)(3) for claims brought under GBL § 350 since the statute requires a "showing of individual reliance" which can only be achieved through the presentation of individualized proof that predominates over classwide proof.  *See Ackerman*, 2013 WL 7044866, at * 19 (citing *Leider v. Ralfe*, 387 F. Supp. 2d 283, 298 (S.D.N.Y. 2005), implied overruling recognized by *New World Solutions, Inc., v.*

*NameMedia LLC*, 150 F. Supp. 3d 287 (S.D.N.Y. 2015); *Small v. Lorillard Tobacco Co.*, 252

A.D. 2d 1, 679 N.Y.S.2d 593, 600 (1st Dep't 1998); *DeAngelis v. Timberpeg East, Inc.*, 51

A.D.3d 1175, 858 N.Y.S.2d 410, 415 (3d Dep't 2008); *Solomon v. Bell Atl. Corp.*, 9 A.D.3d 49,

777 N.Y.S.2d 50, 53 (1st Dep't 2004); *Carnegie v. H & R Block, Inc.*, 269 A.D.2d 145, 703

N.Y.S.2d 27, 29 (1st Dep't 2000); *Strauss v. Long Island Sports, Inc.*, 60 A.D.2d 501, 401

N.Y.S.2d 233, 235 (2d Dep't 1978)).

      In 2012, however, the New York Court of Appeals held that "[j]ustifiable reliance by the

plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18

N.Y.3d 940, 944, 967 N.E.2d 675, 676, 944 N.Y.S.2d 452, 453 (March 27, 2012); *see In re

Scotts EZ Seed Litigation*, 304 F.R.D. at 409. Moreover, a plaintiff need not prove that the

defendant intended to mislead consumers. *In re Scotts EZ Seed Litigation*, 304 F.R.D. at 409

(citing *Koch*, 18 N.Y.3d at 941, 944 N.Y.S.2d at 453, 967 N.E.2d at 676; *Oswego Laborers'

Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S.2d 529, 647 N.E.2d 741

(1995)). If the instant action were to proceed to trial, Plaintiffs' NY GBL § 350 claim would not

require the presentation of individualized proof of whether each individual class member

reasonably relied on the alleged misrepresentations made by Revlon. Rather, Plaintiffs would

present classwide evidence establishing whether the advertisements were false, and, if so,

"whether [the advertisement] was likely to mislead a reasonable consumer acting reasonably

under the circumstances." *In re Scotts EZ Seed Litigation*, 304 F.R.D. at 409. When materiality

is judged by an objective standard, such as here, an analysis of common questions is required.

*Id*. (quoting *Amgen Inc.*, 133 S. Ct. at 1191). Moreover, classwide evidence of the premium

paid for the Products may be utilized to prove plaintiffs' injuries. *See Ebin*, 297 F.R.D. at 569

("Plaintiffs further assert, and the Court again agrees, that the common actual injury consisted of

the payment of the price of olive oil for a product that was pomace oil and the associated receipt of an inferior product different from that which the consumers purchased."); *see also In re EZ Seed Litigation*, 304 F.R.D., at 409; *but see Ackerman*, 2013 WL 7044866, at *20 ("Proof that each class member paid a premium for vitaminwater over another beverage would not be susceptible to generalized proof.") (citing *Weiner v. Snapple Beverage Corp.*, No. 07-8742, 2010 WL 3119452, at * 11 (S.D.N.Y. Aug.5, 2010); *Leider*, 2003 WL 24571746, at *10)).

In addition to the Plaintiffs' NY GBL § 350 claim, Plaintiffs allege breach of express warranty and intentional misrepresentation.  Breach of warranty claims under New York common law and the U.C.C. require proof of reliance.[3]  *See Ruffo v. Adidas America Inc.*, No. 15-5989, 2016 WL 4581344, at *3 (S.D.N.Y. Sept. 2, 2016) (to find that predominance was not satisfied as a claim for breach of express warranty under New York law required the plaintiff to prove that he or she relied on the advertising at issue) (citing *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 235 (E.D.N.Y. 2015)); *see also In re Scotts EZ Seed Litig.*, 304 F.R.D. at 410 (citing *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014); *see generally Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 642-43 (S.D.N.Y. 1999)).  Likewise, to sustain a claim for intentional misrepresentation, a plaintiff must allege that it reasonably relied on the representation or omission at issue.  *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 480 (S.D.N.Y. 2010) (citing *Cent. Pacific, Inc.*

---

[3]        In regard to the proposed nationwide class, Plaintiffs' Complaint does not specify under which state's common law or under which statutes the breach of express warranty claim arises.  *See* FAC at 24.  The Court will therefore assume that the claim is asserted under New York common law and the U.C.C.  Regardless, state law distinctions "do not defeat the commonality and predominance requirements in the settlement context because the state-law distinctions impact trial manageability, which is relevant principally with respect to litigation at trial."  *Davis v. J.P. Moran Chase & Co*., 775 F. Supp. 2d 601, 609 (W.D.N.Y. 2011) (citing in *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516 (3d Cir. 2004); *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 299 (3d Cir. 2005)).

*v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 218 (S.D.N.Y. 2007)).  In light of the case law discussed above, the Court concludes that individualized determinations as to whether a class member relied on the allegedly false advertisements would predominate over common questions applicable to all class members.  The Court finds that regardless of Plaintiff's breach of warranty and intentional misrepresentation claims, the predominance requirement has been met by virtue of Plaintiff's NY GBL § 350 claim.

### 2. *Superiority*

The Court further finds that the proposed class of purchasers asserting claims under NY GBL § 350 satisfies the superiority requirement.  Given the potential size of the proposed class, permitting the instant action to proceed as a class action will consolidate what could potentially result in tens of thousands of separate cases being filed against Revlon.  Allowing this case to proceed as a class action will, therefore, "eliminate the potential for 'repetitious litigation' and 'inconsistent adjudications.'"  *See Bourlas*, 237 F.R.D. at 354 (citing *D'Alauro v. GC Services Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996)); *see also Reade-Alvarez*, 237 F.R.D. at 33 ("Given the large number of class members and the relatively small value of their individual claims, as further described below, class members clearly have an interest in avoiding separate litigation of the claims and little to no interest in individually controlling their prosecution.").

Finding that a class action is the superior vehicle for redressing the alleged injuries sustained by purchasers of the Products, the Court now respectfully recommends to Judge Seybert that Plaintiff's motion to certify the class under Rule 23(b)(3) be GRANTED.

### E.    **Proposed Settlement**

Once a settlement class has been certified, courts turn to the merits of the underlying agreement.  As discussed above, this involves a two-step inquiry:  (1) whether preliminary

approval of the agreement is appropriate, and, if so, (2) whether the proposed manner in which notice of the certification, proposed settlement terms, date of the final fairness hearing, and options available to class members will be disseminated is adequate.  *See Bourlas*, 237 F.R.D., at 354-55 (citing Fed. R. Civ. P. 23(e)(1)(B)-(C); *In re IPO Secs. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005)).

The standard for preliminary approval is not as rigorous as that which is applied at the final approval stage.  *See Passafiume*, 274 F.R.D. at 430 (stating that a full fairness analysis is unnecessary at the preliminary approval stage) (citing *Reade-Alvarez*, 237 F.R.D. at 86).  At the preliminary approval stage, the Court need only determine that there is probable cause to submit the agreement to the proposed class members and to hold a fairness hearing, at which time the court will have the opportunity to closely examine the intricacies of the settlement terms and to assess their fairness.  *See In re Traffic Exec. Association-Eastern Railroads*, 627 F.2d at 634 (citing Manual For Complex Litigation § 1.46 at 55 n.10 (1977)).

A court may grant preliminary approval of a proposed agreement if it determines that it is the "result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval."  *Reade-Alvarez*, 237 F.R.D. at 33 (citing Manual for Complex Litigation § 30.41; *In re Medical X–ray Film Antitrust Litigation*, No. 93-5904, 1997 WL 33320580, at *6 (E.D.N.Y. 1997)).  Although a court may use the above factors as guideposts, approval of a proposed class action settlement agreement ultimately falls within the court's discretion.  *See In re IPO Secs. Litig.*, 226 F.R.D. at 190 (citing *Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000)); *see generally Hernandez*, 2012 WL

5862749, at *1.  "Absent fraud or collusion, [courts] should be hesitant to substitute [their]

judgment for that of the parties who negotiated the settlement."  *Tiro v. Pub. House Invs., LLC*,

No. 11-7679, 2013 WL 2254551, *2 (S.D.N.Y. 2013) (quoting *In re EVCI Career Colls. Holding*

*Corp. Sec. Litig.,* Nos. 05-10240 *et al.,* 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)).

      Here, the Court finds that the proposed settlement agreement is a "result of serious,

informed, and non-collusive negotiations."  *See Reade-Alvarez*, 237 F.R.D. at 33 (citing Manual

for Complex Litigation § 30.41; *In re Medical X–ray Film Antitrust Litigation*, No. 93-5904,

1997 WL 33320580, *6 (E.D.N.Y. Dec. 26, 1997)).  Based on counsel's representations, the

agreement is the product of vigorously fought litigation and months of arm's-length negotiations

between seasoned attorneys.  Mr. Riley asserted that he has more than 29 years of experience as

an attorney and has defended multiple class action cases for national companies, including

consumer cases such as the instant one.  Riley Decl., ¶ 9.  In his opinion, "the proposed

settlement is fair, reasonable and adequate with respect to Plaintiffs and the certified classes

because without the Settlement Agreement, [he] believe[s] Revlon would ultimately be

successful in this action at or before trial, resulting in Plaintiffs and the classes obtaining no

relief."  *Id*., ¶ 10.  After considering the underlying risks and costs associated with litigation,

however, Revlon's counsel determined that settlement was in the best interests of his client. *Id*.

Plaintiffs' counsel Marron represented that his team reviewed over 100,000 pages of

documentary evidence produced by Revlon "regarding the products' sales, advertising, labeling,

company finances and organization, and articles Revlon claims supported the efficacy of the

products."  Marron Decl., ¶ 25.  Moreover, Marron attested to the fact that "[t]he parties also

engaged in lengthy analysis of the laws applicable to the labeling claims here, with Revlon's

counsel setting forth detailed factual and legal analysis why they believed the claims on the

Products fully complied with the law, and Class Counsel setting forth detailed factual and legal analysis why they believed the claims were not lawful or were false and deceptive." *Id.*, ¶ 26. Percipient witness depositions were also taken and expert reports were exchanged. *Id.*, ¶ 28.

Further, the parties have asserted that the agreement was prompted, in part, by a mediation conducted by Hon. Peter Lichtman (Ret.). Significantly, participation by a neutral third party supports a finding that the agreement is non-collusive. *Tiro*, 2013 WL 2254551, at *2 (citing *In re Penthouse Executive Club Comp. Litig.*, No. 10-1145, 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013)) ("A settlement ... reached with the help of third-party neutrals enjoys a presumption that the settlement achieved meets the requirements of due process.") (internal quotation marks omitted); *Hernandez*, 2015 WL 5862749, at *2 ("The assistance of an experienced mediator … reinforces that the Settlement Agreement is non-collusive.") (citing *Capsolas v. Pasta Resources, Inc.*, No. 10-5595, 2012 WL 1656920, at *1 (S.D.N.Y. May 9, 2012)).

The neutral third party's involvement in settlement discussions, the extent of discovery, and the factual and legal analysis which took place here persuade the Court that the settlement agreement was the product of serious, informed settlement negotiations between qualified counsel. *See IPO Secs. Litig.*, 226 F.R.D. at 190 ("'A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'") (citing *Visa U.S.A., Inc.*, 396 F.3d at 116-17; *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y.2003)); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *Jermyn v. Best Buy Stores L.P.*, No. 08-214, 2012 WL 2505644, *6 (S.D.N.Y. June 27, 2012) (citing *In re Sumitomo Copper Securs. Litig.*, 189 F.R.D. 274, 281–82 (S.D.N.Y. 1999)) (in explaining that the amount of discovery favors

approval of the settlement, the court noted that the parties vigorously litigated the case "reviewed thousands of documents" and retained experts).

Plaintiffs further maintain that preliminary approval is appropriate since the settlement does not provide "unduly preferential treatment of class representatives or segments of the class." Joint Mem. at 17 (citing Manual for Complex Litigation 4th § 21.632, at 321) (internal quotation marks omitted). Class members without receipts will receive $3 per claim for each unit purchased, up to a total of 3 units, and class members with receipts shall receive $3 per claim with no cap on the number of claims. The Agreement §§ III (D), (E)(7). The Agreement further provides that the maximum amount available for claims is $400,000 and if the total authorized claims exceed this figure, payments for authorized claims shall be reduced pro rata. The Agreement, § III (D)(2)(f)-(g). Class representatives have the right to apply to the Court for an incentive award in the amount of $5,000 each. The Agreement, § III (D)(2)(i). "Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiff and compensating them for their additional efforts." *Parker v. Jekyll and Hyde Entertainment Holdings, L.L.C.*, No. 08-7670, 2010 WL 532960, *1 (S.D.N.Y. 2010) (citing *Fears v. Wilhelmina Model Agency, Inc.*, No. 02-4911, 2005 WL 1041134, at *3 (S.D.N.Y. May 5, 2005), *aff'd in part and rev'd in part on other grounds sub nom. Masters v. Wilhelmina Model Agency, Inc*., 473 F.3d 423 (2d Cir. 2007)).

The parties assert that courts in this Circuit have approved enhancement awards similar to the one requested here. Joint Mem. at 18 (citing *Jermyn*, 2012 WL 2505644, at *8-9 (approving a $1,000 incentive award, which the court characterized as "modest"); *Parker*, 2010 WL 532960, at *2 (approving individual enhancement payments of up to $15,000, which represented 2% of the settlement fund) (citing *Duchene v. Michael Cetta, Inc.*, No. 06-4576, 2009 U.S. Dist. LEXIS

85955, at *6, *9, 2009 WL 5841175 (S.D.N.Y. Sept. 10, 2009)) (approving an award of $25,000, which represented 0.8% of the $3,150,000 settlement amount); *Velez v. Novartis Pharms. Corp*., No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, at *68-69 (S.D.N.Y. Nov. 30, 2010)). Notwithstanding the cases cited by the parties, the Court will require Plaintiffs' counsel to prove, at the fairness hearing, the reasonableness of the award.  In doing so, the Court is guided by *Berkson v. Gogo LLC*, 147 F. Supp. 3d 123 (E.D.N.Y. 2015).  *Berkson* involved a proposed consumer class action.  *See generally id*.  Counsel for the class requested approval of a $5,000 incentive award for two class representatives.  *Id*. at 130.  In assessing the reasonableness of the proposed awards, the court noted that the "value a class member will receive from the proposed Settlement Agreement is likely to be less than $100" and it "does not appear that named plaintiffs risked any extraordinary harm or lend any special expertise to the action."  *Id*. at 134. In light of these factors, the court held that the awards must be justified at the fairness hearing. *Id.*  As in *Berkson*, class members here will likely recover less than $100 in damages, and no evidence has been presented indicating that the class representatives "risked any extraordinary harm."  The Court therefore concludes that the parties will need to establish at the fairness hearing that the instant enhancement award is reasonable.

The Court now considers whether the settlement provides any "excessive compensation for attorneys."  Plaintiffs' counsel states that the "requested fee will range from $420,000 to $590,000, depending on the final cost of notice and the claims made."  Joint Mem. at 19. "Courts may award attorneys' fees in common fund cases under either the "lodestar" method or the 'percentage of the fund' method."  *Visa USA, Inc.*, 396 F. 3d at 121 (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).  Courts in the Second Circuit tend to employ the percentage method.  *See, e.g., In re Visa Check/Mastermoney Antitrust Litigation,*

297 F. Supp. 2d 503, 520 (E.D.N.Y. 2003) (citing *Sheppard v. Consol. Edison Co. of N.Y.*, No. 94-0403, 2002 WL 2003206, at *7 (E.D.N.Y. Aug. 1, 2002)), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005). The percentage method "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Visa USA, Inc.*, 396 F.3d at 121 (quoting *In re Lloyd's Am. Trust Fund Litig.*, No. 96-1262, 2002 WL 31663577, at *25). The Court notes that a fee of $420,000 to $590,000 in a case involving a $900,000 QSF seems very high. *See Karvaly*, 245 F.R.D. at 86 ("A maximum fee of one-third of the Settlement Fund is a bit on the high side of a reasonable fee in the class action context, and the Court reserves judgment as to the fairness of the proposed award until class counsel has submitted its fee application."). The issue of attorney's fees, however, will be taken up once a motion for the same has been filed with the Court. *See Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 156 (E.D.N.Y. 2009); *see also Berkson*, 147 F. Supp. 3d at 134 (holding that a $750,000 attorneys' fee award must be justified at the final fairness hearing).

After addressing the matter of the attorney's fees, counsel embark on a discussion of how the proposed settlement agreement satisfies the *Grinnell* factors. Joint Mem. at 19 (citing *Grinnell Corp.*, 495 F.2d at 463). Fleshing out these nine factors at this stage of the settlement approval process is premature. Such a review is reserved for the final stage of approval. *Bourlas*, 237 F.R.D. at 355 n.7 (quoting *In re IPO Litig.*, 226 F.R.D. at 191) (recognizing that some courts apply the *Grinnell* factors at the preliminary approval stage, but concluding that "[l]ittle is gained, however, in applying *Grinnell* at such an early stage since the proposed settlement has yet to be tested in a fairness hearing, after which the court would still be required to 'make[ ] a final determination as to whether the proposed settlement is 'fair, reasonable and

adequate.'"); *see Berkson*, 147 F. Supp. 3d at 130-31 (citing *Grinnell*, 495 F.2d, at 468) (explaining that preliminary approval is the first of two distinct stages of review, the second of which involves application of the *Grinnell* factors).  Preliminary approval of a class action settlement "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *Menkes*, 270 F.R.D., at 101 (citing *In re Traffic Exec. Association-Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980) (internal quotation marks omitted).  For these reasons, the Court will not engage in a review of the *Grinnell* factors at this stage.

### F.    Class Counsel

The Law Offices of Ronald A. Marron and The Law Office of Jack Fitzgerald, P.C., seek appointment as class counsel.  Pursuant to Fed. R. Civ. P. 23(g)(1)(A), the Court must consider the following factors when appointing class counsel:

> (i)     the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii)   counsel's knowledge of the applicable law; and
>
> (iv)    the resources that counsel will commit to representing the class

The Court is satisfied with Plaintiffs' selection of the Law Offices of Ronald A. Marron and the Law Office of Jack Fitzgerald as lead counsel.  The Court has previously discussed in detail the background and experience of these two firms and will not repeat all of those details here.  Suffice it to say that counsel have provided evidence that they have successfully prosecuted a number of class consumer actions, securing multimillion dollar judgments in their

clients' favor.  Counsel have demonstrated that the instant settlement is the result of "vigorously fought" litigation involving thorough fact and expert discovery, the exchange of lengthy analyses pertaining to the strengths and weaknesses of each parties' positions, and months of settlement negotiations.  Accordingly, the Court recommends to Judge Seybert that the Law Offices of Ronald A. Marron and the Law Office of Jack Fitzgerald be appointed class counsel.  *See Menkes*, 270 F.R.D. at 104.

### G.    Proposed Notice

Once a class is certified, a court must ensure that, pursuant to Rule 23(c)(2), there exists an adequate plan for disseminating notice to class members. *Passafiume*, 274 F.R.D. at 431.  The standards for notice under (b)(2) and (b)(3) differ.  In this regard, Rule 23(c)(2) provides as follows:

> (A)    For (b)(1) or (b)(2) Classes. For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class.
>
> (B)    For (b)(3) Classes. For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> > (i)    the nature of the action;
> >
> > (ii)    the definition of the class certified;
> >
> > (iii)    the class claims, issues, or defenses;
> >
> > (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> >
> > (v)    that the court will exclude from the class any member who requests exclusion;
> >
> > (vi)    the time and manner for requesting exclusion;

and

> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

The parties explain that individual notice is not possible in the circumstances of this case. Joint Mem. at 25.  Therefore, publication is the most practicable and feasible means of circulating notice to class members.  *Id.*  In connection with their joint motion, the parties submitted a Declaration by the founder and principal of the Dahl Administration, LLC ("Dahl"), Jeffrey D. Dahl.  Dahl was retained as the Administrator and Settlement Administrator for this action.  *See* Declaration of Jeffrey D. Dahl ("Dahl Decl."), annexed as  Ex. 7 to Notice of Joint Motion and Joint Motion For Preliminary Approval of Class Action Settlement [DE 109], ¶ 2. According to Mr. Dahl, he is a "nationally-recognized expert with over 22 years of experience in class action settlement administration."  *Id.*  Moreover, he has "provided claims administration services and notice plans for more than 500 class actions involving consumer rights, securities, product liability, fraud, property, employment, and discrimination," and has "served as a Distribution Fund Administrator for the U.S. Securities and Exchange Commission."  *Id.* Dahl — in combination with its media partner FRWD — has formulated a notice plan that "utilizes web-based media."  *Id.*, ¶ 6.  FRWD's Founder and CEO, John Grundowski, attested to the fact that he has more than 19 years of experience in marketing and public relations, the last 14 of which have been devoted to digital media.  *See* Declaration of John Grudnowski ("Grudnowski Decl."), annexed as  Ex.  9  to Notice of Joint Motion and Joint Motion For Preliminary Approval of Class Action Settlement [DE 109], ¶ 3.  FRWD's market research estimates that approximately 1.5 million people have purchased the Products.  *Id.*, ¶ 6.  This class of individuals is comprised primarily of females and is 79% more likely than average to be aged 55 or older, and 63% less likely than average to be less than 35 years old.  Dahl Decl., ¶ 12.

Moreover, "the Settlement Class is highest indexing in the Caucasian and Native American ethnic groups." *Id*.  Digital media is the channel most often used by this class of individuals and it is therefore utilized in the instant Notice Plan, which intends to "obtain over 10.4 million individual notice impressions." *Id*., ¶¶ 13, 15.  Under its plan, Dahl estimates that it can reach approximately 70% of the class.  *Id*., ¶ 15.  Dahl goes on to provide detailed explanations of the varying web-based campaigns that it intends to employ, including, but not limited to, web banners, keyword searches, and social media which contain links to the Settlement Website.  *See generally id*., ¶¶ 19-30.  In their Joint Memorandum, the parties explain that their notices will include the following:

> (1) basic information about the lawsuit; (2) a description of the benefits provided by the settlement; (3) an explanation of how Class Members can exercise their right to object to the settlement; (4) an explanation that any claims against Defendant that could have been litigated in this action will be released; (5) the names of counsel for the Class and information regarding attorney's fees, costs and incentive awards; (6) the fairness hearing date, along with an explanation of eligibility for appearing; and (7) the settlement web site for additional information.

Joint Mem. at 26 (citing Sett. Agmt. § III (E) & Exs. B, F.).  Based on the representations made by counsel, Dahl, and Grudnowski, the Court finds that the proposed Notice Plan satisfies the requirements of Rule 23(c)(2)(A) and (B).

**IV.**     **CONCLUSION**

   Based on the analysis set forth above, the Court respectfully recommends to Judge Seybert that the Joint Motion for Preliminary Approval of Class Action Settlement be GRANTED to the extent set forth in this Report and Recommendation.  Specifically, the Court recommends that classes be certified under both Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, encompassing the following class definition:

Elkind, Rosen and all other Persons in the United States who, during the Class Period (the time period beginning on April 25, 2011 and ending on the date a motion for preliminary approval of the Settlement Agreement is filed in the Action) purchased one or more of Revlon's Age Defying with DNA Advantage Cream Makeup, Concealer, and Powder, in any package, size, or iteration, for personal, family or household use, and not for resale.

Specifically excluded from the class, however, are any Person(s) who timely opts-out of the Class.

The Agreement § II.

## V.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also FED. R. CIV. P. 6(a) and (e).  Such objections shall be filed with the Clerk of the Court via ECF.  Any objections being filed by a *pro se* litigant are to be sent by first-class mail to the Clerk of the Court.  A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna Seybert, and to the Chambers of the undersigned.  Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), cert. denied, 522 U.S. 883 (1997); *Savoie v. Merchants B*ank, 84 F.3d 52, 60 (2d Cir. 1996).

                                                    SO ORDERED.

Dated: Central Islip, New York
          March 9, 2017

                                                    /s/ A. Kathleen Tomlinson
                                                    A. KATHLEEN TOMLINSON
                                                    United States Magistrate Judge