**IN THE UNITED STATES COURT**

**FOR THE EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ANNE ELKIND and SHARON ROSEN, on behalf of themselves and all others similarly situated, | Case No. 2:14-cv-02484-JS-AKT |
| Plaintiffs, | Magistrate Judge: Hon. A. Kathleen Tomlinson |
| v. | |
| REVLON CONSUMER PRODUCTS CORPORATION, | |
| Defendant. | |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

---

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................... 1

II.  SUMMARY OF LITIGATION TO DATE ......................................................... 1

III.  THE BENEFITS OF THE PROPOSED SETTLEMENT ................................... 4

    A.  Discontinuance of DNA Advantage Product Line ................................ 4

    B.  Monetary Relief ...................................................................................... 4

    C.  Costs of Notice and Administration, Attorneys' Fees, and Incentive Award .. 5

IV.  CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE ........... 5

    A.  The Requirements of Rule 23(a) Are Met ............................................. 6

        1.  Numerosity ................................................................................. 6

        2.  Commonality ............................................................................. 7

        3.  Typicality .................................................................................. 8

        4.  Adequacy of Representation ...................................................... 9

        5.  Implied Requirement of Ascertainability ................................. 11

    B.  The Proposed Class Meets the Requirements of Rule 23(b)(2) ............ 12

    C.  The Proposed Class Meets the Requirements of Rule 23(b)(3) ............ 13

V.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE GRANTED FINAL APPROVAL BY THE COURT ................................................. 15

    A.  The Proposed Settlement is Procedurally Fair .................................... 16

    B.  The Proposed Settlement is Substantively Fair ................................... 17

        1.  Factor One: Given The Complexity, Expense And Likely Duration Of The Litigation, Final Approval Is Appropriate .................................... 18

        2.  Factor Two: The Class's Favorable Reaction To The Settlement ........... 19

3.   FACTOR THREE:  DISCOVERY HAS ADVANCED FAR ENOUGH TO ALLOW THE
      PARTIES TO RESPONSIBLY RESOLVE THE CASE ...................................................... 20

4.   FACTORS FOUR, FIVE AND SIX: THE CONTINUED LITIGATION RISKS RELATED TO
      ESTABLISHING LIABILITY, DAMAGES, AND MAINTAINING A CLASS ACTION
      THROUGH TRIAL SUPPORT SETTLEMENT ................................................................ 22

5.   FACTOR SEVEN: DEFENDANT'S ABILITY TO WITHSTAND A GREATER JUDGMENT .. 24

6.   FACTORS EIGHT AND NINE: THE RANGE OF REASONABLENESS OF THE SETTLEMENT
      IN LIGHT OF THE BEST POSSIBLE RECOVERY ......................................................... 24

VI.   CONCLUSION ............................................................................................................. 25

## TABLE OF AUTHORITIES

**CASES**

*Allison v. Citgo Petroleum Corp.*,
   151 F.3d 402 (5th Cir. 1998) ............................................................................... 13

*Ault v. J.M. Smucker Co.*,
   310 F.R.D. 59 (S.D.N.Y. 2015) .......................................................................... 11

*Belfiore v. Procter & Gamble Co.*,
   311 F.R.D. 29 (E.D.N.Y. 2015) .......................................................................... 11

*Bellifemine v. Sanofi-Aventis US. LLC*,
   2010 WL 3119374 (S.D.N.Y. 2010) ................................................................... 22

*Brecher v. Rep. of Argentina*,
   806 F.3d 22 (2d Cir. 2015) .................................................................................. 11

*Charron v. Pinnacle Grp. N.Y. LLC*,
   269 F.R.D. 221 (S.D.N.Y. 2010) ........................................................................ 11

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ......................................................................... *passim*

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) .................................................................................... 6

*Damassia v. Duane Reade, Inc.*,
   250 F.R.D. 152 (S.D.N.Y. 2008) .......................................................................... 7

*Delarosa v. Boiron, Inc.*,
   275 F.R.D. 582 (C.D. Cal. 2011) ...................................................................... 7, 8

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
   89 F.R.D. 87 (S.D.N.Y. 1981) ............................................................................ 14

*Dziennik v. Sealift, Inc.*,
   2007 U.S. Dist. LEXIS 38701 (E.D.N.Y. May 29, 2007) .................................... 9

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ...................................................... 7, 14, 16, 24

*Gen. Tel. Co. of Sw. v. Falcon*,

    457 U.S. 147 (1982) ............................................................................................ 7, 9

*Gortat v. Capala Bros., Inc.*,

    2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010) ...................................................... 11

*Green* v. *Wolf Corp.*,

    406 F.2d 291 (2d Cir. 1968) .............................................................................. 15

*Hanlon v. Chrysler*,

    150 F.3d 1011 (9th Cir. 1998) .......................................................................... 20

*In re Abbott Labs. Norvir Anti-Trust Litig.*,

    2007 WL 1689899 (N.D. Cal. June 11, 2007) .................................................... 6

*In re Air Cargo Shipping Servs. Antitrust Litig.*,

    2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) .................................................. 16

*In re Austrian & German Bank Holocaust Litig.*,

    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................ 24

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,

    2007 WL 2230177 (S.D.N.Y. July 27, 2007) .................................................... 16

*In re Ferrero Litig.*,

    2011 WL 5557407 (S.D. Cal. Nov. 14, 2011) .................................................... 8

*In re Frontier Ins. Grp., Inc. Sec. Litig.*,

    172 F.R.D. 31 (E.D.N.Y 1997) ........................................................................ 15

*In re Methyl Tertiary Butyl Ether Prod. Liability Litig.*,

    209 F.R.D. 323 (S.D.N.Y. 2002)...................................................................... 11

*In re MetLife Demutualization Litig.*,

    689 F. Supp. 2d 297 (E.D.N.Y. 2010) .............................................................. 19

*In re NASDAQ Market-Makers Antitrust Litig.*,

    187 F.R.D. 465 (S.D.N.Y. 1998)...................................................................... 22

*In re PaineWebber Ltd. Partnerships Litig.*,

    171 F.R.D. 104  (S.D.N.Y.)............................................................................... 23

*In re PaineWebber*,

    171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................. 22

*In re Scotts EZ Seed Litigation,*

    304 *F.R.D.* 397 (S.D.N.Y. 2015) ............................................................. 11

*In re Visa Check/MasterMoney Antitrust Litig.*,

    280 F.3d 124 (2d Cir. 2001) ................................................................. 14

*In re Vitamin C Antitrust Litig.*,

    2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ................................... *passim*

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,

    109 F.R.D. 391 (S.D.N.Y. 1986) ............................................................. 7

*Marisol A. by Forbes v. Giuliani*,

    126 F.3d 372 (2d Cir. 1997) ................................................................... 8

*Marisol A. v. Giuliani*,

    126 F.3d 372 (2d Cir. 1997) ................................................................... 6

*Martens v. Smith Barney Inc.*,

    181 F.R.D. 243 (S.D.N.Y. 1998) ............................................................. 9

*Massiah v. MetroPlus Health Plan, Inc.*,

    2012 WL 5874655 (E.D.N.Y. Nov. 16, 2012). ........................... 19, 20, 21

*Matheson v. T-Bone Rest., LLC*,

    2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ....................................... 15

*McBean v. City of New York,*

    228 F.R.D. 487 (S.D.N.Y. 2005) ........................................................... 14

*McReynolds v. Richards-Cantave*,

    588 F.3d 790 (2d Cir. 2009) ................................................................. 17

*Milonas v. Williams*,

    691 F.2d 931 (10th Cir. 1982) ............................................................... 9

*Newman v. Stein*,

    464 F.2d 689 (2d Cir. 1972) ................................................................. 24

*Probe v. State Teachers' Ret. Sys.*,

    780 F.2d 776 (9th Cir. 1986) ...................................................................... 12

*Reyes v. Buddha-Bar NYC*,

    2009 U.S. Dist. LEXIS 45277 (S.D.N.Y. May 28, 2009) ....................................... 10

*Robidoux v. Celani*,

    987 F.2d 931 (2d Cir. 1993) ...................................................................... 9

*Rodolico v. Unisys Corp.*,

    199 F.R.D. 468 (E.D.N.Y. 2001) ................................................................. 9

*Tiro v. Public House Invs.*, LLC,

    2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) ..................................................... 15

*Torres v. Gristede's Oper. Corp.*,

    2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ..................................................... 21

*Torres v. Gristede's Operating Corp.*,

    2010 U.S. Dist. LEXIS 139144 (S.D.N.Y. Dec. 21, 2010) ...................................... 21

*Trief v. Dun & Bradstreet Corp.*,

    144 F.R.D. 193 (S.D.N.Y. 1992) ................................................................. 7

*Wal-Mart Stores, Inc. v. Dukes*,

    131 S.Ct. 2541 (2011) ................................................................... 7, 8, 12, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,

    396 F.3d 96 (2d Cir. 2005) ....................................................................... 16

*Weber v. Gov't Emps. Ins. Co.*,

    262 F.R.D. 431 (D.N.J. 2009) .................................................................... 24

*Weiner v. Snapple Beverage Corp.*,

    2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ...................................................... 12

*Willix v. Healthfirst, Inc.*,

    2011 WL 7584862 (E.D.N.Y. Feb. 18, 2011) ..................................................... 22

*Wright v. Stern*,

    553 F. Supp. 2d 337 (S.D.N.Y. 2008) ............................................................ 20

*Zinser v. Accufix Research Inst.,*
> 253 F.3d 1180 (9th Cir. 2001) ................................................................ 12

**OTHER AUTHORITIES**

4 Alba Conte & Herbert B. Newberg,
> Newberg on Class Actions § 11:41 (4th ed. 2002) ................................... 17

7A C.A. Wright, A.R. Miller, & M. Kane, Federal Practice & Procedure §1777 (2d ed. 1986) . 13

**RULES**

Fed. R. Civ. P. 23 ........................................................................................ 6

Fed. R. Civ. P. 23(a) .................................................................................... 6

Fed. R. Civ. P. 23(a)(1) ............................................................................ 6, 7

Fed. R. Civ. P. 23(a)(2) ................................................................................ 7

Fed. R. Civ. P. 23(a)(3) ................................................................................ 8

Fed. R. Civ. P. 23(a)(4) ................................................................................ 9

Fed. R. Civ. P. 23(b) .................................................................................... 6

Fed. R. Civ. P. 23(b)(2) .......................................................................... 12, 13

Fed. R. Civ. P. 23(b)(3) .......................................................................... 6, 13

Fed. R. Civ. P. 23(g)(1) .............................................................................. 10

Fed. R. Civ. P. 23(g)(1)(A) .......................................................................... 10

Fed. R. Civ. P. 26(f) .................................................................................... 22

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs Anne Elkind and Sharon Rosen ("Plaintiffs"), respectfully submit this memorandum in support of Plaintiffs' Motion for Final Approval of Class Settlement and Certification of a Nationwide Settlement Class (the "Motion").

## I.    INTRODUCTION

On March 29, 2017, this Court granted preliminary approval of this class action settlement concerning the marketing and sales of the cosmetics brand known as "Revlon Age Defying with DNA Advantage." Dkt. No. 120.[1]  This settlement has been an overwhelming success.  Thus far, 55,683 total claims have been filed by members of the prospective Settlement Class and there has been 76,037 unique visits to the Settlement Website. Marron Decl., ¶ 3 & Ex. 2.  This Settlement also provides effective injunctive relief by requiring Revlon to discontinue the DNA Advantage Products at issue in this action (the foundation, concealer, and powder) by no later than December 31, 2017. *See* Sett. Agmt.  § III (C).  To date, no objections have been filed even though the objection deadline is fast approaching on July 18, 2017. Dkt. No. 123. The uniformly positive reaction of the Settlement Class confirms that this is a fantastic settlement.

Despite the lack of any objection to date, this Court must still evaluate the Settlement to confirm that the requirements for class certification are met, and that the Settlement is fair, reasonable, and adequate, before granting final approval.

## II.    SUMMARY OF LITIGATION TO DATE

Plaintiffs Anne Elkind and Sharon Rosen brought this consumer protection class action lawsuit on behalf of themselves and the putative class of purchasers of Defendant Revlon Consumer Product Corporation's ("Revlon" or "Defendant") DNA Advantage line of three cosmetic products:

---

[1] A copy of the Settlement Agreement ("Sett. Agmt.") is attached as Exhibit 1 to the Declaration of Ronald A. Marron ("Marron Decl.") filed concurrently herewith.

foundation, powder and concealer (the "Products").  *See generally* Dkt. No. 12 (First Am. Compl. or "FAC").,  Plaintiffs asserted a total of 11 claims on behalf of a nationwide class under New York law, and on behalf of a California subclass under California law. (*Id.* ¶¶ 83-173.) These included claims for false advertising under N.Y. Gen. Bus. L. § 349 (id. ¶ 86), and under the "unlawful" prong of California's Unfair Competition Law ("UCL,") Cal. Bus. & Prof. Code §§ 17200 et seq. (id. ¶ 116). Plaintiffs further alleged the DNA Advantage Products were misbranded under the federal Food, Drug and Cosmetics Act ("FDCA"), and thus actionable under state law. (*See generally id.* ¶¶ 36-66.)

Revlon vigorously fought this case, contending a class could not be certified and that the claims lacked merit.  Revlon brought a motion to dismiss, alleging a host of affirmative defenses (Dkt. Nos. 18-22, 31), which Plaintiffs opposed (Dkt. No. 28).  As a result, the Court struck injunctive relief from the lawsuit, finding there was a lack of Article III standing; removed claims for the powder Product; and also removed claims that the Products were unapproved new drugs based on the doctrine of preemption.  In addition, the Court dismissed with prejudice counts one (N.Y. Gen. Bus. L. § 349), three (negligent misrepresentation), five (Cal. bus. & Prof. Code § 17200 *et seq.*), nine (breach of implied warranty of merchantability), ten (breach of implied warranty of fitness), twelve (breach of implied warranty under Cal. Comm. Code § 2313(1)), thirteen (breach of implied warranty under Cal. Comm. Code § 2315), fourteen (unjust enrichment), and fifteen (restitution) of the First Amended Complaint.  (Dkt. No. 79.)

The parties attended an in-person mediation before the Honorable Peter Lichtman (Ret.) on August 27, 2015, which included counsel for the parties plus a Revlon representative. Marron Decl. ¶ 30. While this mediation was not successful on that date, the parties did subsequently, over a period of several months negotiate the specific terms of the settlement presently before the Court. *Id.* ¶¶ 31-32.

In the course of this litigation, Defendant produced and Plaintiffs' counsel reviewed substantial documentary evidence, including over 100,000 pages of evidence, regarding the Products' sales, advertising, labeling, company finances and organization, product testing and articles Revlon claimed supported the efficacy of the Products.  Marron Decl. ¶ 26.  Percipient witness depositions were taken; numerous third party subpoenas served; experts retained; and expert reports exchanged.  *Id.* ¶ 29.  Over the course of the litigation, counsel for the parties were able to obtain an in-depth understanding of the strengths and weaknesses of their clients' respective positions.  *Id.* ¶ 32; *see also* Declaration of Jack Fitzgerald ("Fitzgerald Decl."), ¶ 4.  As the record shows, this case was hard fought.

Class Counsel exercised due diligence to confirm the adequacy, reasonableness, and fairness of the settlement.  Marron Decl. ¶¶ 26-36 ; Fitzgerald Decl. ¶¶ 2, 4.  Despite the vigorous opposition on both sides, the parties appreciate the costs and uncertainty attendant to any litigation, and have agreed to a proposed settlement agreement.  Marron Decl., ¶ 2 & Ex. 1.  Class Counsel agreed to settle the action pursuant to the provisions of the Settlement, after considering, among other things: (i) the benefits to Plaintiffs and the Class under the terms of the Settlement; (ii) the uncertainty of being able to prevail at trial; (iii) the uncertainty relating to Defendant's defenses and the expense of additional motion practice in connection therewith; (iv) the attendant risks, difficulties, and delays inherent in litigation, especially in complex actions such as this; and (v) the desirability of consummating this Settlement promptly in order to provide substantive relief to Plaintiffs and the Class without unnecessary delay and expense.  Marron Decl. ¶¶ 26-36; Fitzgerald Decl. ¶¶ 2, 4; Sett. Agmt. §§ III (A)-(B).

On June 30, 2016, the Parties filed their Joint Motion for Settlement of this Class Action (Dkt. No. 109) and on July 6, 2016, this Court referred the matter to Magistrate Judge Tomlinson (Dkt. No. 111).  On February 17, 2017, Judge Tomilson issued her initial Report and Recommendation for

preliminary approval of the settlement. Dkt. No. 114. On March 9, 2017, Judge Tomilson issued an Amended Report and Recommendation for preliminary approval of the settlement finding that "the proposed settlement agreement is a 'result of serious, informed, and non-collusive negotiations.'" Dkt. No. 119 at 36.  On March 29, 2017, this Court issued an Order Adopting Judge Tomilson's Amended Report and Recommendation and granted preliminary approval of this Settlement. Dkt. No. 120. Notice has since been disseminated to the prospective class members and 55,683 total claims have been filed by members of the prospective Settlement Class. *See* Marron Decl. ¶ 3 & Ex. 2.

**III.    THE BENEFITS OF THE PROPOSED SETTLEMENT**

**A.  Discontinuance of DNA Advantage Product Line**

The proposed settlement provides that Revlon shall discontinue and not recommence manufacturing, advertising, promotion, distribution, offer for sale, and sale of the specific line of DNA Advantage Products at issue in this action (foundation, concealer, and powder) by December 31, 2017. Sett. Agmt. § III (C).  Notwithstanding the compliance deadline of December 31, 2017, Revlon represents that, as of November 2013, it has discontinued its DNA Advantage concealer and powder. *Id*.

**B.  Monetary Relief**

The Proposed Settlement provides that In addition, the Settlement provides that Revlon shall pay $900,000 into a Dahl Administration Qualified Settlement Fund ("QSF") created with a separate tax identification number, to cover all expenses associated with final settlement approval by the Court including notice, administration, class member claims, and plaintiffs' service awards, legal expenses, and attorneys' fees.  Prospective Class members shall receive up to $3 per claim (i.e., for each unit purchased), up to a total of 3 units without receipt and Class members with receipts shall receive up to $3 per claim However, no more than $400,000 shall be paid for class member claims and in the

4

event that claims exceed that amount, as is the case here, payments for claims shall be reduced *pro rata* by a small percentage. Sett. Agmt. §§ III (D), (E)(7).  Because the claims submitted already exceed the total amount available to pay for class member claims, class members will receive the full amount of the available fund and no amount will be distributed *cy pres*.

### C.      Costs of Notice and Administration, Attorneys' Fees, and Incentive Award

All Notice and Claims Administration costs, attorneys' fees and Class Representatives Enhancement Awards shall also be paid out of the QSF.  Sett. Agmt. §§ III(D)(1), (D)(2)(j), (E).  This is a benefit to the class, since plaintiffs are ordinarily required to bear the burden of notice in class actions.  Plaintiffs have concurrently filed their Motion for Attorneys' Fees, Costs, and an Incentive Award with their Motion for Final Approval.  Counsel for Plaintiffs are seeking just ___% of their total lodestar amount that represent approximately 40% of the total settlement fund. Out of the fee sought, the Plaintiffs' firms have a fee splitting agreement: 40% to The Law Office of Jack Fitzgerald, PC, and 60% to Law Offices of Ronald A. Marron, APLC.

## IV.     CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Court's Preliminary Approval Order provisionally certified a class for settlement purposes of:

> Elkind, Rosen and all other Persons in the United States who, during the Class Period (the time period beginning on April 25, 2011 and ending on the date a motion for preliminary approval of the Settlement Agreement is filed in the Action) purchased one or more of Revlon's Age Defying with DNA Advantage Cream Makeup, Concealer, and Powder, in any package, size, or iteration, for personal, family or household use, and not for resale.
>
> Specifically excluded from the class, however, are any Person(s) who timely opts-out of the Class.

*See* Am. Report and Recommendation, Dkt. No. 119 at 45; Mem. & Order, Dkt. No. 120; *see also* Sett. Agmt. § II.

Under Federal Rule of Civil Procedure 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the Court to find that:

> questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (internal citation omitted).

On March 29, 2017, the Court provisionally certified the Settlement Class. Dkt. No. 120. The Court should now grant final certification because the Settlement Class meets all of the requirements of Rule 23(a) and Rule 23(b)(3).

A. **The Requirements of Rule 23(a) Are Met**

    1. **Numerosity**

Federal Rule of Civil Procedure 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." "Where the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *In re Abbott Labs. Norvir Anti-Trust Litig.*, Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899, at *6 (N.D. Cal. June 11, 2007) (internal citations and quotations omitted). Generally, classes of forty or more are sufficiently numerous. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, Plaintiffs seek to certify a class of nationwide purchasers of Revlon Age Defying with

DNA Advantage Cream Makeup, Concealer, and Powder, in any package, size, or iteration ("Revlon's DNA Advantage Products" or the "Products"), which are sold in numerous retail stores throughout the United States.  The proposed Settlement Class potentially consists of tens of thousands of claimants, which can reasonably be inferred by the fact that 55,565 total claims have been submitted by members of the prospective Settlement Class thus far.  Marron Decl., ¶ 3 & Ex. 2.  Therefore, the Class is sufficiently numerous such that joinder of all individual claimants would be impracticable.  *See* Fed. R. Civ. P. 23(a)(1).

### 2. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class."  All questions of fact and law need not be common to satisfy the rule. Rather, there need only be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986); *see also Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008) (commonality satisfied where two questions of law were common to all class members). Courts construe the commonality requirement liberally.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (citing *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992)).

"In addition, all class members must "have suffered the same injury." *Wal-Mart Store, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon* ("*Falcon*"), 457 U.S. 147, 157 (1982)).  In the context of claims for false or deceptive advertising, there is essentially a single misrepresentation (that the Products are effective for their advertised purposes) and a single injury (loss of money for a product that did not work as represented).  *See Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 589 (C.D. Cal. 2011).

Here, Class members share numerous common questions, including (a) whether Revlon advertised or marketed the Products in a way that was false or misleading, (b) whether Revlon concealed material facts from class members, (c) whether, as a result of Revlon's misrepresentations,

Plaintiffs and other members of the class suffered an ascertainable loss by purchasing the Products, and (d) whether Plaintiffs and the class are entitled to recover damages or other equitable relief as a result of Revlon's alleged unlawful conduct.  Revlon made uniform representations on the Products' labeling and packaging, as well as on its websites, as to the Products' properties.  The labeling was uniform throughout the United States, and did not differentiate for any specific market or region.  *See* Declaration of Sean Riley ("Riley Decl.") in Support of Joint Motion for Preliminary Approval, Dkt. No. 109-11, ¶ 6.  Class Members therefore share a common alleged injury because they were all allegedly exposed to the same representations on each Product, and the Class is limited to purchasers of the Products.  Sett. Agmt. § II (H).  Thus, for purposes of a Settlement Class, all potential Class Members were exposed to Defendant's uniform advertisements at the time of purchase. *See Delarosa*, 275 F.R.D. at 589.  This action, therefore, presents common questions of law or fact concerning whether Defendant made false or deceptive representations about its Products, and determination of whether the representations were true or deceptive would resolve all claims "in one stroke."  *Dukes*, 131 S.Ct. at 2551.[2]

### 3.  Typicality

Rule 23(a)(3) sets a "permissive standard," and the named Plaintiffs' claims are typical of the class if they are "reasonably co-extensive with those of absent class members."  *Hanlon*, 150 F.3d at 1020.  Rule 23(a)(3) requires that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted). "Minor

---

[2] This case does not pose commonality problems that might arise in an employment class action, where a defendant supervisor may have subjected different plaintiffs to disparate, discriminatory treatment. *See Dukes*, 131 S.Ct. at 2554 (noting commonality could be proven where there was "a uniform employment practice"); *In re Ferrero Litig.*, No. 11-CV-205 H(CAB), 2011 WL 5557407, at *3-4  (S.D. Cal. Nov. 14, 2011).

variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiff and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182; *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). Also, the representative plaintiff must be a member of the class they seek to represent. *Falcon*, 457 U.S. at 156.

Here, the proposed Class Representatives have claims typical to the Class and are members of the Class they seek to represent.  Ms. Elkind and Ms. Rosen allegedly sought out Defendant's Products based on the representations the Products provided a cosmetic "DNA Advantage," and suffered the same alleged injury in fact – loss of money in the amount of the purchase price – when the Products allegedly were not as advertised.  All purchasers and Class Members were exposed to Defendant's representations about the Products' "DNA Advantage" because the labels, packaging, and websites are the same throughout the United States.  Riley Decl. ¶ 6, Dkt. No. 109-11.

### 4.  Adequacy of Representation

Rule 23(a)(4) requires that the Class Representative parties "fairly and adequately represent the interests of the class.  The adequacy requirement is met if plaintiffs: (1) are represented by competent counsel who are qualified, experienced and generally able to conduct the litigation; and (2) do not have "interests antagonistic to those of the remainder of the class." *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 477 (E.D.N.Y. 2001) (internal quotation marks omitted). "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701, at *19 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)). Regarding qualifications of proposed Class Counsel, the Court should analyze "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class

actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Here, the requirements for adequacy are satisfied. Plaintiffs do not have interests that conflict with the proposed Settlement Class. Plaintiffs and the Class purchased the Products, believing the DNA Advantage representations made on the Products' packaging, and lost money as a result when the Products were not as advertised. FAC ¶¶ 16, 22-24. Moreover, the packaging of each Revlon DNA Advantage Product appeared the same throughout the United States. *Id.*; Riley Decl. ¶ 6, Dkt. No. 109-11.

Class Counsel performed extensive work to date in successfully mediating and negotiating the proposed Settlement over the course of this case's pendency. Marron Decl. ¶¶ 30-31, 35. Class Counsel has numerous years' experience, and demonstrated success, in bringing the same types of false labeling claims at issue in this action. *See, e.g.*, Marron Decl. ¶¶ 5-25 & Ex. 3; Fitzgerald Decl. ¶ 3 & Ex. A. This action involves complex cosmetics labeling and scientific proof issues, class action requirements, common law fraud theories, and statutory consumer fraud. Plaintiffs agree that Settlement Class Counsel are competent, qualified, and will more than adequately protect the Class' interests. *See Reyes v. Buddha-Bar NYC*, No. 08-civ-02494 (DF), 2009 U.S. Dist. LEXIS 45277, at *7 (S.D.N.Y. May 28, 2009) (adequacy requirement met where class counsel has "an established record of competent and successful prosecution of large . . . class actions, and the attorneys working on the case are likewise competent and experienced in the area.") (internal quotation marks omitted). Accordingly, Plaintiffs request the Court appoint Plaintiffs' counsel as Class Counsel for purposes of settlement, pursuant to Rule 23(g)(1) (requiring a certified class to also have appointed class counsel).

### 5.   Implied Requirement of Ascertainability

"The Court of Appeals for the 'Second Circuit has recognized a fifth pre-condition to class certification: the implied requirement of ascertainability.'" *Belfiore v. Procter & Gamble Co.,* 311 F.R.D. 29, 63 (E.D.N.Y. 2015) (quoting *In re Scotts EZ Seed Litigation,* 304 *F.R.D.* 397, 407 (S.D.N.Y. 2015) (citing *Brecher v. Rep. of Argentina*, 806 F.3d 22 (2d Cir. 2015)). "A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Brecher*, 806 F.3d 22, 24-25 (quoting *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010)) (internal quotation marks omitted). The standard for ascertainability is not a rigorous one. *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 407; *Gortat v. Capala Bros., Inc.*, No. 07-3629, 2010 WL 1423018, at *2 (E.D.N.Y. Apr. 9, 2010), *aff'd*, 568 Fed. Appx. 78 (2d. Cir. 2014). "In fact, '[c]lass members need not be ascertained prior to certification, but the exact membership of the class must be ascertainable at some point in the case.'" *Belfiore*, 311 F.R.D. at 66 (quoting *In re Methyl Tertiary Butyl Ether Prod. Liability Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002)).

The proposed class is comprised of individuals who purchased foundation, powder or concealer belonging to the "Revlon Age Defying with DNA Advantage" line of cosmetics. Given the nature of this action, it is apparent that members of the class could be ascertained by producing a receipt of purchase. It is likely, however, that many if not most of the potential class members discarded their receipts. Courts within the Second Circuit have adopted opposing views on whether a proposed class can satisfy the ascertainability requirement under these circumstances. *See generally Belfiore*, 311 F.R.D. at 65-66 (comparing courts' varying views). According to some courts, "self-identification" might adequately replace "proof of purchase" when the allegedly deceptive and misleading statements were uniform. *See id.* at 66 (citing *Ebin*, 297 F.R.D. at 567; *Ault v. J.M. Smucker Co.*, 310 F.R.D. 59, 65-66 (S.D.N.Y. 2015); *Weiner v. Snapple Beverage*

*Corp.*, No. 07-8742, 2010 WL 3119452, at *13 (S.D.N.Y. Aug. 5, 2010) (denying certification where only certain of the products contained the misleading labels)). Here, the advertisements at issue were in fact uniform throughout the United States, regardless of which third party retailer sold the Products. *See* Riley Decl., ¶ 6, Dkt. No. 109-11.  What's more, Judge Tomilson's Amended Report and Recommendation for Preliminary Approval notes that "Given the uniformity of the advertisements at issue, the Court finds that potential members of the instant class can be ascertained by application of an 'objective criteria,' namely, whether the individual purchased the Products on or after April 25, 2011. Self-identification constitutes an adequate substitute for 'proof of purchase' under these circumstances." Dkt. No. 119 at 25.

**B.  The Proposed Class Meets the Requirements of Rule 23(b)(2)[3]**

Certification under Rule 23(b)(2) is appropriate where a defendant has acted on "grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  "A class seeking monetary damages may be certified pursuant to Rule 23(b)(2) where [monetary] relief is 'merely incidental to [the] primary claim for injunctive relief.'"  *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1195 (9th Cir. 2001) (citing *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986)).

Plaintiffs' claims for restitution are "incidental" to the Complaint's primary claims for various forms of injunctive relief.  *Dukes*, 131 S.Ct. at 2557.  Plaintiffs' primary claims relating to removing the Products from the market, or to relabel them, are primarily equitable in nature.  *See* FAC.  Plaintiffs and the Class' claims for restitution were secondary in that any compensation would have flowed directly out of Defendant's alleged misrepresentations or omissions.  *See Dukes*, 131 S.Ct. at 2559

---

[3] The Settlement contemplates that the Class will be certified under Rule 23(b)(3) or Rule 23(b)(2), or both.

(stating that damages are incidental when they "flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief.") (citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998)).  Plaintiffs' basis for seeking modification to the Products' packaging, or to have the Products cease circulation in the marketplace, also flow directly from the basis of Defendant's alleged liability to the Class as a whole: the Products' allegedly false and deceptive marketing.

Further, if Defendant's labeling conduct was unlawful as to one Plaintiff, it was unlawful as to the entire Class.  *Id.* at 2557 (stating Rule 23(b)(2) injunctive relief is appropriate when defendant's conduct is unlawful "as to all of the class members" and applies "when a single injunction or declaratory judgment would provide relief to each member of the class," thereby benefitting each Class Member equally).  Here, Revlon's agreement to discontinuance of the DNA Advantage Products will afford relief to each Member of the Class and benefit the Class equally.  This Court should, therefore, certify the Class under Rule 23(b)(2) for settlement purposes.  For settlement purposes only, Defendant does not object to a finding that the class should be certified under Rule 23(b)(2).  Sett. Agmt. § III (A).

**C.  The Proposed Class Meets the Requirements of Rule 23(b)(3)**

Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action."  7A C.A. Wright, A.R. Miller, & M. Kane, Federal Practice & Procedure §1777 (2d ed. 1986)).  Rule 23(b)(3) certification requires that: (i) questions of law or fact common to the class predominate over questions affecting only individual members; and (ii) a class action is superior to resolution by other available means.  Fed. R. Civ. P. 23(b)(3).  For settlement purposes only, Defendant does not object to a finding that the class should be certified under Rule 23(b)(3).  Sett. Agmt. § III (A).

13

### i. Predominance

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.* at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York,* 228 F.R.D. 487, 502 (S.D.N.Y. 2005). The predominance requirement "is designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Frank,* 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623). The predominance requirement "does not require that all questions of law or fact be common; it only requires that the common questions predominate over individual questions." *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981).

Here, Plaintiffs would have to prove that the Products' labeling is false and deceptive before any remedy can be achieved.  *See* N.Y. Gen. Bus. Law §§ 349-350; Cal. Civ. Code 1750; Cal. Bus. & Prof. Code §§ 17200, 17500.  As discussed above, for purposes of a Settlement Class, the same common questions relevant to the Rule 23(a)(2) analysis predominate, including whether Revlon misrepresented the effectiveness and nature of the Products sold in the United States; whether the claims were material to consumers who purchased the Products, and whether purchasers paid more than they otherwise would have been willing to pay if the Products had been labeled differently. Therefore, predominance is satisfied.

### ii. Superiority

Class treatment is also the superior means to adjudicate Plaintiffs' claims.  The Court should certify the Settlement Class if it finds that a "class action is superior to other available methods for

fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Green* v. *Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Settlement Class certification is superior where individual claims are small or modest. *In re Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 49 (E.D.N.Y 1997). Settlement Class treatment here will facilitate the favorable resolution of all Settlement Class Members' claims. Given the large numbers of Settlement Class Members and the multitude of common issues present, the class device is also the most efficient and fair means of adjudicating these claims. Class treatment in the settlement context is superior to multiple individual suits or piecemeal litigation because it greatly conserves judicial resources and promotes consistency and efficiency of adjudication. Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of many thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3).

In addition, each Class Member's claim, individually, is of relatively low value. As a practical matter, absent the use of the settlement class action device, it would be too costly and inefficient for any individual plaintiff to finance a lawsuit asserting such claims through trial and appeal. For these reasons, the superiority requirement is easily satisfied.

## V.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE GRANTED FINAL APPROVAL BY THE COURT

Final approval of the Settlement is appropriate here because it is procedurally and substantively fair, adequate and reasonable. *See* Fed. R. Civ. P. 23(e)(2). To determine whether to approve a settlement, "'[c]ourts examine procedural and substantive fairness in light of the 'strong judicial policy in favor of settlement' of class action suits.'" *Tiro v. Public House Invs.*, LLC, 2013 WL 4830949, at *5 (S.D.N.Y. Sept. 10, 2013) (quoting *Matheson v. T-Bone Rest., LLC*, 2011 WL 6268216, at *4 (S.D.N.Y. Dec. 13, 2011)). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v.*

*Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted).

Importantly, courts and public policy considerations favor settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. "The compromise of complex litigation is encouraged by the courts and favored by public policy," and is particularly encouraged for the compromise of class actions. *Id.* at 117 (internal quotations omitted). If the settlement was achieved through arm's-length negotiations by experienced counsel, "[a]bsent fraud or collusion ... [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

**A.  The Proposed Settlement is Procedurally Fair**

The circumstances surrounding the Settlement support the finding that the Settlement is procedurally fair. Courts examining the procedural fairness of a settlement do so "in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at *6 (E.D.N.Y. Sept. 25, 2009) (internal quotation marks omitted).

The negotiations leading to the Settlement were conducted by highly qualified counsel, who respectively sought to obtain the best possible result for their clients. The Settlement, reached after approximately two years of litigation and arms'-length negotiations among the parties and their counsel, was informed by the exchange of significant information throughout the discovery and settlement process. Marron Decl., ¶¶ 26-36. In such situations, courts, including the Second

Circuit, adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11:41 (4th ed. 2002); *see also McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) ("We have recognized a presumption of fairness, reasonableness, and adequacy as to the settlement where a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. Such a presumption is consistent with the strong judicial policy in favor of settlements, particularly in the class action context.") (alteration in original) (citation and internal quotation marks omitted).

## B.  __The Proposed Settlement is Substantively Fair__

In addition to being procedurally fair, the Settlement is also substantively fair, reasonable, and adequate. "Courts in the Second Circuit evaluate the substantive fairness, adequacy, and reasonableness of a settlement according to the factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)." *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012). The nine *Grinnell* factors include: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Id.* at *4 (quoting *Grinnell*, 495 F.2d at 463) (alteration in original). However, in reviewing and approving a settlement, "a court need not conclude that all of the *Grinnell* factors weigh in favor of a settlement," rather courts

"should consider the totality of these factors in light of the particular circumstances." *Id.* Here, the *Grinnell* factors weigh in favor of final approval.

### 1. Factor One: Given The Complexity, Expense And Likely Duration Of The Litigation, Final Approval Is Appropriate

The first factor requires the Court to consider "the complexity, expense and likely duration of the litigation." *Id.* (quoting *Grinnell*, 495 F.2d at 463). This factor weighs in favor of final approval.

Here, the settlement negotiations took place between counsel for the Parties and involved the services of a competent, experienced, and independent jurist, the Honorable Peter Lichtman (Ret.). Plaintiffs had two independent law firms – the Law Offices of Ronald A. Marron, APLC and the Law Office of Jack Fitzgerald, PC – representing their interests and the interests of the putative and certified Classes; Defendant is represented by Patricia Glaser and Sean Riley of Glaser Weil and Nelson Boxer of Petrillo Klein & Boxer, LLP . The fact that the Settlement was prompted by an experienced judge is one factor that demonstrates the Settlement was anything but collusive.

The initial Mediation was followed by months of detailed and adversarial negotiations between the Parties plus the filing of expert reports on both sides, with overall negotiations lasting approximately six months before the Settlement Agreement was finalized. Marron Decl. ¶¶ 26-36; see also Fitzgerald Decl. ¶¶ 2, 4. The material settlement terms were not reached before both sides' counsel thoroughly investigated and researched the relevant facts and law, including reviewing over 100,000 pages of discovery produced by Defendant, and after retaining and reviewing expert reports produced by both sides. *See id*.

Indeed, this litigation has been pending for close to three years, and involves complex legal and factual issues. The parties have engaged in extensive discovery, including written discovery, the production and review of over one hundred thousand pages of documents, discovery disputes,

third party discovery, and party depositions. Marron Decl. ¶¶ 26-36; see also Fitzgerald Decl. ¶¶ 2, 4. The next step in the litigation would have been expert discovery and contested motions for class certification and summary judgment, all of which would be costly and time-consuming for the parties and the Court. Assuming the Court would certify a class and Plaintiff would defeat all dispositive motions, the risks of maintaining class action status through trial and establishing liability with expert testimony at trial would be significant. In a battle of experts, it is virtually impossible to predict with any certainty which expert's testimony would be credited and accepted by the jury. Even if Plaintiffs prevailed on the issue of liability, there would still be risks in establishing monetary damages. Plaintiffs would then have to defend any successful outcome from appellate review. The experience of Class Counsel has taught that the above-described factors can make the outcome of this action extremely lengthy and uncertain.  The Settlement, on the other hand, permits a more prompt resolution of this action on terms that are amply fair, reasonable, and adequate to the Class. This resolution will likely be accomplished in less time than if the case were litigated through trial and/or appeals.

Simply put, "[l]itigation through trial would be complex, expensive, and long." *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *3 (E.D.N.Y. Nov. 16, 2012). The Settlement satisfies the first *Grinnell* factor.

### 2.   Factor Two: The Class's Favorable Reaction To The Settlement

With the second *Grinnell* factor, the Court judges "the reaction of the class to the settlement." *In re Vitamin C Antitrust Litig*, 2012 WL 5289514, at *4 (quoting *Grinnell*, 495 F.2d at 463). "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotation marks omitted). This "significant" factor thus weighs heavily in favor of final approval.

19

To date, 55,683 total claims have been submitted by prospective members of the Settlement Class. Marron Decl., ¶ 3 & Ex. 2.  The amount of claims submitted already exceeds the $400,000 that is available in relief. Marron Decl., ¶ 3 & Ex. 2; Sett. Agmt. §§ III (D), (E)(7).  However, The Court should consider that class members still received a makeup product, even if the Products allegedly did not provide any "DNA Advantage."  Documents uncovered during discovery showed that the premium pricing Revlon itself assigned to the DNA Advantage advertising amounted to an increased price per package of about 7% per package, or approximately $1 for a $15 purchase. Fitzgerald Decl. ¶ 2.  Here, the Settlement provides $3 per package to class members, or triple the expected trial result.  Since the premium price attributable to the allegedly false advertising is the most the class could have received at trial, and the Settlement trebles that amount, the result is favorable to the class.  This positive reaction to the Settlement weighs heavily in favor of final approval and supports the "presumption of fairness." *See, e.g., Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah*, 2012 WL 5874655, at *4 ("'The fact that the vast majority of class members neither objected nor opted out is a strong indication' of fairness.") (quoting *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008)).

### 3.   Factor Three:  Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case

The third factor, "the stage of the proceedings and the amount of discovery completed," also weighs in favor of final approval. *In re Vitamin C*, 2012 WL 5289514, at *4 (quoting *Grinnell*, 495 F.2d at 463). "Extensive discovery ensures that the parties have had access to sufficient material to evaluate their case and to assess the adequacy of the settlement proposal in light of the strengths and weaknesses of their positions." *MetLife,* 689 F. Supp. 2d at 333-34 (citation omitted).

The efforts made by counsel on both sides confirms that they were sufficiently well apprised of the facts of this action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the proposed Settlement. "The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) (internal quotation omitted). Because "[t]he parties have completed enough discovery to recommend settlement[,]" the answer to that question is undeniably "yes." *Massiah*, 2012 WL 5874655, at *4 (internal quotation marks omitted).

Here, Class Counsel identified and conducted an extensive investigation as to the claims arising from Revlon's manufacture, distribution, and advertising of the Products. Thereafter, the parties conducted substantial discovery, including the exchange of written discovery. Responses to the written discovery requests, including verified interrogatories, were served in accordance with the schedule set by the Court.  Additionally, Plaintiffs reviewed over 100,000 pages of documents produced by Revlon, including highly confidential documents.  Marron Decl. ¶ 26; Fitzgerald Decl. ¶ 2.  And, expert reports were exchanged, showing vigorous opposition between the parties.[4]

---

[4] The efforts made by counsel on both sides confirms that they are sufficiently well apprised of the facts of this action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the proposed settlement.  "The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating."  *Torres v. Gristede's Operating Corp.*, Nos. 04-CV-3316, 08-CV- 8531, 08-CV-9627 (PAC), 2010 U.S. Dist. LEXIS 139144, at *16 (S.D.N.Y. Dec. 21, 2010) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotation marks omitted). The discovery conducted in this matter clearly traverses this hurdle. Therefore, this *Grinnell* factor also weighs in favor of final approval.

**4. Factors Four, Five and Six: The Continued Litigation Risks Related To Establishing Liability, Damages, And Maintaining A Class Action Through Trial Support Settlement**

"The fourth, fifth, and sixth *Grinnell* factors all relate to continued litigation risks," *i.e.*, the risks of establishing liability, damages and maintaining the class action through trial. *In re Vitamin C*, 2012 WL 5289514, at \*5. "'Litigation inherently involves risks.'" *Willix v. Healthfirst, Inc.*, 2011 WL 7584862, at \*4 (E.D.N.Y. Feb. 18, 2011) (quoting *In re PaineWebber*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997)). "One purpose of a settlement is to avoid the uncertainty of a trial on the merits." *Id.*

Prior to agreeing on the Settlement terms, the Court had not yet certified this case as a class action. If the Court certified a class, Revlon would likely have challenged the certification ruling pursuant to a Rule 23(f) petition, and subsequently could have moved to decertify, forcing another round of briefing. There is, "no assurance of obtaining class certification through trial, because a court can re-evaluate the appropriateness of certification at anytime [sic] during the proceedings." *Bellifemine v. Sanofi-Aventis US. LLC*, 2010 WL 3119374, at \*4 (S.D.N.Y. 2010); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998) ("[I]f insurmountable management problems were to develop at any point, class certification can be revisited at any time.").

If Plaintiffs were able to successfully move for class certification, and subsequently avoid appellate review pursuant to a Rule 23(f) petition, and defeat Defendant's attempts to decertify the class, he would still have to bear the risk of proving the merits of the case. Even if liability were established, Plaintiffs would still have to prove damages on a classwide basis. Although reliable and convincing expert testimony can be offered on the liability and damages questions, victory is by no means assured. It is possible that in the unavoidable "battle of the experts" that a jury might disagree with the Class's expert, find Defendant's expert more persuasive, or agree with the

Class's expert but award a reduced amount of damages to the Class. *See In re PaineWebber Ltd. Partnerships Litig.,* 171 F.R.D. 104, 129 (S.D.N.Y.)*, aff'd sub nom. In re PaineWebber Inc. Ltd. Partnerships Litig.,* 117 F.3d 721 (2d Cir. 1997) ("The issue would undoubtedly devolve into a battle of experts whose outcome cannot be accurately ascertained in advance."). Risk, expense, and delay permeate such a process. The proposed Settlement eliminates this risk, expense, and delay.

Moreover, this case involved complex issues of scientific efficacy of the DNA Advantage Products, consumer reactions to same, and the amount of alleged loss attributable to the challenged advertising.  Revlon firmly contends its Products are not falsely or deceptively advertised, and that its experts showed that extensive individual issues predominated.  Defendant maintains its expert reports clearly show certification would not have been maintainable, and that the merits could not be won. By way of example and without limitation, Revlon presented three rebuttal expert reports on November 16, 2015 opining in detail that, among other matters, no uniform class wide approach existed to survey consumer purchasing decisions or to calculate damages related to the DNA Advantage products.   In addition and without limitation, these reports detailed extensive individualized fact issues bearing upon surveying consumers, the consumers' purchasing decisions, consumers varied exposure to labelling and advertising and pricing.  (Riley Decl. ¶ 8. Dkt. No. 109-11).[5]  In the context of this litigation, Plaintiffs and the Class face risks and further litigation will only

---

[5] Although Plaintiffs believe their case is strong, it is not without risk. Plaintiffs recognize that Defendant has factual and legal defenses that, if successful, could potentially defeat or substantially impair the value of Plaintiffs' claims.  For example, Plaintiffs might not be able to: (1) satisfy their burden of demonstrating that the Products are ineffective for everyone, as necessary for a warranty cause of action; (2) overcome the fact that certain claims may be preempted; or (3) retain class certification through trial.  In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177

Case 2:14-cv-02484-JS-AKT   Document 124-1   Filed 07/07/17   Page 32 of 34 PageID #: 1834

delay relief to the Class Members. The proposed Settlement, however, alleviates these risks and provides a monetary benefit to the Class in a timely fashion that minimizes any significant commitment of future resources by the parties and the Court.  Accordingly, the fourth, fifth, and sixth Grinnell factors weigh in favor of final approval of the Settlement.

### 5.  Factor Seven: Defendant's Ability to Withstand A Greater Judgment

Regarding the seventh factor, the Court considers Revlon's ability "to withstand a greater judgment." *In re Vitamin C*, 2012 WL 5289514, at \*4 (quoting *Grinnell*, 495 F.2d at 463). Revlon probably could withstand a greater judgment. However, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000)); *In re Vitamin C*, 2012 WL 5289514, at \*6 ("'[A]gainst the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement.'") (quoting *Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009)). Thus, this factor is neutral.

### 6.  Factors Eight and Nine: The Range Of Reasonableness Of The Settlement In Light Of The Best Possible Recovery

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186 (internal quotation marks omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the

---

(internal quotation marks omitted).   Defendant's motion to dismiss struck Plaintiffs claims for mislabeling under the FDCA, removed the Powder Products' claims, eliminated the claims for injunctive relief and dismissed with prejudice nine causes of action.  Defendant believes they would have won at trial and that the case would not be certified.  Riley Decl. ¶ 10, Dkt. No. 109-11.

concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972), *cert. denied*, 409 U.S. 1039 (1972)). Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. As the Second Circuit stated in *Grinnell*, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." 495 F.2d at 455 n.2.

Here, the Settlement Amount is more than reasonable in light of the potential recovery. Each Class Member will receive up to $3 per purchase (limit on 3 purchases without a receipt), which represents *three times* the estimated premium price that Revlon itself determined applied to the "DNA Advantage"-specific advertising.  Fitzgerald Decl. ¶ 2.  Class members did receive makeup for their purchases, and therefore a full refund would not have been achievable at trial. *See id.*  Further, given the units sold (approximately 3 million), the QSF establishes sufficient monies to reimburse purchasers of the Products throughout the United States for the premium price garnered:  Plaintiffs' expert calculated the class's damages at no more than $2.8 million. Thus, the Settlement is basically one-third of maximum damages after trial.   In addition, Revlon is discontinuing the advertising entirely and discontinuing sales of the Products, which provides significant injunctive relief to the Settlement Class.  Sett. Agmt. § III (C)

## VI.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request this Court grant final approval of the class action settlement.

Respectfully submitted,


Dated: July 7, 2017                    */s/ Ronald A. Marron*
                                       **LAW OFFICES OF RONALD A. MARRON, APLC**
                                       RONALD A. MARRON (pro hac vice)
                                       *ron@consumersadvocates.com*
                                       651 Arroyo Drive
                                       San Diego, California 92103
                                       Telephone: (619) 696-9006
                                       Facsimile: (619) 564-6665


                                       */s/ Jack Fitzgerald*
                                       **THE LAW OFFICE OF JACK FITZGERALD, PC**
                                       JACK FITZGERALD (SBN 4294401)
                                       *jack@jackfitzgeraldlaw.com*
                                       THOMAS A. CANOVA (SBN 2108119)
                                       *tom@jackfitzgeraldlaw.com*
                                       3636 Fourth Avenue, Suite 202
                                       San Diego, California 92103
                                       Phone: (619) 692-3840
                                       Fax: (619) 362-9555


                                       ***Attorneys for Plaintiffs and the Proposed Class***