# IN THE UNITED STATES COURT

# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNE ELKIND and SHARON ROSEN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>REVLON CONSUMER PRODUCTS CORPORATION,<br><br>Defendant. | Case No. 2:14-cv-02484-JS-AKT<br><br>Magistrate Judge: Hon. A. Kathleen Tomlinson |

## DECLARATION OF RONALD A. MARRON
## IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
## CLASS ACTION SETTLEMENT

I, Ronald A. Marron, declare as follows:

1. I am counsel of record for Plaintiffs and the putative class in this action. I am a member in good standing of the State Bar of California; the United States District Courts for the Northern, Central, Eastern, and Southern Districts of California; and the United States Court of Appeals for the Ninth Circuit. I am admitted *pro hac vice* to this Court for purposes of this action. I submit this declaration in support of an Order granting preliminary approval of a class action settlement in this case. I make this Declaration based on personal knowledge and if called to testify, I could and would competently testify to the matters contained herein.

2. Attached hereto as **Exhibit 1** is a true and correct copy of the Settlement Agreement in this case.

3. Attached hereto as **Exhibit 2** is a true and correct copy of the "Revlon DNA Advantage Settlement Project Summary" that was provided to Class Counsel by Dahl Administration showing that 55,683 total claims have been filed by members of the prospective Settlement Class through June 29, 2017 and that the Settlement Website has received 76,037 unique visitors.

4. Attached hereto as **Exhibit 3** is a true and correct copy of my firm's current resume.

## Ronald A. Marron Firm's Qualifications and Experience
## Prosecuting Consumer Class Action Lawsuits

5. My work experience and education began in 1984 when I enlisted in the United States Marine Corps (Active Duty 1984-1988, Reserves 1988-1990) and thereafter received my Bachelor of Science in Finance from the University of Southern California (1991). While attending Southwestern University School of Law (1992-1994), I also studied Biology and Chemistry at the University of Southern California and interned at the California Department of

1

Corporations with emphasis in consumer complaints and fraud investigations. I was admitted to the State Bar of California in January of 1995 and have been a member in good standing since that time. In 1996, I started my own law firm with an emphasis in consumer fraud. My firm currently employs five full-time attorneys, two paralegals, and support staff.

6. Over the years I have acquired extensive experience in class actions and other complex litigation and have obtained large settlements as lead counsel. In recent years, I have devoted most of my practice to the area of false and misleading labeling of food, dietary supplements, cosmetics, and over-the-counter ("OTC") drug products.

7. My firm has an in-depth knowledge of litigating OTC product cases, including the FDCA's history, principles, and regulation. For example, in *Gallucci v. Boiron, Inc.*, Case No. 3:11-CV-2039 JAH NLS (S. D. Cal.), we drafted a Complaint with five potential causes of action, and claims under the CLRA, UCL, and FAL with respect to OTC homeopathic drugs which "concern[ed] novel legal theories in a specialized area of law." *See Delarosa v. Boiron, Inc.,* 275 F.R.D. 582, 590 n. 4 (C.D. Cal. 2011). This action involved extensive motion practice and my firm's opposition brief was so persuasive that defendants decided to withdraw their motion. My firm's well-drafted briefing, knowledge, and experience resulted in a $5 million common fund plus injunctive relief settlement of *Gallucci* against French homeopathic giant, Boiron, Inc. On April 25, 2012, the Honorable John A. Houston granted preliminary approval, noting that:

> During the pendency of the Litigation, Class Counsel conducted an extensive examination and evaluation of the relevant facts and law to assess the merits of the named plaintiffs' and class claims to determine how best to serve the interests of Plaintiffs and the Class. . . . Class Counsel conducted thorough review of the Food, Drug and Cosmetic Act, its numerous changes over the years, and the Act's implementing regulations. Class Counsel have carefully considered the merits of Plaintiffs' claims, and the defenses raised by defendants. *Gallucci* Dkt. No. 89 at i.

8. Accordingly, Judge Houston appointed my firm as Class Counsel, finding that Class Counsel "will fairly and adequately protect the interests of the Class . . . [and] are experienced and competent to prosecute this matter on behalf of the Class." *Id.* at iii-iv. The Fairness Hearing was held on October 1, 2012 and on October 31, 2012, the court granted final approval. *See Gallucci v. Boiron, Inc.*, 2012 U.S. Dist. LEXIS 157039 (S.D. Cal. Oct. 31, 2012).

9. In addition to the present action, my firm is litigating numerous other cases involving OTC products, such as drugs, cosmetics, diet products, and dietary supplements:

- *Allen v. Similasan Corp.*, Case No. 3:12-cv-376 BTM (WMC) (S.D. Cal.) (over-the-counter drugs) (recently settled)

- *Garcia v. Iovate*, Case No. 1402915 (Santa Barbara Superior Court) (weight loss pills)

- *Hammock v. Nutramarks, Inc.*, Case No. 3:15-cv-2056 BTM NLS (S.D. Cal.) (over-the-counter drugs)

- *Mugrave v. Quincy Bioscience, LLC*, Case No.: 3:15-cv-04505-HSG (N.D. Cal.) (dietary supplements) (recently settled)

- *Ortega v. Natural Balance, Inc. (sub nom Lambert v. Nutraceutical Corp.)*, CASE NO. 2:13-cv-05942-AB-E, Ninth Cir. Case No. 15-56423 (male aphrodisiac pills)

- *Reid v. GMC Skin Care USA, Inc.*, Civ. Action No. 8:15-cv-277 (BKS/CFH) (N.D. N.Y.) (cosmeceuticals)

- *Woodard v. Labrada*, Case No. 5:16−cv−00189−JGB−SP (C.D. Cal.) (weight loss herbal supplements)

10. On October 31, 2013, the Honorable Gonzalo P. Curiel of the United States District Court for the Southern District of California granted preliminary approval to a class action

3

settlement of $1 million and injunctive relief for class wide claims of false and deceptive advertising of OTC drugs negotiated by my firm in *Mason v. Heel, Inc.*, Case No. 3:12-cv-3056 GPC (KSC) (Dkt. No. 27), also finding there was "sufficient basis . . . under the factors set forth in Rule 23(g)(1) of the Federal Rules of Civil Procedure" to appoint my firm as Class Counsel. *Id.* at p. 5. The final approval hearing was March 7, 2014, and the court thereafter granted final approval to the settlement, after reaffirming my firm's appointment as Class Counsel (Dkt. Nos. 37 & 38).

11.   On October 23, 2013, the Honorable Michael M. Anello of the United States District Court for the Southern District of California granted final approval to a $1.2 million and injunctive relief class action settlement concerning false and deceptive advertising of OTC drugs negotiated by my firm in *Nigh v. Humphreys Pharmacal, Inc.*, Case No. 3:12-cv-02714-MMA-DHB (Dkt. No. 30), finding that "the Class was adequately represented by competent counsel." *Id.* at p. 14.

12.   On March 13, 2012, my firm settled a case against manufacturers of OTC dietary supplement products for $900,000 in a common fund plus injunctive relief, styled *Burton v. Ganeden Biotech, Inc. et al.*, Case No. 3:11-cv-01471 W (NLS) (S.D. Cal.). Burton alleged that defendants falsely advertised their products as containing "clinically proven" proprietary bacteria that improved and benefitted the digestive and immune health of individuals when, in fact, no clinical proof existed. Before this settlement was finalized, my firm rejected defendants' coupon settlement offer, because we did not believe it constituted the best relief for the class members. Instead, we continued extensive and lengthy rounds of negotiations with the defendants to obtain the best result for the class. These months-long negotiations included back and forth exchange of approximately twenty editions of the Settlement Agreement, multiple conference calls (including

on the weekends) and e-mails. On March 14, 2012, the parties filed a Joint Motion for Preliminary Approval of Settlement, (Dkt. No. 38) which the court granted on April 16, 2012 (*Id*. at 42). After the Fairness Hearing in this case on August 21, 2012, Judge Whelan granted final approval on October 5, 2012. Dkt. Nos. 48, 52.

13.     On March 1, 2012, the Honorable Janis L. Sammartino appointed my firm Interim Class Counsel in an action styled *Margolis v. The Dial Corporation*, currently pending in the United States District Court Southern District of California, Case No. 3:12-cv-288 JLS (WVG) (Dkt. No. 14). This case involves an OTC pheromone soap product that its manufacturer alleges enhances a man's sexual attraction to women.

14.     When my firm was appointed Interim Lead Class Counsel for a class of consumers in a deceptive food labeling case back in March of 2011, the Honorable Marilyn Huff recognized Class Counsel "appears to be well qualified to represent the interest of the purported class and to manage this litigation." *Hohenberg v. Ferrero U.S.A., Inc.*, 2011 U.S. Dist. LEXIS 38471, at *6 (S.D. Cal. Mar. 22, 2011). Subsequently, when my firm obtained certification of the proposed class, this court reaffirmed its finding that my firm is adequate Class Counsel. *See In re Ferrero Litig.*, 278 F.R.D. 552, 559 (S.D. Cal. 2011). Judge Huff gave Final Approval of a settlement establishing a $550,000 monetary relief fund for the class on July 9, 2012, with attorney's fees paid separately. (*Ferrero* Dkt. No. 127).

15.     On November 14, 2011 my firm obtained the certification of a nationwide class of consumers who purchased Qunol CoQ10, a dietary supplement making misleading efficacy claims. *See Bruno v. Quten Research Inst., LLC*, 2011 U.S. Dist. LEXIS 132323 (C.D. Cal. Nov. 14, 2011). My firm then successfully defeated the defendants' motion to decertify the class following the Ninth Circuit's decision in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir.

2012). *See Bruno v. Eckhart Corp.*, 2012 U.S. Dist. LEXIS 30873 (C.D. Cal. Mar. 6, 2012). The case settled, on the eve of trial (originally scheduled for October 2, 2012).

16. On June 14, 2011, the Honorable Richard Seeborg appointed my firm Interim Class Counsel, over a competing application from a former partner at the New York law firm Milberg Weiss regarding a deceptive food labeling case. *See Chacanaca v. Quaker Oats Co.*, 2011 U.S. Dist. LEXIS 65023, at *8-9 (N.D. Cal. June 14, 2011) (since restyled as *In re Quaker Oats Labeling Litig.*) ("There is no question here that both the Weston/Marron counsel . . . have ample experience handling class actions and complex litigation. It is also clear that both have particular familiarity with suits involving issues of mislabeling in the food industry.")

17. I was appointed class counsel in *Peterman v. North American Company for Life and Health Ins., et al.*, No. BC357194, (L.A. Co. Sup. Ct.), which was litigated for over 4 years and achieved a settlement of approximately $60 million for consumers. In granting preliminary approval of the settlement, the Hon. Carolyn B. Kuhl noted that "the excellent work that the plaintiffs' side has done in this case has absolutely followed through to the settlement . . . The thought and detail that went into the preparation of every aspect was very impressive to me."

18. I also served as class counsel in *Clark v. National Western Life Insurance Company*, No. BC321681 (L.A. Co. Sup. Ct.), a class action that, after litigating the case for well over 6 years, resulted in a settlement of approximately $25 million for consumers.

19. In *Iorio v. Asset Marketing*, No. 05cv00633-IEG (CAB) (S.D. Cal.), I was appointed class counsel on August 24, 2006, following class certification, which was granted on July 25, 2006 by the Honorable Irma E. Gonzalez. Dkts. Nos. 113 and 121.

20. After nearly 6 years of intensive litigation, a settlement valued at $110 million was reached in *Iorio*, *supra*, and approved on March 3, 2011, by the Honorable Janis Sammartino. Dkt.

6

No. 480. Co-counsel and I successfully defended multiple motions brought by defendant in the Southern District of California, including "challenges to the pleadings, class certification, class decertification, summary judgment, . . . motion to modify the class definition, motion to strike various remedies in the prayer for relief, and motion to decertify the Class' punitive damages claim," plus three petitions to the Ninth Circuit, attempting to challenge the Rule 23(f) class certification. *Iorio*, Final Order Approving (1) Class Action Settlement, (2) Awarding Class Counsel Fees and Expenses, (3) Awarding Class Representatives Incentives, (4) Permanently Enjoining Parallel Proceedings, and (5) Dismissing Action with Prejudice, entered on Mar. 3, 2011, at 6:9-15 (commenting that class counsel were "highly experienced trial lawyers with specialized knowledge in insurance and annuity litigation, and complex class action litigation generally" and "capable of properly assessing the risks, expenses, and duration of continued litigation, including at trial and on appeal," *id*. at 7:18-22). Judge Sammartino also noted "the complexity and subject matter of this litigation, and the skill and diligence with which it has been prosecuted and defended, and the quality of the result obtained for the Class." *Id*. at 17:25-27.

21. In *Tabares v. Equitrust Life Ins. Co.,* No. BC390195 (L.A. Co. Sup. Ct.), my firm obtained a class certification order and was appointed class counsel.

22. In *Vaccarino v. Midland National Life Insurance Co.,* Case No. 2:11-cv-05858 CAS (MANx) (C.D. Cal.), my firm was appointed class counsel on February 3, 2014, after the court certified a class of annuity purchasers. On September 22, 2014, the court granted final approval to a class action settlement that achieved a settlement of approximately $5.55 million for consumers, including *cy pres* relief to the Congress of California Seniors.

23. I am currently counsel in a number of additional putative class actions and complex cases, including, but not limited to:

7

- *In re Gerber Probiotic Sales Practices Litig.*, Case No. 2:12-cv-00835 JLL (MAH) (D.N.J.) (food labeling case)

- *Murphy v. Idea Village Prods. Corp.*, Case No: 15-cv-1638 AB(DTBx) (false and deceptive advertising case re: copper-infused compression apparel)

- *Red v. Kraft*, Case No. 2:10-cv-01028 GW (AGR) (C.D. Cal.) (food labeling case)

- *Sanchez v. Allianz Life Ins. Co.*, Case No. Case No.: BC594715 (Los Angeles Superior Court) (alleged fraud in sales of annuities)

24. On January 4, 2016, the Honorable Analisa Torres of the Southern District of New York appointed the Marron firm as Interim Lead Class Counsel over the opposition and challenge of other plaintiffs' counsel, in a case alleging false and deceptive advertising of copper-infused compression apparel. *Potzner v. Tommie Copper Inc.*, No. 15 CIV. 3183 (AT), 2016 WL 304746, at *1 (S.D.N.Y. Jan. 4, 2016). In making the appointment, Judge Torres praised the Marron firm's "detailed" complaint, noting it was "more specifically pleaded, . . . assert[ing] a more comprehensive set of theories . . . [and was] more factually developed." Judge Torres also noted that Mr. Marron and his firm's attorneys had "substantial experience litigating complex consumer class actions, are familiar with the applicable law, and have the resources necessary to represent the class." *Id.*

25. Besides these cases, I have also represented plaintiffs victimized in other complex cases such as Ponzi schemes, shareholder derivative suits, and securities fraud cases. I have litigated hundreds of lawsuits and arbitrations against major corporations; of these, approximately 30 cases against the likes of, such corporate titans as Shell Oil, Citigroup, Wells Fargo, Morgan Stanley and Merrill Lynch have gone through trial or arbitration. Many more have settled on the eve of trial so that I was fully prepared to proceed to trial.

26. In the course of this litigation and for purposes of settlement, Defendant produced and Plaintiffs' counsel reviewed substantial documentary evidence, including over 100,000 pages of evidence, regarding the products' sales, advertising, labeling, company finances and organization, and articles Revlon claimed supported the efficacy of the products.

27. The parties also engaged in lengthy analysis of the laws applicable to the labeling claims here, with Defendant's counsel setting forth detailed factual and legal analysis why they believed the claims on the Products fully complied with the law, and Class Counsel setting forth detailed factual and legal analysis why they believed the claims were not lawful or were false and deceptive.

28. Class Counsel also conducted a detailed and comprehensive review of FDA guidance documents regarding the Products and similar cosmetics products; the Food, Drug and Cosmetic Act (located at 21 U.S.C. §§ 301, *et seq.*) and its implementing regulations (located at 21 C.F.R. §§ 1.1, *et seq.*) (collectively, "FDCA"); the FDCA's numerous changes over the years; Federal Trade Commission advertising standards and their applicability to the Products' labeling claims at issue here; and the California Sherman Food, Drug and Cosmetic Law (Cal. Health & Safety Code §§ 109875, *et seq.*); and scientific articles purportedly supporting the Products' efficacy.

29. Further, percipient witness depositions were taken; numerous third party subpoenas served; experts retained; and expert reports exchanged.

30. The parties also attended an in-person mediation before the Honorable Peter Lichtman (Ret.) on August 27, 2015, which included counsel for the parties plus a Revlon representative.

9

31. The initial Mediation was followed by months of detailed and adversarial negotiations between the Parties. Throughout the time period of approximately six months until shortly before filing this Motion, the parties negotiated the specific terms of the settlement presently before the Court.

32. As a result, over the course of the litigation, counsel for the parties were able to obtain an in-depth understanding of the strengths and weaknesses of their clients' respective positions. Based on diligent effort, Class Counsel was aware of the attendant strengths, risks, and uncertainties of Plaintiffs' claims, and Defendant's defenses, during the course of negotiations.

33. I have 20 years' experience as an attorney, and have prosecuted numerous class action cases involving consumer claims and the laws at issue in this case. As a result, through the course of this litigation and the extensive settlement negotiations between the Parties, I have gained a clear view of the nature of this action and the likely risks and costs associated with litigating this matter through trial and appeals. To ensure adequate representation, we teamed up with the Law Office of Jack Fitzgerald, and Plaintiffs' retainers contained a 60-40 fee split for this co-counsel arrangement, which counsel agreed to and executed as did Plaintiffs. The anticipated fees called for under the Settlement are far less than the lodestar incurred, approximately one-third of that incurred by Plaintiffs' counsel to date.

34. Class Counsel agreed to settle the action pursuant to the provisions of the Settlement, after considering, among other things: (i) the benefits to Plaintiffs and the Class under the terms of the Settlement; (ii) the uncertainty of being able to prevail at trial; (iii) the uncertainty relating to Defendant's defenses and the expense of additional motion practice in connection therewith; (iv) the attendant risks, difficulties, and delays inherent in litigation, especially in complex actions such as this; and (v) the desirability of consummating this Settlement promptly

in order to provide substantive relief to Plaintiffs and the Class without unnecessary delay and expense.

35. The Settlement Agreement is the product of vigorous, adversarial, and competent representation of the Parties and substantive negotiations throughout the pendency of this litigation; contact between counsel for the Parties to commence a dialog about the merits and the risks of the claims and defenses; substantive negotiations throughout the pendency of the litigation; and the assistance of the Honorable Peter Lichtman (Ret.) in getting the parties to discuss the issues.

36. Based on my years of experience and knowledge of the facts and law at issue in this case, it is my opinion that the Settlement Agreement entered into on behalf of the proposed class and Plaintiffs in this action is fair, reasonable, and adequate.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 7th day of July 2017 in San Diego County, California.

*/s/ Ronald A. Marron*
RONALD A. MARRON

11