**IN THE UNITED STATES COURT**

**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANNE ELKIND and SHARON ROSEN, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>           v.<br><br>REVLON CONSUMER PRODUCTS CORPORATION,<br><br>      Defendant. | Case No. 2:14-cv-02484-JS-AKT<br><br>Magistrate Judge: Hon. A. Kathleen Tomlinson |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS**

---

## TABLE OF CONTENTS

I.    SUMMARY OF RELEVANT SETTLEMENT PROVISIONS ...................................... 1

II.   LEGAL STANDARD ........................................................................................ 2

III.  CLASS COUNSEL ARE ENTITLED TO ATTORNEYS' FEES AND COSTS
      UNDER APPLICABLE CALIFORNIA AND NEW YORK LAW .............................. 2

      A.  CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT REQUIRES ATTORNEYS' FEES AND
          COSTS TO BE AWARDED TO A "PREVAILING PLAINTIFF" .................................... 3

      B.  NEW YORK'S FALSE ADVERTISING LAW ENTITLES A "PREVAILING PLAINTIFF" TO
          RECOVERY OF REASONABLE ATTORNEYS' FEES .............................................. 4

      C.  PLAINTIFFS ARE "PREVAILING" AND "SUCCESSFUL" PARTIES UNDER CALIFORNIA AND NEW
          YORK LAW ...................................................................................... 4

      D.  THE SETTLEMENT PROVIDES FOR ATTORNEYS' FEES, COSTS, AND
          INCENTIVE/ENHANCEMENT AWARDS ........................................................ 5

IV.   CLASS COUNSEL'S REQUESTED FEES ARE FAIR AND REASONABLE ....... 6

      A.  CLASS COUNSEL'S REQUESTED FEES AND COSTS ARE FAIR AND REASONABLE UNDER THE
          PERCENTAGE OF THE FUND/COMMON FUND METHOD ...................................... 7

      B.  THE REQUESTED FEES AND COSTS SATISFY THE GOLDBERGER FACTORS .......... 9

          1.  The Substantial Time and Labor Expended by Class Counsel ................... 9

          2.  The Magnitude and Complexities of the Case, and Risks of Continued Litigation .... 11

          3.  The Quality of Representation, and Exceptional Benefits to the Class .................... 13

          4.  Fee Requested in Relation to the Settlement, and Public Policy Considerations ...... 15

      C.  THE REQUESTED FEES AND COSTS ARE REASONABLE UNDER A LODESTAR
          CROSS-CHECK .................................................................................. 15

          1.  Class Counsel's Hourly Rates are Reasonable, and Have Been Approved by
              Numerous Federal and State Courts ........................................................ 16

          2.  Class Counsel's Hours Expended Were Reasonable and Necessary for the Successful
              Prosecution of this Case ........................................................................ 22

V.    THE REQUESTED COSTS ARE FAIR AND REASONABLE ............................ 23

i

VI.     **THE REQUESTED ENHANCEMENT AWARDS ARE FAIR AND REASONABLE** ........................................................................................... 24

VII.    **CONCLUSION** ........................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.*,
   407 F.3d 65 (2d Cir. 2005) ................................................................. 17

*Alnutt v. Cleary*,
   27 F. Supp. 2d 395 (W.D.N.Y. 1998) ................................................. 23

*Alyeska Pipeline Serv. Co. v. Wilderness Soc.*,
   421 U.S. 240 (1975) ............................................................................ 2

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of
   Elections*, 522 F.3d 182 (2d Cir. 2008) .......................................... 16, 17

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty of Albany*,
   493 F.3d 110 (2d Cir. 2007) .............................................................. 16, 17

*Baron v. Commercial & Industrial Bank of Memphis*,
   Fed. Sec. L. Rep. (CCH) ¶ 97,132 (S.D.N.Y. 1979) ............................. 8

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ......................................................... 11

*Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*,
   480 F. Supp. 1195 (S.D.N.Y. 1979) ..................................................... 8

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
   2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ................................. 6, 15, 24

*Blum v. Stenson*,
   465 U.S. 886 (1984) .......................................................................... 16

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ......................................................................... 2, 7

*Brazil v. Dell Inc.*,
   2012 WL 1144303 (N.D. Cal. Apr. 4, 2012) ...................................... 14

*Bruno v. Quten Research Inst., LLC*,
   2013 WL 990495 (C.D. Cal. Mar. 13, 2013) ...................................... 20

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007) ............................................................. 6, 7

iii

*Champion Produce, Inc. v. Ruby Robinson Co.*,
  342 F.3d 1016 (9th Cir. 2003) ................................................................................. 2

*Cioffi v. New York Community Bank*,
   465 F. Supp. 2d 202 (E.D.N.Y. 2006) ................................................................. 23

*Clark v. Cameron-Brown Co.*,
   Fed. Sec. L. Rep. (CCH) ¶ 98,014 (M.D.N.C. 1981) .......................................... 8

*DiSorbo v. City of Schenectady*,
   2004 WL 115009 (N.D.N.Y. Jan. 9, 2004) ......................................................... 23

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ......................................................................... 8

*Gallucci v. Boiron, Inc.*,
   2012 WL 5359485 (S.D. Cal. Oct. 31, 2012) ................................................ 20, 21

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) .......................................................................... *passim*

*Graciano v. Robinson Ford Sales, Inc.*,
   144 Cal. App. 4th 140 (2006) ............................................................................... 4

*Graham v. DaimlerChrysler Corp.*,
    34 Cal. 4th 553 (2004) ......................................................................................... 4

*Grant v. Martinez*,
   973 F.2d 96 (2d Cir. 1992) ................................................................................. 22

*Greene v. Emersons, Ltd.*,
   Fed. Sec. L. Rep. (CCH) ¶ 93,263 (S.D.N.Y. May 20, 1987) ............................. 8

*Grodensky v. Artichoke Joe's Casino*,
   171 Cal. App. 4th 1399 (2009) ............................................................................. 4

*Hayward v. Ventura Volvo*,
   108 Cal. App. 4th 509 (2003) ............................................................................... 3

*Heng Chan v. Sung Yue Tung Corp.*,
   2007 WL 1373118 (S.D.N.Y. May 8, 2007) .................................................... 4, 22

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .......................................................................................... 5, 22

iv

*In re Agent Orange Prod. Liab. Litig.*,

    818 F.2d 226 (2d Cir. 1987) ............................................................ 17

*In re Ampicillin Antitrust Litig.*,

    526 F.Supp. 494 (D.D.C. 1981) ...................................................... 8

*In re Apple Computer, Inc. Derivative Litig.*,

    2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) ................................ 6

*In re Bluetooth Headset Prod. Liab. Litig.*,

    654 F.3d 935 (9th Cir. 2011) .......................................................... 5

*In re Consumer Privacy Cases*,

    175 Cal. App. 4th 545 (2009) ........................................................ 6

*In re Ferrero Litig.*,

    2012 WL 2802051 (S.D. Cal. July 9, 2012) .......................... 20, 21

*In re Franklin Nat'l Bank Sec. Litig.*,

    Fed. Sec. L. Rep. (CCH) ¶ 97,571 (E.D.N.Y. 1980) .................. 8

*In re Marsh ERISA Litig.*,

    265 F.R.D. 128 (S.D.N.Y. 2010) ...................................... *passim*

*In re New York City Municipal Sec. Litig.*,

    Fed. Sec. L. Rep. (CCH) ¶ 91, 419 (S.D.N.Y. 1984) ................ 8

*In re Quaker Oats Labeling Litig.*,

    2014 WL 12616763 (N.D. Cal. July 29, 2014) ........................ 20

*In re Vitamin C Antitrust Litig.*,

    2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) .......................... 24

*In re Warner Commc'ns Sec. Litig.*,

    618 F. Supp. 735 (S.D.N.Y. 1985) ................................................ 8

*Indep. Fed'n of Flight Attendants v. Zipes*,

    491 U.S. 754 (1989) ........................................................................ 5

*Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*,

    25 F. Supp. 2d 127 (E.D.N.Y. 1998) ............................................ 4

*Ingram v. Coca-Cola Co.*,

    200 F.R.D. 685 (N.D. Ga. 2001) .................................................. 6

*Johnson v. Ga. Highway Exp., Inc.*,
  488 F.2d 714 (5th Cir. 1974) ............................................................. 17

*Kanter v. Warner-Lambert Co.*,
  265 F.3d 853 (9th Cir. 2001) ............................................................... 4

*Ketchum v. Moses*,
  24 Cal. 4th 1122 (2001) ..................................................................... 12

*Kim v. Euromotors W./The Auto Gallery*,
  149 Cal. App. 4th 170 (2007) .............................................................. 3

*Luessenhop v. Clinton Cnty.*,
  558 F. Supp 2d 247 (N.D.N.Y. 2008) ................................................ 23

*Lunday v. City of Albany*,
  42 F.3d 131 (2d Cir. 1994) ................................................................... 4

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................. 8

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007) ................................................................. 8

*Maywalt v. Parker & Parsley Petroleum Co.*,
  963 F. Supp. 310 (S.D.N.Y. 1997) ...................................................... 8

*McDaniel v. Cnty. of Schenectady*,
  595 F.3d 411 (2d Cir. 2010) ............................................................... 11

*McDaniel v. Cnty. of Schenectady*,
  595 F.3d 411 (2d Cir. 2010) ................................................................. 7

*Meyer v. Sprint Spectrum L.P.*,
  45 Cal. 4th 634 (2009) ......................................................................... 3

*Mills v. Electric Auto–Lite Co.*,
  396 U.S. 375 (1970) .............................................................................. 2

*N.Y. Gaslight Club, Inc. v. Carey*,
  447 U.S. 54 (1980) ................................................................................ 5

*Nigh v. Humphreys Pharmacal Inc.*,
  2013 WL 5995382 (S.D. Cal. Oct. 23, 2013) .................................... 20

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*,

   2016 WL 1573319 (S.D. Cal. Apr. 18, 2016) ...................................................... 19

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,

   2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb. 9, 2010) ........................................ 15

*Perdue v. Kenny A. ex rel. Winn*,

   559 U.S. 542 (2010) .............................................................................................. 16

*Polk v. N.Y. State Dep't of Corr. Servs.*,

   722 F.2d 23 (2d Cir. 1983) .................................................................................... 17

*Quaratino v. Tiffany & Co.*,

    166 F.3d 422 (2d Cir. 1999) .................................................................................... 7

*Riordan v. Nationwide Mut. Fire Ins. Co.*,

   977 F.2d 47 (2d Cir. 1992) ...................................................................................... 4

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,

   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ..................................................................... 8

*Suffolk v. Long Island Lighting Co.*,

   907 F.2d 1295 (2d Cir. 1990) .................................................................................. 7

*Sylvester v. City of New York*,

   2006 WL 3230152 (S.D.N.Y. Nov. 8, 2006) ......................................................... 22

*U.S. v. Vilus*,

   419 F. Supp. 2d 293 (E.D.N.Y. 2005) ................................................................... 13

*Vaccarino v. Midland Nat. Life Ins. Co.*,

   2014 WL 4782603 (C.D. Cal. Sept. 22, 2014) ...................................................... 19

*Velez v. Novartis Pharm. Corp.*,

   2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ........................................... 7, 8, 15, 23

*Vizcaino v. Microsoft Corp.*,

   290 F.3d 1043, 1049 (9th Cir. 2002) ..................................................................... 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,

   396 F.3d 96 (2d Cir. 2005) ...................................................................................... 7

*Zinman v. Avemco Corp.*,

    Fed. Sec. L. Rep. (CCH) ¶ 96,325 (E.D.Pa. 1978) ............................................... 8

## STATUTES

21 U.S.C. §§ 301, *et seq.*.................................................................................... 10

Cal. Bus. & Prof. Code §§ 17500, *et seq.*............................................................ 17

Cal. Civ. Code § 1760 ............................................................................................ 3

Cal. Civ. Code § 1780(e) .................................................................................. 3, 24

Cal. Civ. Code §§ 1750, *et seq.*....................................................................... 2, 18

Cal. Civ. Proc. Code § 1021.5 ............................................................................... 2

Cal. Civ. Proc. Code § 1033.5 ............................................................................. 24

N.Y. Gen. Bus. L. § 350-e .................................................................................... 4

N.Y. Gen. Bus. L. §§ 350, *et seq.*........................................................................ 2

## TREATISES

4 Newberg on Class Actions (4th ed.) § 12:3 ....................................................... 6

Richard Posner, Economic Analysis of Law (4th ed. 1992).................................. 12

## REGULATIONS

21 C.F.R. §§ 1.1, *et seq.*..................................................................................... 10

Cal. Health & Safety Code §§ 109875, *et seq.* ................................................... 11

This Motion for Attorneys' Fees, Costs, and Incentive Awards ("Fee Motion") comes before the Court pursuant the Settlement (ECF No. 10),[1] Preliminary Approval Order (ECF No. 120), and the operative Scheduling Orders (ECF Nos. 121, 123), which set a Final Approval Hearing for August 1, 2017 at 10:00 a.m. in the above-entitled Court, including consideration of any application for attorneys' fees, costs, and incentive awards.  Plaintiffs/Class Representatives Anne Elkind and Sharon Rosen, by and through their undersigned counsel of record ("Class Counsel"), hereby respectfully move this Court for entry of an Order granting an award of attorneys' fees and costs to Class Counsel, as well as incentive awards to both Class Representatives of $5,000.00 each.

I.      **SUMMARY OF RELEVANT SETTLEMENT PROVISIONS**

Subsequent to the Court's granting of preliminary approval, Defendant Revlon paid $900,000.00 into a Qualified Settlement Fund ("QSF"), created and maintained by the Claims Administrator.  *See* Class Action Settlement Agreement ("Sett. Agmt.") § III(D)(1), Dkt. No. 110. Pursuant to the terms of the instant Settlement, and subject to Court approval, Defendant agreed to pay Enhancement Awards, also known as incentive or service awards, to both Class Representatives of up to $5,000.00 each, out of the QSF, as compensation for the responsibilities and work attendant to those roles, and in recognition of their service to the Class.  *Id.* § II(P), III(D)(2)(i).  The Settlement further entitles Plaintiffs to seek an award of attorneys' fees and costs for Class Counsel in the amount remaining from the QSF after satisfying all Settlement Payments to Authorized Claimants, Class Representative Enhancement Awards, and Class Notice and Administrative Expenses ("Fee Award"). *Id.* § III(D)(2)(k).  Regarding the attorneys' fees sought through this Motion, the firms comprising Class Counsel have a fee splitting agreement: Sixty percent (60%) to the Law Offices of Ronald A. Marron, APLC (the "Marron Firm"), and forty percent (40%) to the Law Office of Jack Fitzgerald, PC

---

[1] Unless otherwise noted, capitalized terms have the same meaning as in the proposed Class Action Settlement Agreement.

(the "Fitzgerald Firm"); *see also* Memo. of Law in Support of Jt. Mot. for Prelim. Approval. (Prelim. Approval Mot.), ECF No. 109-1, at 5.  Defendant shall bear its own attorneys' fees and costs.  Sett. Agmt. § III(D)(2)(k).

## II.   LEGAL STANDARD

Although the "American Rule" generally prohibits a prevailing litigant in federal litigation to recover attorneys' fees in the absence of statutory authority, "[t]here is a salient exception to this general rule that applies where an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury inflicted on the class." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 275 (1975)).  "In that situation, the attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund." *Id.* (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).  "The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Id.* (citing *Boeing Co.*, 444 U.S. at 478; *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 392 (1970)).

## III.   CLASS COUNSEL ARE ENTITLED TO ATTORNEYS' FEES AND COSTS UNDER APPLICABLE CALIFORNIA AND NEW YORK LAW

"An award of attorneys' fees incurred in a suit based on state substantive law is generally governed by state law." *See Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1024 (9th Cir. 2003).  Here, Plaintiffs invoke the following applicable California and New York fee-shifting statutes: (1) California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (2) California's Private Attorney General Statute, Cal. Civ. Proc. Code § 1021.5; and (3) New York's False Advertising Law, N.Y. Gen. Bus. L. §§ 350, *et seq.*

**A. California's Consumers Legal Remedies Act Requires Attorneys' Fees and Costs to be Awarded to a "Prevailing Plaintiff"**

Under the CLRA "the court *shall* award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section."  Cal. Civ. Code § 1780(e) (emphasis added).

> The legislative policy to allow prevailing plaintiffs reasonable attorneys' fees is clear. Section 1780 provides remedies for consumers who have been victims of unfair or deceptive business practices. The provision for recovery of attorney's fees allows consumers to pursue remedies in cases . . . where the compensatory damages are relatively modest.

*Hayward v. Ventura Volvo*, 108 Cal. App. 4th 509, 512 (2003).  "[T]he availability of costs and fees to prevailing plaintiffs is integral to making the CLRA an effective piece of consumer legislation, increasing the financial feasibility of bringing suits under the statute."  *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 644 (2009).  Thus, this provision must "be liberally construed and applied to promote [the CLRA's] underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."  *See* Cal. Civ. Code § 1760; *accord Hayward*, 108 Cal. App. 4th at 512-13 ("section 1760 expressly directs [courts] to liberally construe section 1780 to protect consumers").  "Accordingly, an award of attorney fees to 'a prevailing plaintiff' in an action brought pursuant to the CLRA is mandatory, even where the litigation is resolved by a pre-trial settlement agreement, absent an enforceable agreement to the contrary."  *Kim v. Euromotors W./The Auto Gallery*, 149 Cal. App. 4th 170, 178-79, 181 (2007).[2]

---

[2] Additionally, California Civil Procedure Code "section 1021.5 authorizes an award of attorney fees to a 'private attorney general,' that is, a party who secures a significant benefit for many people by enforcing an important right affecting the public interest."  *Serrano v. Stefan Merli Plastering Co.*, 52 Cal. 4th 1018, 1020 (2011). Fees are awarded when: (1) the action "has resulted in the enforcement of an important right affecting the public interest," (2) "a significant benefit, whether pecuniary or nonpecuiary, has been conferred on the general public or a large class of persons", and (3) "the necessity and financial burden of private enforcement . . . are such as to make the award appropriate." *Id.* (citations omitted).

**B. New York's False Advertising Law Entitles a "Prevailing Plaintiff" to Recovery of Reasonable Attorneys' Fees**

Under New York's False Advertising Law, "[t]he court may award reasonable attorney's fees to a prevailing plaintiff."  N.Y. Gen. Bus. L. § 350-e.  "A decision in this regard should take into the factors ordinarily considered by New York courts when evaluating requests for attorneys' fees, including the time and skill required in litigating the case, the complexity of issues, the customary fee for the work, and the results achieved."  *Indep. Living Aids, Inc. v. Maxi-Aids, Inc*., 25 F. Supp. 2d 127, 132 (E.D.N.Y. 1998) (citing *Riordan v. Nationwide Mut. Fire Ins. Co*., 977 F.2d 47, 54 (2d Cir. 1992)).

**C.  Plaintiffs are "Prevailing" and "Successful" Parties under California and New York Law**

Courts treat the terms "prevailing plaintiff" in the CLRA, and "successful party" in California's Private Attorneys General Statute, synonymously, because "[t]he language in the two provisions is not materially different."  *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 858 (9th Cir. 2001). "In order to effectuate" the policy underlying section 1021.5, and consistent with the construction of comparable statutes, the California Supreme Court has "taken a broad, pragmatic view of what constitutes a 'successful party.'"  *Graham v. DaimlerChrysler Corp*., 34 Cal. 4th 553, 565 (2004). "[A] party need not prevail on every claim to be considered a successful party within the meaning of the statute." *Grodensky v. Artichoke Joe's Casino*, 171 Cal. App. 4th 1399, 1437 (2009); *see also Graciano v. Robinson Ford Sales, Inc*., 144 Cal. App. 4th 140, 153 (2006) ("It is settled that plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.").

Similarly, the Second Circuit has recognized that it is not merely successful efforts that are compensable, but even time related to unsuccessful claims may be compensable.  *See Heng Chan v. Sung Yue Tung Corp.*, No. 03 CIV. 6048 (GEL), 2007 WL 1373118, at *6 (S.D.N.Y. May 8, 2007) (quoting *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994)).  Importantly, "the court's

discretion to deny a fee award to a prevailing plaintiff is narrow." *N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 68 (1980).  Indeed, "in the absence of special circumstances a district court not merely 'may' but *must* award fees to the prevailing plaintiff." *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989) (emphasis added).

Here, Plaintiffs are the prevailing and successful party because their lawsuit, initiated over three years ago, achieved its main objective of remedying false and deceptive advertising of Revlon's line of DNA Advantage cosmetic Products.  As discussed in further detail below, the agreed-upon Settlement, if approved in finality, will result in, *inter alia*: (1) monetary relief to all Class Members who timely complete and return a valid executed Claim Form; (2) a complete discontinuance of the manufacturing, promotion, and sales of Revlon's DNA Advantage Products; and (3) Defendant's enforceable agreement to refrain from recommencing the manufacturing, promotion, and sales of its DNA Advantage Products.  Sett. Agmt. §§ III(C)-(E).  Injunctive relief, such as this, that is "'socially beneficial' . . . justif[ies] a fee award under" the CLRA.  *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011).  By achieving their main objectives sought in bringing suit, Plaintiffs are successful and prevailing parties.

**D.  The Settlement Provides for Attorneys' Fees, Costs, and Incentive/Enhancement Awards**

"A request for attorney's fees should not result in a second major litigation.  Ideally . . . litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  That is what has been done here—in addition to resolving the claims for damages and other relief, the Parties also entered into a settlement regarding Plaintiffs' claims for attorneys' fees, costs, and incentive awards. *See* Section II, *supra*; Sett. Agmt. § III(D).

Courts across the nation routinely acknowledge that parties may settle claims for attorneys' fees in a class action by entering into an agreement—like the present case—that the defendant will pay a plaintiff's attorneys' fees.  *See Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 CIV. 2207 JGK,

2010 WL 3119374, at *5 (S.D.N.Y. Aug. 6, 2010) ("An agreed upon award of attorneys' fees and expenses is proper in a class action settlement, so long as the amount of the fee is reasonable under the circumstances."); *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 553 (2009) (a fee agreement "'serves to facilitate settlements and avoids a conflict, and yet it gives the defendant a predictable measure of exposure and total monetary liability for the judgment and fees in a case.  To the extent it facilitates completion of settlements, this practice should not be discouraged."); 4 NEWBERG ON CLASS ACTIONS (4th ed.) § 12:3 ("Defendants in a class action settlement may properly agree to pay the plaintiffs' attorneys' fees and expenses").

Where, as here, the Parties have negotiated an arms' length settlement, "[a] court should refrain from substituting its own value for a properly bargained-for agreement."  *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008); *Ingram v. Coca-Cola Co*., 200 F.R.D. 685, 695 (N.D. Ga. 2001) (courts "should give substantial weight to a negotiated fee amount, assuming that it represents the parties' best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees." (citation omitted)).

## IV.    CLASS COUNSEL'S REQUESTED FEES ARE FAIR AND REASONABLE

"[B]oth the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases." *Goldberger*, 209 F.3d at 50; *see also Bellifemine*, 2010 WL 3119374, at *6; *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007) ["*Merck-Medco*"].  "The percentage method 'calculates the fee award as some percentage of the settlement fund created for the benefit of the class.'" *Bellifemine*, 2010 WL 3119374, at *6 (citing *Merck-Medco*, 504 F.3d at 249).  Conversely,

> [t]he lodestar method uses a presumptively reasonable fee, which is computed by multiplying the number of hours each attorney has expended by the hourly rate attorneys of similar skill charge in the area; then it applies to that figure a multiplier which factors in the litigation risks and other considerations.

*Velez v. Novartis Pharm. Corp*., No. 04 CIV 09194 CM, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010).  In the Second Circuit, courts have generally expressed a preference for the percentage of the fund method (also known as the common fund method), along with a lodestar cross-check to ensure the reasonableness of the requested percentage.  *Id*.; *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."); *Goldberger*, 209 F.3d at 47-50; *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).

### A.  Class Counsel's Requested Fees and Costs are Fair and Reasonable under the Percentage of the Fund/Common Fund Method

"It is by now well established that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing*, 444 U.S. at 478; *see also Merck-Medco*, 504 F.3d at 249.  The percentage of the fund method can be used even where attorneys' fees are also awardable pursuant to statutory fee-shifting provisions.  *See*, *e.g.*, *Suffolk v. Long Island Lighting Co*., 907 F.2d 1295, 1397 (2d Cir. 1990) (awarding fees using common fund rather than fee-shifting provision of RICO Act). It is also true that principles underlying the lodestar methodology in fee-shifting cases call generally for approval of a full lodestar fee award when plaintiffs' counsel act as private attorneys general in enforcing important public rights and prevail.  *See e.g., Quaratino v. Tiffany & Co*., 166 F.3d 422 (2d Cir. 1999) (awarding fee based on lodestar far exceeding damages award to plaintiff).

"The federal courts have established that a standard fee in complex class action cases like this one, where plaintiffs' counsel have achieved a good recovery for the class, ranges from ***20 to 50 percent*** of the gross settlement benefit."  *Velez*, 2010 WL 4877852, at *21 (emphasis added); *accord In re Marsh ERISA Litig*., 265 F.R.D. 128, 149 (S.D.N.Y. 2010) ("Traditionally, courts in this Circuit

and elsewhere have awarded fees in the 20%–50% range in class actions.") (citing *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)).[3] "District courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater." *Velez*, 2010 WL 4877852, at \*21. This is especially true where the fund is not a "mega recovery." *See In re Marsh ERISA Litig.*, 265 F.R.D. at 149.

To account for both incurred attorneys' fees and reimbursement of costs, Class Counsel here seek the QSF's remainder after satisfying all Settlement Payments to Authorized Claimants, Enhancement Awards, and Class Notice and Administrative Expenses. Sett. Agmt. § III(D)(2)(k). Due to the unusually high rate of claims returned here, the total dollar amount of Settlement Payments for Authorized Claims already exceeds, and therefore is limited to, the Settlement Payment Maximum of $400,000.00.[4] *See id.* § III(D)(2)(f). As set forth in the Settlement and Preliminary Approval Motion,

---

[3] *See also e.g., In re New York City Municipal Sec. Litig.,* Fed. Sec. L. Rep. (CCH) ¶ 91, 419, at 98,085 (S.D.N.Y. 1984) (fees and disbursements: almost **33%** of $13,450,000 settlement); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding fees of **33.3%** of 11.5 million settlement fund); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (**33.33%** awarded); *Maywalt v. Parker & Parsley Petroleum Co*., 963 F. Supp. 310, 313 (S.D.N.Y. 1997) (**33.4** % of settlement); *In re Franklin Nat'l Bank Sec. Litig.,* [1980 Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 97,571, at 97,988 (E.D.N.Y. 1980) (Chief Judge Weinstein awarded plaintiffs' counsel **34%** of the class recovery); *Clark v. Cameron-Brown Co.,* [1981 Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 98,014 (M.D.N.C. 1981) (**35%** of $2.85 million settlement); *Baron v. Commercial & Industrial Bank of Memphis,* [1979–80 Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 97,132, at 96,244 (S.D.N.Y. 1979) (**36%** of $900,000 settlement); *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 188–89 (W.D.N.Y. 2005) (awarding **38.26%**); *In re Ampicillin Antitrust Litig.*, 526 F.Supp. 494 (D.D.C. 1981) (**45%** of $7.3 million settlement fund awarded in fees and expenses); *Greene v. Emersons, Ltd*., [1987] Fed. Sec. L. Rep. (CCH) ¶ 93,263 (S.D.N.Y. May 20, 1987) (**46.2%** of common fund awarded as fees and expenses); *Zinman v. Avemco Corp.,* [1978 Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,325, at 93,092–93 (E.D.Pa. 1978) (**50%** of $260,000 settlement awarded); *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp*., 480 F. Supp. 1195 (S.D.N.Y. 1979) (**53%** of settlement fund awarded).

[4] In any case, "this Circuit has ruled that '[a]n allocation of fees by percentage should therefore be awarded on the basis of total funds made available whether claimed or not.'" *Velez*, 2010 WL 4877852, at \*21 (S.D.N.Y. Nov. 30, 2010) (citing *Masters v. Wilhelmina Model Agency, Inc*., 473 F.3d 423, 437 (2d Cir. 2007)).

it is estimated that Class Notice and Administrative Expenses will range between approximately $65,000.00 and $85,000.00.  Sett. Agmt. § III(D)(2)(j); Prelim. Approval Mot. at 5.  Assuming that such expenses will reach the higher end of $85,000.00, as is likely, and further assuming the Class Representatives will be awarded the maximum sought of $5,000.00 each in Enhancement Awards, a total of $405,000.00 would remain for any award of attorneys' fees and costs to Class Counsel.[5]  This would amount to forty-five percent (45%) of the total Settlement Fund, well within the 20 to 50 percent range generally applied in this Circuit and others.  *See supra* Section IV(A) n.2.[6]

In sum, the percentage of the QSF sought for fees and costs is consistent with many fee-only awards granted in similar class actions with funds of similar size, and not "mega recoveries." Class Counsel's request is also supported by the *Goldberger* factors courts generally consider in assessing the reasonableness of a common fund or lodestar class action fee award, as illustrated below.

**B.  The Requested Fees and Costs Satisfy the Goldberger Factors**

Regardless of whether the common fund or lodestar method is used, courts are guided by the following factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  *Goldberger*, 209 F.3d at 50.

**1.    _The Substantial Time and Labor Expended by Class Counsel_**

For over three years now, Class Counsel have devoted tremendous time and effort to ensuring the successful resolution of this Action on behalf of the Class, and will continue to devote substantial

---

[5] $900,000 (Settlement Fund) - $400,000 (Settlement Payout Maximum) - $85,000 (estimated Class Notice and Administrative Expenses maximum) - $10,000 (Enhancement Awards maximum) = $405,000.

[6] On the other hand, in the unlikely event the Court were to deny Enhancement Awards altogether, and Class Notice and Administrative Expenses only amounted to $65,000.00, a slightly higher total of $435,000.00 would remain for a Fee Award [$900,000 (Settlement Fund) - $400,000 (Settlement Payout Maximum) - $65,000 (estimated Class Notice and Administrative Expenses minimum) - $0 (Enhancement Awards minimum) = $435,000]. This would amount to 48.33% of the Fund, also within the acceptable range.

time and effort to ensure successful implementation of the Settlement's terms. In particular, through July 5, 2017, Class Counsel have expended 1767.6 total hours on this case (1717.3 attorney hours, 17.9 law clerk hours, and 33.4 paralegal/legal assistant hours), as well as $50,442.96 in total costs. *See* Declaration of Ronald A. Marron ("Marron Decl.") filed concurrently herewith ¶¶ 11-13; Declaration of Jack Fitzgerald ("Fitzgerald Decl.") filed concurrently herewith ¶¶ 3-5; *see also* Appendices 1-3 hereto.

As detailed in the Preliminary Approval Motion and accompanying declarations, Class Counsel engaged in extensive pre-filing investigation and research as to the claims arising from Revlon's manufacture, distribution, and advertising of the Products before formally initiating this class action in April 2017. *See* Marron Decl. ¶¶ 4-9; Fitzgerald Decl. ¶ 3. Thereafter, the Parties engaged in extensive discovery, including the exchange of written discovery requests and responses in accordance with the schedules set by the Court. Class Counsel also reviewed over 100,000 pages of documentary evidence, including highly confidential documents, regarding the Products' sales, advertising, labeling, and product testing, as well as Defendant's company finances and organization. *See* Marron Decl. in Support of Prelim. Approval Mot. ("Marron Decl. ISO MPA"), ECF No. 109-2, at ¶¶ 25, 27; Fitzgerald Decl. in Support of Prelim. Approval Mot. ("Fitzgerald Decl. ISO MPA"), ECF No. 109-5, at ¶ 2. Additionally, Class Counsel engaged in lengthy analysis of the laws of several states applicable to the advertising and labeling claims here, as well as detailed factual and legal analyses regarding the unlawful and deceptive nature of Defendant's representations. Marron Decl. ISO MPA ¶ 26. Similarly, Class Counsel conducted a detailed and comprehensive review of Food and Drug Administration ("FDA") guidance documents regarding the Products and similar cosmetics products; the Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301, *et seq*., and its implementing regulations, 21 C.F.R. §§ 1.1, *et seq.* (collectively, "FDCA"); the FDCA's numerous changes over the years; Federal

Trade Commission ("FTC") advertising standards and their applicability to the Products' labeling claims at issue here; the California Sherman Food, Drug and Cosmetic Law (Cal. Health & Safety Code §§ 109875, *et seq*.); and scientific articles purportedly supporting the Products' efficacy.  Marron Decl. ISO MPA ¶ 27. Furthermore, percipient witness depositions were taken, numerous third party subpoenas were served, experts were retained, and expert reports were exchanged, showing vigorous opposition between the Parties throughout this litigation. *Id*. ¶ 28. Class Counsel also engaged in substantial briefing regarding Defendant's motions to dismiss, alleging a host of affirmative defenses. *See* ECF Nos. 18-22, 31, 36, 42-47, 53-54, 75-79.

On August 27, 2015, Class Counsel attended an in-person mediation before the Honorable Peter Lichtman (Ret.), which included attorneys for all Parties and a Revlon representative.  *Id*. ¶ 29. This mediation was followed by several months of detailed and adversarial negotiations. *Id*. ¶ 30.  The tremendous amount of time and labor devoted to this case factor in support of granting Class Counsel's request for fees and costs.

## 2. *The Magnitude and Complexities of the Case, and Risks of Continued Litigation*

In this Circuit, litigation risk is the "pivotal" and "perhaps the foremost" factor to be considered in assessing a reasonable and appropriate award of fees in class actions.  *See In re Marsh ERISA Litig*., 265 F.R.D. at 147; *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 424 (2d Cir. 2010); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479 (S.D.N.Y. 2013).

This was not a simple case, but involved complex issues regarding scientific efficacy of Revlon's DNA Advantage Products, consumer perceptions and reactions to the Products' labeling representations, and damages calculations attributable to the challenged advertising. Moreover, the FDCA is complex, has been frequently amended, and has lengthy and technical implementing regulations promulgated by the FDA.  Had the case proceeded to trial, complex chemistry and

scientific issues raised by Plaintiffs' claims would have been at issue, and Plaintiffs would inevitably have to confront a variety of risks resulting in potential loss of the case. For instance, this Court already struck injunctive relief from the lawsuit for lack of Article III standing; and dismissed all class claims for the powder product, all claims that the Products were unapproved new drugs based on the doctrine of preemption, and several of Plaintiffs' causes of action *with prejudice* (counts one, three, five, nine, ten, and twelve through fifteen of the First Amended Complaint). Dkt. No. 79. And, Defendant firmly contends that its Products are not falsely or deceptively advertised, that its experts' reports establish that class certification would not have been granted due to the predominance of individual issues.

In addition to the risks regarding class certification and the merits, there also existed significant risk that Class Counsel, despite committing substantial resources to this matter, would not receive any compensation, as their payment was entirely contingent upon Plaintiffs prevailing. The substantial risk of non-recovery inherent in contingent class actions is well-documented in both New York and California. *See e.g., In re Marsh ERISA Litig.*, 265 F.R.D. at 148 ("

> Moreover, in addition to the risks discussed above, Plaintiffs' Counsel had to contend with the traditional risks inherent in any contingent litigation. [Class] Counsel accepted this case on a contingent basis, with the attendant risk that they would receive nothing at all. There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk. *Cf. Blum v. Stenson*, 465 U.S. 886, 902 (1984) (Brennan, J., concurring) ("[T]he risk of not prevailing, and therefore the risk of not receiving any attorney's fees, is a proper basis on which a district court may award an upward adjustment to an otherwise compensatory fee."); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) ("Because they shift part of the risk of loss from client to lawyer, contingent-fee contracts usually yield a larger fee in a successful case than an hourly fee would."). The risk factor, then, strongly supports the requested fee.

"); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-1133 (2001) ("

> A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan

> is higher because the risk of default (the loss of the case, which cancels the debt of the
> client to the lawyer) is much higher than that of conventional loans.

") (quoting Richard Posner, ECONOMIC ANALYSIS OF LAW (4th ed. 1992)).  "[A]n attorney will

therefore require a higher contingency rate to compensate for the fact that not all of the cases he works

will result in remuneration."  *U.S. v. Vilus*, 419 F. Supp. 2d 293, 299 (E.D.N.Y. 2005).

Finally, devoting 1767.6 attorney and staff hours and $50,442.96 in costs to this Action over

the course of over three years necessarily precluded Class Counsel from taking on other employment,

and/or from devoting significant resources to other cases or potential cases.  In sum, the magnitude

and complexities of this case, risks of continued litigation, lack of assurance of compensation, and

opportunity cost of involvement in this litigation, all support Class Counsel's request here.

### 3.      *The Quality of Representation, and Exceptional Benefits to the Class*

Class Counsel have extensive experience prosecuting complex consumer class actions, and

each firm has significantly participated and successfully prosecuted a number of complex class action

cases, as detailed in the accompanying declarations.  *See* Marron Decl. ¶¶ 20(a)-(k), Ex. 1 (Marron

Firm resume); Fitzgerald Decl. ¶¶ 2, 9-44 & Ex. A.  Class Counsel respectfully suggest that their track

record in this case, as well as past cases, demonstrates their skill and expertise.  *See id*.  A review of

the record shows how hard fought this case has been.  In light of the serious risks and complexities of

this case, the quality of Class Counsel's representation may also be measured by the results achieved

for the Class.  *See Goldberger,* 209 F.3d at 55 ("[T]he quality of representation is best measured by

results . . . .").  Here, the instant Settlement represents a positive result for the Class and general public.

First, the Settlement provides for up to $400,000.00 in monetary relief to the Class.  Sett. Agmt.

§ III(D)(2)(a).  In particular, all Class Members who timely complete and return an executed Claim

Form will receive $3.00 per purchase (limited to three purchases without proof of purchase), which

represents *three times* the estimated price premium that Revlon determined applied to the DNA

Advantage-specific advertising. *Id.*; *see also* Fitzgerald Decl. ISO MPA ¶ 2. Due to the unusually high rate of claims returned here, the total dollar amount of Settlement Payments for Authorized Claims already exceeds, and therefore will equal, the Settlement Payment Maximum of $400,000.00. *See id.* § III(D)(2)(f). Consequently, Defendant will not receive any reversion of money.

Second, despite the Court's dismissal of Plaintiff's claims for injunctive relief in this Action, the Settlement nonetheless provides for significant non-monetary relief. Specifically, Revlon has agreed to discontinue, and not recommence, manufacturing, advertising, promoting, distributing, offering for sale, and selling its DNA Advantage Products—essentially constituting a complete and total cessation of the primary accused false and misleading claims at issue. Sett. Agmt. § III(C). Class Counsel was able to successfully negotiate this complete discontinuance, despite the fact that Revlon adopted the sub-name DNA Advantage specifically as a trade mark and succeeded in obtaining a U.S. Trademark Registration for that term. The cost of implementing such injunctive relief provides a touchstone for the potential benefit to the Class. Notably, class action settlements do not typically result in complete injunctive relief against the accused product claims or advertising, especially where the accused product claim is a brand name and federally registered trademark.

While the value of injunctive relief may be difficult to monetize, the implementation of this advertising prohibition cannot be overlooked. *See Brazil v. Dell Inc.*, No. C-07-01700 RMW, 2012 WL 1144303, at *1 (N.D. Cal. Apr. 4, 2012) ("Dell's elimination of allegedly false representations . . . conferred a benefit on both the class members and the public at large.") (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) ("[i]ncidental or nonmonetary benefits conferred by the litigation" are factors in a fee application)). Indeed, there is intrinsic value in eliminating deceptive advertising. *Vizcaino*, 290 F.3d at 1047. There are also direct monetary savings from providing consumers with truthful information that will guide future purchases.

14

Accordingly, the quality of Class Counsel's representation, as well as the exceptional results achieved for the Class through this Settlement, support the instant fee request.

**4.** _**Fee Requested in Relation to the Settlement, and Public Policy Considerations**_

To satisfy both attorneys' fees and costs, Class Counsel seeks between approximately 45% to 48% of the QSF. Not only is this request in line with the 20 to 50 percent range that this Circuit and others generally apply to common fund class actions, s*ee supra* Section IV(A) n.2, but is also significantly less than Class Counsel's actual lodestar, essentially amounting to a significant negative multiplier. This underscores the reasonableness of Class Counsel's requested fees and costs.

**C.  The Requested Fees and Costs are Reasonable Under a Lodestar Cross-Check**

"Although lodestar analysis is no longer the preferred method of calculating attorneys' fees in connection with class action settlements, if the percentage of fund figure compares favorably with a lodestar that uses reasonable hourly rates and a reasonable multiplier, it tends to validate the percentage of funds figure." *Velez*, 2010 WL 4877852, at *22.

Class Counsel's total combined lodestar here is $955,029, which is based on 1767.6 total hours of work (1717.3 attorneys hours, 17.9 law clerk hours, and 33.4 paralegal/legal assistant hours). *See* Marron Decl. ¶¶ 11-13; Fitzgerald Decl. ¶¶ 3-4. *See also* Appendices 1-2 hereto.

While a modest multiplier would be amply warranted here, Class Counsel seek *less than half* their actual lodestar, resulting in a negative multiplier of 0.42, which will only decrease as they carry out their duties in effectuating the Settlement without additional fees. *See Velez*, 2010 WL 4877852, at *23 ("[W]here 'class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower.'") (citing *Bellifemine*, 2010 WL 3119374, at *19; *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 U.S. Dist. LEXIS 12762, at *7–8 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex

procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time")))·  And, approval of the fee award sought under a lodestar cross-check should not be denied when it is *less* than the lodestar.  *See id.* at *23 ("[T]hat a low multiplier lodestar calculation yields a number approximating the percentage of fund number persuades the court that it is appropriate to award the full requested fee to plaintiffs' counsel.").  This is especially true here, where a good recovery was obtained, including relief unavailable to plaintiffs at trial, there was significant risk, and all *Goldberger* factors support the request.

1. ***Class Counsel's Hourly Rates are Reasonable, and Have Been Approved by Numerous Federal and State Courts***

Class Counsel's hourly rates are reasonable because they are in line with prevailing hourly rates charged by other attorneys of comparable experience, reputation, and ability for similar complex consumer protection class action litigation.  Class Counsel's requested rates and hours are listed in this Memorandum's Appendix 1 showing work by timekeeper, and further organized by task category in Appendix 2.  *See also* Marron Decl. ¶¶ 11-12; Fitzgerald Decl. ¶ 3-4.  To further assist the Court, Class Counsel attach to the accompanying declarations their current firm resumes, exemplifying their vast experience and expertise in the area of complex consumer protection class action litigation, and setting forth examples of the hourly rates Class Counsel have been awarded in various other similar class action cases.  Marron Decl. ¶¶ 20(a)-(k), Ex. 1; Fitzgerald Decl. ¶¶ 2, 9-44, Ex. A.

In setting a reasonable hourly rate, courts typically start by looking to the prevailing hourly rates in the district where the court sits, otherwise known as the "forum rule." *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-52 (2010); *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty of Albany*, 493 F.3d 110 (2d Cir. 2007) ["*Arbor Hill I*"]).  However, "where circumstances have warranted it, [courts] have not insisted on strict adherence to the forum rule." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany*

*Cty. Bd. of Elections*, 522 F.3d 182, 192 (2d Cir. 2008) ["*Arbor Hill II*"].  Rather, "a district court may

use an out-of-district hourly rate in calculating the presumptively reasonable fee if it is clear that a

reasonable, paying client would have paid those higher rates."  *Id.* at 191; *see also Polk v. N.Y. State*

*Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983) ("Exceptions have been made upon a showing

that the special expertise of counsel from a distant district is required.").

      Not only has the Second Circuit upheld the use of out-of-district rates, but it has also

affirmatively "urged district courts where appropriate to employ out-of-district rates in calculating the

fee due."  *Arbor Hill II*, 522 F.3d at 193.  *See also Polk*, 722 F.2d at 25; *In re Agent Orange Prod.*

*Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987).  Indeed, "'there is good reason for a district court not

be wed to the rates in its own community. If they are lower than those in another district, skilled

lawyers from such other district will be dissuaded from taking meritorious cases in the district with

lower rates.'"  *Arbor Hill II*, 522 F.3d at 193 (quoting *A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.*, 407

F.3d 65, 81 (2d Cir. 2005)).  Moreover, "[t]he legal communities of today are increasingly

interconnected. To define markets simply by geography is too simplistic." *Id.* at 192. In any case, "the

rate prevailing in the appropriate community is only one of many factors bearing . . . a fee award."

*Polk*, 722 F.2d at 25.  In addition, "the district court should consider . . . the *Johnson* factors," *Arbor*

*Hill I*, 493 F.3d 110 (citing *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974).[7]

      Here, the Court should affirm the hourly rates that countless other federal and state courts have

already approved for Class Counsel. Departure from the forum rule is warranted because of the special

expertise required of, and provided by, Class Counsel in this Action surrounding both New York and

---

[7] The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the
questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of
employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate;
(6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the
circumstances; (8) the amount involved in the case and the results obtained; (9) the experience,
reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length
of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 117-18.

California consumer protection law. This Action involved several California consumer protection statutes, including California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*. (Sixth Cause of Action), and California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. (Seventh Cause of Action). In order to effectively prosecute these claims, Plaintiffs would have had to either retain California counsel, or New York counsel well-versed in California consumer protection law (in either situation, a premium for such specialized knowledge would be expected). Otherwise, Plaintiffs would have had to limit their claims to the laws of a single state, despite the fact Defendant sells its products nationwide. By choosing to retain Class Counsel—licensed to practice law in both California and New York—Plaintiffs were able to effectively pursue Class-wide relief based on the applicable laws of both states, thereby increasing their potential recovery and Revlon's liability.

**Rates Other Courts Have Awarded.** Courts look to the amount of awards made in similar cases in determining the reasonableness of a requested hourly rate. *See Johnson*, 488 F.2d at 117-18.

Recently, the Marron Firm's hourly rates of $745 for Ronald Marron, $475 for Skye Resendes and Alexis Wood, $450 for Kas Gallucci, $440 for William Richards and other associate attorneys, and $290 for law clerks, were approved by multiple state and federal court judges in three related dietary supplement tea cases. The first was *Perry v. Truong Giang Corp.*, Los Angeles Super. Ct. Case No. BC58568, in which the Hon. Kenneth Freeman noted on August 6, 2015 that the same hourly rates requested here were reasonable. *See* Marron Decl. ¶ 20(b), Ex. 5 ("

> [T]his case involved difficult legal issues . . . and . . . proving the difference between the price paid (around $2 per box of tea) and the actual value received would have been difficult since arguably some value was received (the tea itself). Additionally, . . . the attorneys displayed skill in researching and settling this case, which provides a benefit not only to Class Members but to the public at large, and that in so doing, the attorneys undertook significant risk by spending time on this litigation on a contingency basis.

"). Similarly, on August 7, 2015, in *In re Leaf123* (adversary proceeding of *Augustine v. Natrol*), No. 14-114466, the Hon. Brendan L. Shannon, U.S. Bankruptcy Judge for the District of Delaware, found

18

the settlement in that case "fair, reasonable and adequate," which included an award of $799,000 in fees. *See id.* ¶ 20(c), Ex. 6. And on November 16, 2015, the Hon. Maxine M. Chesney, Senior District Court Judge for the Northern District of California, approved the same hourly rates. *Id.* ¶ 20(a). The court found the Marron Firm's rates to be "reasonable in light of the complexity of this litigation, the work performed, Class Counsel's reputation, experience, competence, and the prevailing billing rates for comparably complex work by comparably-qualified counsel in the relevant market." *Id.*

On February 24, 2017, the Fitzgerald Firm's requested hourly rates of $650 for Mr. Fitzgerald, $750 for Mr. Canova, and $500 for Mr. Flynn, were approved by the Honorable Katherine Bacal in *Cumming v. BetterBody Foods & Nutrition*, LLC, No. 37-2016-00019510-CU-BT-CTL (San Diego County Super. Ct.), a false advertising class action against a coconut oil manufacturer. Fitzgerald Decl. ¶¶ 9, 12 & Ex. B. More than a year ago, the Honorable Magistrate Judge Mitchell D. Dembin of the Southern District of California, approved rates only slightly lower—$725 for Mr. Canova, $625 for Mr. Fitzgerald, and $400 for Ms. Persinger. *Id.* ¶ 10 (citing *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-cv-595-BAS-MDD, 2016 WL 1573319, at *2 (S.D. Cal. Apr. 18, 2016)). The rates currently requested by the Fitzgerald Firm attorneys reflects a modest increase to account for inflation, as well as the experience and skill gained during that time. *Id.* ¶ 12. And Ms. Nguyen's requested rate of $325 was approved more than a year and a half ago by the Honorable Joan M. Lewis, finding the rate "reasonable" and "in line with prevailing rates in the community." Fitzgerald Decl. Ex. C at ¶ 17.

Past courts have approved similar rates for the Marron Firm attorneys and Fitzgerald Firm attorneys, with appropriate increases over time, further underscoring the reasonableness of the requested rates, especially considering the several years which have passed since the most recent of those decisions. *See* Marron Decl. ¶¶ 20(d)-(j); Fitzgerald Decl. ¶¶ 11-12. *See also Vaccarino v.*

*Midland Nat. Life Ins. Co.*, 11 CV-5858-CAS MANX, 2014 WL 4782603, at *2 (C.D. Cal. Sept. 22, 2014); *see also id.* at ECF No. 407 (approving hourly rates of $715 for Mr. Marron, $440 for Ms. Resendes, $425 for Ms. Wood, and law clerks and paralegals at $245 and $215, respectively); *In re Quaker Oats Labeling Litig.*, No. C 10-0502 RS, 2014 WL 12616763, at *1 (N.D. Cal. July 29, 2014) (approving $715 for Mr. Marron, $580 for Mr. Fitzgerald, $440 for Ms. Resendes, $400 for Ms. Gallucci, $340 for Ms. Persinger, and $290 for law clerks); *Mason v. Heel, Inc.*, No. 3:12-cv-3056-GPC-KSC, 2014 WL 1664271 (S.D. Cal. Mar. 13, 2014) (approving $715 for Mr. Marron, $440 for Ms. Resendes, $425 for Ms. Wood, other attorneys at $400, and $215 for legal assistants); *In re Apple and AT&T iPad Unlimited Data Plan Litig*, No. 5:10-cv-02533 (N.D. Cal.), ECF Nos. 190-3, ECF Nos. 207-20 (approving $550 for Mr. Fitzgerald, and $195 for paralegals in March 2014); *Nigh v. Humphreys Pharmacal Inc.*, 3:12-cv-02714-MMA-DHB, 2013 WL 5995382 (S.D. Cal. Oct. 23, 2013) (approving $680 for Mr. Marron, $400 for Ms. Resendes, $385 for Ms. Wood, $245 per hour for law clerks, and $215 hourly rates for support staff); *Bruno v. Quten Research Inst., LLC*, No. 8:11-cv-00173-DOC-E, 2013 WL 990495, at *4-5 (C.D. Cal. Mar. 13, 2013) (approving $680 for Mr. Marron, $500 for Mr. Fitzgerald, $400 for Ms. Resendes, $315 for Ms. Persinger, $245 for law clerks, and $215 for support staff); *Gallucci v. Boiron, Inc*., No. 11CV2039 JAH NLS, 2012 WL 5359485, at *9 (S.D. Cal. Oct. 31, 2012) (approving $650 for Mr. Marron, $525 for Mr. Fitzgerald,  $385 for Ms. Resendes, $300 for Ms. Persinger, and $195 for paralegals); *In re Ferrero Litig*., No. 11-CV-00205-H-KSC, 2012 WL 2802051, at *4 (S.D. Cal. July 9, 2012), *aff'd*, 583 F. App'x 665 (9th Cir. 2014) (approving $650 for Mr. Marron, $385 for Ms. Resendes, $525 for Mr. Fitzgerald, and $300 for Ms. Persinger).

In approving these rates, courts have complimented Class Counsel on their competence and skill in prosecuting consumer class actions, noting the substantial benefits obtained for consumers. *See*, *e.g.*, *Bruno*, 2013 WL 990495, at *4-5 ("

> Class Counsel, . . . displayed competence and diligence in the prosecution of this action, and their requested rates are approved as fair and reasonable . . . . [I]n addition to the monetary relief obtained by Class Counsel for class plaintiffs, there is a high value to the injunctive relief obtained in this case.  New labeling practices affecting hundreds of thousands of bottles per year, over ten years, bring a benefit to class consumers, the marketplace, and competitors who do not mislabel their products.

"); *Gallucci*, 2012 WL 5359485, at *9 ("The Court finds the hourly billing rates reasonable in light of the complexity of this litigation, the work performed, Class Counsels' reputation, experience, competence, and the prevailing billing rates for comparably complex work by comparably-qualified counsel in the relevant market."); *In re Ferrero Litig.*, 2012 WL 2802051, at *4 (fees requested were "appropriate given the contingent nature of the case and the excellent results obtained for the Class, and because no enhancement or multiplier was sought above the actual amount of Class Counsel's lodestar" and "the billing rates used by Class Counsel [were] justified by prior awards in similar litigation and the evidence presented with their motion showing these rates are in line with prevailing rates in this District"); *see also* Marron Decl. ¶¶ 20(h)-(i), (k); Fitzgerald Decl. ¶¶ 15-19 & Ex. A.

**Survey Data.**  Attached as Exhibit 2 to the Marron Declaration are portions from the published National Law Journal (NLJ) 2011 Law Firm Billing Survey; a rate analysis for partners and associates in the Southern California area, compiled by summarizing the NLJ 2011 Survey of Southern California firms; and a Summary reflecting the market rate increase in Southern California from 2010 to 2011 for partners and associates created by comparing the 2010 NLJ Survey to the 2011 NLJ Survey. Plaintiffs also attach the 2014 Report on the State of the Legal Market prepared by Georgetown Law Center and Thomson Reuters. Marron Decl. Ex. 4 This report shows that "from the third quarter of 2010 through November 2013 . . . firms increased their standard rates by 11 percent[,] from an average of $429 per hour to $476 per hour."  Also instructive is the NLJ's survey of billing rates in December 2010, which reveals New York billing rates of senior partners above $900, average and mean partner rates from $613 to $785, and senior associate rates of $575 to $690.  *Id.* at Ex. 3.

All other relevant *Johnson* factors have been met, and discussed thoroughly herein.  As this evidence shows, Class Counsel's requested hourly rates for calculating the lodestar cross-check are well within the range of prevailing market rates in both California and New York.

      **2.**    ***Class Counsel's Hours Expended Were Reasonable and Necessary for the Successful Prosecution of this Case***

"Where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50 (citation omitted).[8]  "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . . ." *Id.*

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation" and "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435.  Relatedly, courts should not try to guess how minimal an effort could have been put forth to be successful. *Sylvester v. City of New York*, No. 03 Civ. 8760(FM), 2006 WL 3230152, at * 12 (S.D.N.Y. Nov. 8, 2006).  Rather, the test is whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures" not whether, in hindsight, effort appears unrelated to plaintiff's success. *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *see also Heng Chan v. Sung Yue Tung Corp.*, No. 03 CIV. 6048 (GEL), 2007 WL 1373118, at *6 (S.D.N.Y. May 8, 2007) ("So long as the plaintiff's unsuccessful claims are not wholly unrelated

---

[8] Class Counsel's raw billing records, maintained contemporaneously with the work performed, are voluminous and, even with redactions, would contain confidential information that would disclose strategy, mental impressions, work product and the like. Consistent with established practice in common fund cases, Class Counsel have summarized their records in their supporting declarations, as well as Appendices 1-3 hereto. *See In re Ins. Brokerage Antitrust Litig.*, 579 F3d 241, 284 (3d Cir. 2009) (summaries of records sufficient in common fund cases because court used information only to cross-check reasonableness of fee award); *Trs. of Cent. States Se. & Sw. Areas Pension Fund v. Golden Nugget, Inc.*, 697 F. Supp. 1538, 1558-59 (C.D. Cal. 1988); *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 505-06 (2016).  Nevertheless, if the Court desires, Class Counsel's billing records of individual entries can be provided for in camera review.  Marron Decl. ¶ 14. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 200 (3d Cir. 2000) (appropriate for counsel to wait to submit detailed time records until court requested them).

to the plaintiff's successful claims, hours spent on the unsuccessful claims need not be excluded from the lodestar amount." (quoting *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994))).

Class Counsel have already expended a total of 1717.3 attorney hours and 51.3 paralegal/legal assistant hours. Apps. 1-2; Marron Decl. ¶¶ 11-12; Fitzgerald Decl. ¶¶ 3-4. This time includes, *inter alia*: pre-filing investigation and research; subsequent pleadings, motions, oppositions, and briefing; propounding and responding to formal discovery; document review of over 100,000 pages; legal research and analyses of the applicable laws; witness depositions and third party subpoenas; expert reports; mediation and settlement negotiations; and ensuring the Class Notice was disseminated, Class Members' questions were answered, and their claims properly recorded.

Class Counsel further expects to expend an additional 50 hours (40 attorney hours and 10 support staff hours) implementing and monitoring the Settlement and other post-application work. Class Counsels' hours do not include entries that reflected possible errors, duplication, or otherwise reflected a task that is not ordinarily billed to a private client. Class Counsel also reduced entries where the time spent might have been excessive. *See* Marron Decl. ¶ 15; Fitzgerald Decl. ¶ 7.

## V.     THE REQUESTED COSTS ARE FAIR AND REASONABLE

"It is well settled that counsel who create a common fund . . . are entitled to the reimbursement of [all reasonable] litigation costs and expenses . . . ." *Velez*, 2010 WL 4877852, at *23 (quoting *In re Marsh ERISA Litig.*, 265 F.R.D. at 150). Compensable items include, among others, photocopying, travel expenses, telephone costs, postage, deposition costs, service of process fees, and filing fees. *See Luessenhop v. Clinton Cnty.*, 558 F. Supp 2d 247, 271-72 (N.D.N.Y. 2008); *DiSorbo v. City of Schenectady*, No. 99-CV-1131 (LEK), 2004 WL 115009, at * 5 (N.D.N.Y. Jan. 9, 2004) (awarding airfare and hotel expenses); *Cioffi v. New York Community Bank*, 465 F. Supp. 2d 202, 217 (E.D.N.Y. 2006) (awarding filing fees, service costs, photocopying, costs of depositions, and subpoena fees);

*Alnutt v. Cleary*, 27 F. Supp. 2d 395, 403-04 (W.D.N.Y. 1998) (awarding service of process fees). California's CLRA and Private Attorney General Statute also provide for the recovery of reasonable costs.  *See* Cal. Civ. Code § 1780(e); Cal. Civ. Proc. Code § 1033.5.  "Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course."  *In re Vitamin C Antitrust Litig.*, 06-MD-1738 BMC JO, 2012 WL 5289514, at * 11 (E.D.N.Y. Oct. 23, 2012).

Here, Class Counsel have together incurred a total of $50,442.96 in recoverable costs, summarized in Appendix 3 hereto.  *See also* Marron Decl. ¶ 13; Fitzgerald Decl. ¶ 5. All of Class Counsel's expenses were reasonable and necessary for the successful prosecution of this case. Accordingly, the Court should grant Class Counsel's full request for reimbursement of their costs.  *See Bellifemine*, 2010 WL 3119374, at *7 ("[T]he costs. . . are reasonable, and therefore, Class Counsel should be reimbursed for these litigation related expenses.").

## VI.    <u>THE REQUESTED ENHANCEMENT AWARDS ARE FAIR AND REASONABLE</u>

"In the Second Circuit, 'the Courts have, with some frequency, held that a successful Class action plaintiff, may, in addition to his or her allocable share of the ultimate recovery, apply for and, in the discretion of the Court, receive an additional award, termed an incentive award.'"  *Bellifemine*, 2010 WL 3119374, at *7 (quotation omitted).  Such awards are an important way of "reimbursing class representatives who take on a variety of risks and tasks when they commence representative actions, such as complying with discovery requests and often must appear as witnesses in the action.'" *Velez*, 2010 WL 4877852, at *25 (quoting *In re Marsh ERISA Litig.*, 265 F.R.D. at 58)

Here, Plaintiffs respectfully request enhancement awards of $5,000.00 each in recognition of their contributions over the past several years toward the successful prosecution of this Action. *See* Sett. Agmt. § III(D)(1)(i).  Such awards are justified in light of Plaintiffs' willingness to devote their time and energy to this litigation, and reasonable in light of the overall benefits conferred upon the

Class." *See Bellifemine*, 2010 WL 3119374, at *7.

Plaintiffs seek incentive/service awards of $5,000 each, based on the nature and extent of their substantial service for an involvement in this action, including traveling across the country from New York (Elkind) and Idaho (Rosen) to prepare and sit for their depositions in California, at significant personal burden given the ill health and serious medical condition of one of the plaintiffs (Elkind), requiring her to travel only in the company of her husband as a caregiver during that trip, and of the ill health and specific needs of several animals that the other plaintiff cares for (Rosen) – and they did so to accommodate Revlon counsel based in California.  Fitzgerald Decl. ¶¶ 40-43. This participation in connection with their depositions followed substantial additional work on the part of plaintiffs in carefully reviewing and commenting upon the draft of the Complaint and the First Amended Complaint, as well as venue affidavits and other case filings, and working with their counsel in preparing discovery responses, including responses to interrogatories, supplementing those responses where needed, and responding to document requests, including by searching for responsive documents. *Id.* ¶ 44.

**VII.    CONCLUSION**

For the foregoing reasons, the Court should, respectfully, grant the relief requested in full.

Respectfully submitted,

Dated: July 7, 2017

*/s/ Jack Fitzgerald*
**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 4294401)
*jack@jackfitzgeraldlaw.com*
THOMAS A. CANOVA (SBN 2108119)
*tom@jackfitzgeraldlaw.com*
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

*/s/ Ronald A. Marron*
**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (*pro hac vice*)
*ron@consumersadvocates.com*
WILLIAM B. RICHARDS, JR. (*pro hac vice*)
*bill@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Class Counsel***

## APPENDIX 1: CLASS COUNSEL'S LODESTAR

| Timekeeper | Position | Rate Requested | Total Hours | Total Amount |
|---|---|---|---|---|
| **Law Offices of Ronald A. Marron, APLC** | | | | |
| Ronald Marron | Partner | $745.00 | 59.6 | $44,402.00 |
| Skye Resendes | Senior Associate | $475.00 | 126.9 | $60,277.50 |
| Alexis Wood | Senior Associate | $475.00 | 47 | $22,325.00 |
| Kas Gallucci | Senior Associate | $450.00 | 89 | $40,050.00 |
| William Richards, Jr. | Associate | $440.00 | 101.4 | $44,616.00 |
| Marshall Lurtz | Associate | $440.00 | 22.4 | $9,856.00 |
| Beth Goodman | Associate | $440.00 | .8 | $352.00 |
| Erin Minelli | Associate | $440.00 | 12.5 | $5,500.00 |
| Michael Houchin | Associate | $440.00 | 244.9 | $107,756.00 |
| Law Clerks | | $245.00 | 17.9 | $4,385.50 |
| Paralegals/Legal Assistants | | $215.00 | 33.4 | $7,181.00 |
| | | | **Subtotal** | **$346,701.00** |
| **The Law Office of Jack Fitzgerald, PC** | | | | |
| Tom Canova | Partner | $750 | 449 | $336,750 |
| Jack Fitzgerald | Partner | $650 | 247.9 | $161,135 |
| Trevor Flynn | Associate | $500 | 36.3 | $18,150 |
| Melanie Persinger | Associate | $440 | 15.2 | $6,688 |
| Tran Nguyen | Associate | $325 | 263.4 | $85,605 |
| | | | **Subtotal** | **$608,328.00** |

Total attorney hours (all firms):
Total staff hours (all firms):
Total hours (all firms):

## TOTAL FEES = $955,029.00

I

## VIII.   APPENDIX 2: CLASS COUNSEL'S CATEGORIES OF HOURS EXPENDED

| Task | Hours |
|------|-------|
| **Law Offices of Ronald A. Marron, APLC** | |
| Work Relating to Pre-Filing Investigation, Research, CLRA Letters | 13.9 |
| Work Relating to Subsequent Pleadings | 95.6 |
| Work Relating to Revlon's Motions to Dismiss | 27.7 |
| Work Relating to Applications for *Pro Hac Vice* | 24.7 |
| Work Relating to Discovery | 238.6 |
| Work Relating to Depositions | 138.1 |
| Work Relating to Protective Order | 2.4 |
| Work Relating to Expert Witnesses | 16.3 |
| Work Relating to Case Management, Communications, and Scheduling | 66.7 |
| Work Relating to Mediation and Settlement | 131.8 |
| **Subtotal** | **755.8** |
| **The Law Office of Jack Fitzgerald, PC** | |
| Work Relating to Pre-Filing Investigation, Research, CLRA Letters | 32.3 |
| Work Relating to Subsequent Pleadings | 29 |
| Work Relating to Revlon's Motions to Dismiss | 56.4 |
| Work Relating to Applications for *Pro Hac Vice* | 7.2 |
| Work Relating to Discovery | 428.4 |
| Work Relating to Depositions | 160.2 |
| Work Relating to Protective Order | 2.2 |
| Work Relating to Expert Witnesses | 71.6 |
| Work Relating to Case Management, Communications, and Scheduling | 24.6 |
| Work Relating to Mediation and Settlement | 199.9 |
| **Subtotal** | **1011.8** |

**TOTAL HOURS:**   **1767.6**

II

## APPENDIX 3: CLASS COUNSEL'S EXPENSES

| Description | Amount |
|---|---|
| **Law Offices of Ronald A. Marron, APLC** ||
| Court Filing Fees | $200.00 |
| Service of Process Fees | $380.00 |
| Postage | $34.84 |
| Certificates of Good Standing (for *Pro Hac Vice* Applications) | $150.00 |
| FOIA Request Fees | $25.00 |
| Deadlines.com Fees (for this case) | $570.00 |
| Expert Fees | $30,585.00 |
| Transcript Fees | $376.60 |
| Mediation Fees | $1,900.00 |
| Travel Expenses (Flights and Mileage Reimbursement) | $2,911.63 |
| Meals | $156.83 |
| Printer Fees and Photocopies | $3,516.00 |
| Delivery Service Fees (FedEx) | $147.85 |
| PACER | No charge |
| Westlaw | No charge |
| **Subtotal** | **$40,953.75** |
| **The Law Office of Jack Fitzgerald, PC** ||
| Court Filing Fees | $750.00 |
| Service of Process Fees | $2656.55 |
| Postage & Delivery Service Fees | $132.05 |
| Certificates of Good Standing & Notary Fees(for Pro Hac Vice Applications) | $85.00 |
| Transcript Fees | $80.40 |
| Travel Expenses (Flights, Hotels, and Mileage Reimbursement) | $4428.66 |
| Meals | $951.55 |
| Deadlines.com Fees (for this case) | $405.00 |
| **Subtotal** | **$9,489.21** |

**TOTAL EXPENSES: $50,442.96**