# IN THE UNITED STATES COURT

# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNE ELKIND and SHARON ROSEN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>REVLON CONSUMER PRODUCTS CORPORATION,<br><br>Defendant. | Case No. 2:14-cv-02484-JS-AKT<br><br>Magistrate Judge: Hon. A. Kathleen Tomlinson |

**DECLARATION OF RONALD A. MARRON IN SUPPORT OF PLAINTIFFS'**

**MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS**

I, Ronald A. Marron, declare as follows:

1. I am counsel of record for Plaintiffs Anne Elkind and Sharon Rosen ("Plaintiffs") and the putative class in this action. I am a member in good standing of the State Bar of California; the United States District Courts for the Northern, Central, Eastern, and Southern Districts of California; and the United States Court of Appeals for the Ninth Circuit. I am admitted *pro hac vice* to this Court for purposes of this action. I submit this declaration in support of an Order granting an award of attorneys' fees, costs, and incentive awards ("Fee Motion"). I make this Declaration based on personal knowledge and if called to testify, I could and would competently testify to the matters contained herein.

2. My firm, the Law Offices of Ronald. A. Marron, APLC, currently employs five full-time attorneys, two paralegals, and support staff. My firm has an in-depth knowledge of litigating food, drug, and dietary supplement cases, as well as cosmetics cases. The attorneys at my firm have years of experience litigating class action cases, and are experts, in particular, in the respective merits and risks of consumer class actions regarding the product advertising at issue in this case. Attached hereto as **Exhibit 1** is a true and correct copy of my firm's current resume.

3. I have practiced civil litigation for over 22 years. My work experience and education began in 1984 when I enlisted in the United States Marine Corps (Active Duty 1984-1988, Reserves 1988-1990) and thereafter received my Bachelor of Science in Finance from the University of Southern California (1991). While attending Southwestern University School of Law (1992-1994), I also studied Biology and Chemistry at the University of Southern California and interned at the California Department of Corporations with emphasis in consumer complaints and fraud investigations. I was admitted to the State Bar of California in January of 1995 and

1

have been a member in good standing since that time. In 1996, I started my own law firm with an emphasis in consumer fraud.

4. In the course of this litigation and for purposes of settlement, Defendant Revlon produced and my firm helped review substantial documentary evidence, including over 100,000 pages of evidence, regarding the products' sales, advertising, labeling, company finances and organization, and articles Revlon claimed supported the efficacy of the products.

5. The parties also engaged in lengthy analysis of the laws applicable to the labeling claims here, with Defendant's counsel setting forth detailed factual and legal analysis why they believed the claims on the Products fully complied with the law, and Class Counsel setting forth detailed factual and legal analysis why they believed the claims were not lawful or were false and deceptive.

6. Class Counsel also conducted a detailed and comprehensive review of FDA guidance documents regarding the Products and similar cosmetics products; the Food, Drug and Cosmetic Act (located at 21 U.S.C. §§ 301, *et seq.*) and its implementing regulations (located at 21 C.F.R. §§ 1.1, *et seq.*) (collectively, "FDCA"); the FDCA's numerous changes over the years; Federal Trade Commission advertising standards and their applicability to the Products' labeling claims at issue here; and the California Sherman Food, Drug and Cosmetic Law (Cal. Health & Safety Code §§ 109875, *et seq.*); and scientific articles purportedly supporting the Products' efficacy.

7. Further, percipient witness depositions were taken; numerous third party subpoenas served; experts retained; and expert reports exchanged.

8. The parties also attended an in-person mediation before the Honorable Peter Lichtman (Ret.) on August 27, 2015, which included counsel for the parties plus a Revlon representative.

9. The initial Mediation was followed by months of detailed and adversarial negotiations between the Parties, including negotiation of the specific terms of the settlement presently before the Court.

10. Over the years I have acquired extensive experience in class actions and other complex litigation and have obtained large settlements as lead counsel. In the recent years, I have devoted almost all of my practice to the area of consumer fraud, including false and misleading labeling of food, nutrition, and over-the-counter ("OTC") drug products and cosmetics.

11. The total lodestar for the Marron Firm through July 5, 2017 is $346,701.00. This lodestar is based on 755.8 total hours of work (704.5 attorney hours, 17.9 law clerk hours, and 33.4 paralegal/legal assistant hours). My firm's lodestar is summarized in Appendix 1 attached to the Fee Motion. A summarization of categories for hours expended by the Marron Firm is summarized in **Appendix 2** attached to the Fee Motion, and is listed below:

| Task | Hours |
|---|---|
| **Law Offices of Ronald A. Marron, APLC** | |
| Work Relating to Pre-Filing Investigation, Research, CLRA Letters | 13.9 |
| Work Relating to Subsequent Pleadings | 95.6 |
| Work Relating to Revlon's Motions to Dismiss | 27.7 |
| Work Relating to Applications for *Pro Hac Vice* | 24.7 |
| Work Relating to Discovery | 238.6 |

3

| Task | Hours |
|---|---|
| Work Relating to Depositions | 138.1 |
| Work Relating to Protective Order | 2.4 |
| Work Relating to Expert Witnesses | 16.3 |
| Work Relating to Case Management, Communications, and Scheduling | 66.7 |
| Work Relating to Mediation and Settlement | 131.8 |
| **Subtotal** | **755.8** |

12. My firm's requested rates are listed in full in **Appendix 1** attached to the Fee Motion, and is listed below:

| Timekeeper | Position | Rate Requested | Total Hours | Total Amount |
|---|---|---|---|---|
| **Law Offices of Ronald A. Marron, APLC** | | | | |
| Ronald Marron | Partner | $745.00 | 59.6 | $44,402.00 |
| Skye Resendes | Senior Associate | $475.00 | 126.9 | $60,277.50 |
| Alexis Wood | Senior Associate | $475.00 | 47 | $22,325.00 |
| Kas Gallucci | Senior Associate | $450.00 | 89 | $40,050.00 |
| William Richards, Jr. | Associate | $440.00 | 101.4 | $44,616.00 |
| Marshall Lurtz | Associate | $440.00 | 22.4 | $9,856.00 |
| Beth Goodman | Associate | $440.00 | .8 | $352.00 |
| Erin Minelli | Associate | $440.00 | 12.5 | $5,500.00 |
| Michael Houchin | Associate | $440.00 | 244.9 | $107,756.00 |
| Law Clerks | | $245.00 | 17.9 | $4,385.50 |
| Paralegals/Legal Assistants | | $215.00 | 33.4 | $7,181.00 |
| | | | **Subtotal** | **$346,701.00** |

4

13. My firm also incurred $40,953.75 in costs that were reasonably necessary for the successful prosecution of this action. The costs incurred by my firm are summarized in Appendix 3 to the Fee Motion, and below:

| Description | Amount |
| --- | --- |
| Court Filing Fees | $200.00 |
| Service of Process Fees | $380.00 |
| Postage | $34.84 |
| Certificates of Good Standing (for *Pro Hac Vice* Applications) | $150.00 |
| FOIA Request Fees | $25.00 |
| Deadlines.com Fees (for this case) | $570.00 |
| Expert Fees | $30,585.00 |
| Transcript Fees | $376.60 |
| Mediation Fees | $1,900.00 |
| Travel Expenses (Flights and Mileage Reimbursement) | $2,911.63 |
| Meals | $156.83 |
| Printer Fees and Photocopies | $3,516.00 |
| Delivery Service Fees (FedEx) | $147.85 |
| PACER | No charge |
| Westlaw | No charge |
| **Total** | **$40,953.75** |

14. My firm's practice is to keep contemporaneous records for each timekeeper and to regularly record time records in the normal course of business; and we kept time records in this case consistent with that practice. Moreover, my firms' practice is to bill in 6-minute (tenth-of-an-hour) increments. My firm's billing records are voluminous, but shall be provided for *in camera* review if the Court deems it necessary.

5

15. Prior to finalizing my firm's lodestar, we carefully reviewed our hours and made cuts for time entry errors, duplications, and instances where we determined the hours should be reduced or not billed.

16. My firm's requested rates are consistent with the prevailing rates for attorneys and support staff of similar experience, skill, and reputation. For example, survey data confirms the reasonableness of such rates. A 2010 survey by the National Law Journal (NLJ) shows rates of firms in Los Angeles from $495-$820 for partners and $270-$620 for associates; and in Irvine from $395-$710 for partners and $285-$450 for associates. A 2011 survey by the NLJ shows partner rates of $275-$860 in the Southern California area, with a range of $205-$635 for associates in the same geographic region. Copies of the NLJ surveys are in my firm's possession but are not being filed due to their volume. As this evidence shows, my firm's requested attorney rates fall within the average prevailing market rates within the community.

17. A summary chart of the NLJ surveys from 2010-2012 is attached hereto as **Exhibit 2**.

18. Attached hereto as **Exhibit 3** is a true and correct copy of the 2014 Report on the State of the Legal Market put out by The Center for the Study of the Legal Profession at the Georgetown University Law Center and Thomson Reuters Peer Monitor (Peer Monitor Report). The Peer Monitor report shows that "from the third quarter of 2010 through November 2013 . . . firms increased their standard rates by 11 percent[,] from an average of $429 per hour to $476 per hour." This average rate, *see id.*, support's my firm's hourly rates.

19. My requested principal rate of $745, and requested associate rates of $440 to $475 per hour, based on experience, fall at and below the average/mean range of the typical rates of a San Diego law firm that practices complex litigation. S*ee generally Catala v. Resurgent Capital*

6

*Servs., L.P.*, 2010 U.S. Dist. LEXIS 63501, at *19 n.3 (S.D. Cal. June 22, 2010) (relying on same to award fees).

20. Courts have also recognized that my law firm's attorney's hourly rates are reasonable; for example:

  a. On November 16, 2015, the Honorable Maxine M. Chesney of the U.S. District Court for the Northern District of California approved the following hourly rates for attorneys at the Marron Firm in relation to approval of a class settlement: Ronald Marron at $745; Skye Resendes at $475; Kas Gallucci at $450; William Richards and Erin Minelli at $440; and law clerks at $290 in the case of *Johnson v. Triple Leaf Tea, Inc.*, Case No. 3:14-cv-10 01570-MMC (ECF No. 65). The Court found that the fee requested was "reasonable when judged by the standards in this circuit," and also that my firm's attorney, law clerk and staff rates were "reasonable in light of the complexity of this litigation, the work performed, Class Counsel's reputation, experience, competence, and the prevailing billing rates for comparably complex work by comparably-qualified counsel in the relevant market." ECF No. 65.

  b. On August 6, 2015, the Honorable Kenneth R. Freeman of the Superior Court of California, County of Los Angeles approved the following hourly rates for Marron Firm attorneys: Mr. Marron at $745; Ms. Resendes and Alexis Wood at $475; Ms. Gallucci at $450; Mr. Richards and Ms. Minelli at $440; and law clerks at $290 in the case of *Perry v. Truong Giang Corp.,* Case No. BC59568, a true and correct copy of which is attached hereto as **Exhibit 4**. In so holding, the Court noted that "the attorneys displayed skill in researching and settling this case, which provides a benefit not only

7

to Class Members but to the public at large, and that in so doing, the attorneys undertook significant risk by spending time on this litigation on a contingency basis.").

c. On August 7, 2015, the Honorable Brendan Linehan Shannon of the U.S. Bankruptcy Court for the District of Delaware approved the following5 hourly rates for Marron Firm attorneys: Mr. Marron at $745; Ms. Resendes and Ms. Wood at $475; Ms. Gallucci at $450; Mr. Richards and Ms. Minelli, and Beth Goodman at $440; and law clerks at $290 in the case of *In re: LEAF 123, INC (f/k/a NATROL, INC), et al.,* Case No. 14-11446 (BLS), a true and correct copy of which is attached hereto as **Exhibit 5**. The court found the settlement in that case "fair, reasonable and adequate," which settlement included an award of $799,000 in fees and a $1,000 incentive award for the named plaintiff.

d. On September 22, 2014, the Honorable Christina A. Snyder of the U.S. District Court for the Central District of California approved Mr. Marron's hourly rate of $715 per hour, Ms. Resendes' rate of $440 per hour, Ms. Wood's rate of $425 per hour, Ms. Minelli and Ms. Gallucci's rates of $400 per hour, and Mr. Marron's law clerk and paralegal rates of $245 and $215 per hour, respectively. *See Vaccarino v. Midland Nat. Life Ins. Co.*, 11 CV-5858-CAS MANX, 2014 WL 4782603, at ¶ 11 (C.D. Cal. Sept. 22, 2014); *see also* Dkt. No. 407.

e. On July 29, 2014, the Hon. Richard Seeborg of the Northern District of California approved Mr. Marron's rate at $715, Ms. Resendes at $440, Ms. Gallucci at $400, and law clerks at $290 in *In re Quaker Oats Labeling Litig.*, No. C 10-0502 RS, 2014 WL 12616763, at *1 (N.D. Cal. July 29, 2014).

 f. On March 13, 2014, the Honorable Gonzalo P. Curiel of the U.S. District Court for the Southern District of California approved Mr. Marron's hourly rate of $715 per hour; Ms. Resendes' rate of $440 per hour; Ms. Wood's rate of $425 per hour; Ms. Gallucci's rate of $400 per hour as an attorney; Ms. Realin's rate of $400 per hour; Ms. Galluci's and Ms. Danielle Eisner's post-Bar law clerk rate of $290 per hour; $245 per hour for law clerks, and $215 per hour for legal assistants in *Mason v. Heel, Inc.*, No. 3:12-cv-3056-GPC-KSC, 2014 WL 1664271 (S.D. Cal. Mar. 13, 2014); *see also* ECF Nos. 30-1 & 37.

 g. On October 31, 2013, the Honorable Michael M. Anello of the Southern District of California awarded Mr. Marron fees of $680 per hour, Ms. Resendes fees of $400 per hour, Ms. Wood fees of $385 per hour, Ms. Minelli fees of $385 per hour, and Ms. Gallucci fees of $385 per hour in a homeopathic drug consumer class action case; and also approved $280 per hour for patent agent/post-Bar law clerks; $245 per hour for regular law clerks; and $215 hourly rates for support staff such as paralegals. *Nigh v. Humphreys Pharmacal Incorporated*, 3:12-cv-02714-MMA-DHB, 2013 WL 5995382 (S.D. Cal. Oct. 23, 2013); *see also* ECF No. 30.

 h. On March 13, 2013, the Honorable David O. Carter of the Central District of California awarded me fees of $680 per hour, and Ms. Resendes fees of $400 per hour in a dietary supplement consumer fraud class action case. *Bruno v. Quten Research Inst., LLC*, No. 8:11-cv-00173-DOC-E, 2013 WL 990495, at *4-5 (C.D. Cal. Mar. 13, 2013) ("*Quten*") ("Class Counsel, . . . the Law Offices of Ronald A. Marron displayed competence and diligence in the prosecution of this action, and their requested rates are approved as fair and reasonable."); *see also id.* at *4 ("The Court notes that, in addition to the monetary

9

relief obtained by Class Counsel for class plaintiffs, there is a high value to the injunctive relief obtained in this case. New labeling practices affecting hundreds of thousands of bottles per year, over ten years, bring a benefit to class consumers, the marketplace, and competitors who do not mislabel their products.").

i. On October 31, 2012, the Honorable John A. Houston of the Southern District of California awarded me fees of $650 per hour, and Ms. Resendes fees of $385 per hour in a homeopathic drug consumer fraud class action case. *Gallucci v. Boiron, Inc.*, No. 11cv2039 JAH (NLS), 2012 WL 5359485, at *9 (S.D. Cal. Oct. 31, 2012) ("The Court finds the [foregoing] hourly billing rates reasonable in light of the complexity of this litigation, the work performed, Class Counsels' reputation, experience, competence, and the prevailing billing rates for comparably complex work by comparably-qualified counsel in the relevant market.").

j. On March 13, 2012, my firm settled a case against manufacturers of OTC probiotic supplement products on behalf of a nationwide class of consumers, styled *Burton v. Ganeden Biotech, Inc. et al.*, Case No. 3:11-cv-01471-W-NLS (S.D. Cal.). A Joint Motion for Preliminary Approval of Settlement, (ECF No. 38) was granted on April 16, 2012 (*id.* at 42), and Judge Whelan granted Final Approval on October 5, 2012 (ECF Nos. 48, 52). On August 21, 2012, the Honorable Thomas J. Whelan awarded Mr. Marron fees of $650 per hour, and approved the rate of Ms. Resendes at $385 per hour, in the consumer dietary supplement class action of *Burton v. Ganeden*, No. 11-cv-1471 W (NLS), ECF Nos. 52, 48, 45.

k. On July 9, 2012, the Honorable Marilyn L. Huff awarded me fees of $650 per hour, and approved the rates of my associate attorneys, and Ms. Resendes at $385 per hour

10

in the consumer food class action of *In re Fererro*, Case No. 3:11-cv-00205 H (KSC) (S.D. Cal.), ECF No. 127. Judge Huff noted that the fees requested were "appropriate given the contingent nature of the case and the excellent results obtained for the Class, and because no enhancement or multiplier was sought above the actual amount of Class Counsel's lodestar. The Court concludes the billing rates used by Class Counsel to be justified by prior awards in similar litigation and the evidence presented with their motion showing these rates are in line with prevailing rates in this District."

21.     The Federal Judicial Center published a report in 1996 entitled, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules* ("FJC Report"). The study was requested by the Judicial Conference Advisory Committee on Civil Rules when it was considering proposals to amend Rule 23 of the Federal Rules of Civil Procedure. The study is based on 407 class action lawsuits that either settled or went to verdict in the two-year period from July 1, 1992 to June 30, 1994 in the following four federal judicial districts: the Eastern District of Pennsylvania (Philadelphia); the Southern District of Florida (Miami); the Northern District of Illinois (Chicago); and the Northern District of California (San Francisco).FJC Report at 3-4, 7-8. For the 407 class actions, the FJC Report reports the following regarding class certification

- In 59 cases (14.5%), the class claims were certified for settlement purposes only. *Id*. at 35.
- In 93 cases (22.85%), the class claims were certified unconditionally. *Id.*
- Therefore, a total of 152 cases (37.35%) had certified classes, and the other 255 (62.65%) did not. *Id.*
- In at least 23 of the certified classes, the outcome was unfavorable to the plaintiffs. This is based on Table 39 of the FJC Report at 179, which lists the following

11

outcomes adverse to plaintiffs in certified class cases (excluding classes certified for settlement purposes only): nine dismissals by motion, one stipulated dismissal, one non-class settlement, and twelve summary judgments. *Id*. at 179, App. C, Table 39.

Thus, in sum, the successful class claims from the total 407 filed class actions totaled 129 or less (152 minus 23). Using the number 129/407 to get a percentage, 31.7% or less of the filed cases resulted in successful class outcomes for plaintiffs. This does not account for degree of success (i.e., some cases could have resulted in minimal or partial success and would still be in the successful claim category).

22.    Plaintiffs devoted extensive time to the successful prosecution of this case, serving as a Class Representative on behalf of the Class. Plaintiffs have been a committed and tenacious adversary for the Class. In my opinion, their request for an incentive award of $5,000 each is well-justified in this case.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 7th day of July 2017 in San Diego, California.

*/s/ Ronald A. Marron*

**LAW OFFICES OF RONALD A. MARRON, APLC**
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665